**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **SHAMBAUGH & SON, L.P.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NUMBER:  1:22-cv-135** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **STEADFAST INSURANCE COMPANY** | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW SHAMBAUGH & SON, L.P.**,** (herein after referred to as "SHAMBAUGH" or "Plaintiff"), and files its Original Complaint against Defendant STEADFAST INSURANCE COMPANY (hereinafter referred to as "STEADFAST") for Breach of Contract, Breach of the Duty of Good Faith and Fair Dealing, Violations of the Texas Insurance Code, Violations of the Texas Deceptive Trade Practices-Consumer Protection Act, and a Declaration of its rights against Defendant STEADFAST. In support thereof, Plaintiff would respectfully show the Court the following:

**I.**

**PARTIES**

1.      Plaintiff SHAMBAUGH & SON, L.P. is a limited partnership existing under the laws of the State of Texas and doing business in Austin, Texas. At all relevant times, SHAMBAUGH was insured under one or more of the policies set forth herein.

/ / /

/ / /

PLAINTIFF'S ORIGINAL COMPLAINT    Page 1

2.       Defendant STEADFAST INSURANCE COMPANY is a foreign, for profit corporation organized and existing under the laws of the State of Delaware with its principal place of business in Schaumburg, Illinois. STEADFAST was and is at all relevant times either admitted to do business as an insurer under the laws of the State of Texas or authorized to sell insurance in the State of Texas through a licensed surplus lines broker.

## II.

## JURISDICTION AND VENUE

3.       The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. Section 1332(a)(1) because Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.       This Court also has jurisdiction over this declaratory judgment action pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. Section 2201.  An actual and substantial controversy exists between the parties.

5.       Venue is proper in the Western District of Texas, Austin Division pursuant to 28 U.S.C. § 1391(b)(2).

## III.

## THE POLICIES

6.       STEADFAST made, executed, and delivered one or more policies of Contractor's Protective Professional Indemnity and Liability Insurance to EMCOR GROUP, INC. including without limitation the following: policy number EOC 9817132 02 (effective 07/31/2018 – 07/31/2019) and policy number EOC 9817132 03 (effective 07/31/2019 – 07/31/2020) (the "Policies"). (True and correct copies of the Policies issued by STEADFAST are attached hereto as **Exhibit "A"** and incorporated herein by this reference as if set forth in full.)

7.     Plaintiff SHAMBAUGH & SON, L.P., a wholly owned indirect subsidiary of EMCOR GROUP, Inc., is an insured under the Policies as the definition of Insured includes "such subsidiary or owned or controlled companies of the Named Insured as are in existence at the inception date of this policy."

8.     The Policies are claims-made policies and the relevant inuring agreement, A.2. Contractor's Pollution Liability has a $25,000,000 each claim limit of liability and a $25,000,000 general aggregate limit of liability and is subject to a Self-Insured Retention ("SIR") of $500,000 for each claim.

9.     The relevant insuring agreement, A.2. Contractor's Pollution Liability provides STEADFAST "will pay on behalf of the Insured all sums in excess of the Self-Insured Retention that the Insured shall become legally obligated to pay as Loss because of Claims first made against the Insured and reported to the Company during the Policy Period." Coverage A.2. states the coverage "applies to Claims for…Bodily Injury, Property Damage, or Clean-up Costs caused by Pollution Conditions which are unexpected and unintended from the standpoint of the Insured and which result from Covered Operations performed for others (a) By the Insured; or (b) By an entity for which the Insured is legally liable as a result of the performance of others."

10.    The Policies define "Claim" as follows: "Claim means a demand received by an Insured seeking a remedy and alleging liability or responsibility on the part of the Named Insured for loss."

11.    The Policies define "Loss" as:

    1.  monetary awards or settlements of compensatory Damages and where insurable by law, punitive, exemplary or multiplied Damages because of:

(a) Claims arising out of Breach of Professional Duty in the performance of Professional Services under Coverage A.1 or

(b) Bodily Injury, Property Damages or Clean-up Costs under Coverage A.2; and

2. Claim Expenses; and

3. Emergency Response Costs.

12.     The Policies define "Claim Expenses" as "1. Fees charged by any lawyer designated by the Company; and 2. All other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim, if authorized by the Company."

**IV.**

**STATEMENT OF FACTS**

13.     On April 11, 2020, SHAMBAUGH was served with a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Subpoena") in the multi-district litigation entitled <u>In re: Aqueous Film-Forming Foams Products Liability Litigation</u> in the United States District Court for the District of South Carolina, Civil Action No. 2:18-mn-2873 (hereinafter referred to as the "Underlying Action"). (A true and correct copy of the Subpoena is attached hereto as **Exhibit "B"** and incorporated herein by reference.)

14.     Specifically, the plaintiffs in the Underlying Action issued a Subpoena identifying SHAMBAUGH as a "DISTRIBUTOR" of aqueous film forming foam (hereinafter referred to as "AFFF") and requested the production of numerous categories of documents concerning SHAMBAUGH, as a "DISTRIBUTOR," and relating to the purchase, order, sale, acquisition, or distribution of AFFF. Said Subpoena constitutes a demand for compliance of documents to be

produced and triggers a legal liability for which the policy covers expenses, costs, and attorney's fees reasonably incurred in the compliance of said Subpoena.  As such, SHAMBAUGH is entitled to reimbursement of all fees, costs, and expense in compliance of the Subpoena under the terms and conditions of the Policies as construed under Texas law.  Moreover, the cost, expense and fees incurred in the compilation, assembly and production of documents as required under the Subpoena served to erode a self-insured retention in the Policies.  As of the date of the filing of this Complaint, Plaintiff has expended amounts in excess of the retention and has become out-of-pocket a sum in excess of the SIR and is entitled to sums over $500,000, in an amount to be proven at trial.

15.    On June 1, 2020, SHAMBAUGH provided notice of the Subpoena to STEADFAST in accordance with the terms of the Policies. (A true and correct copy of the correspondence is attached hereto as **"Exhibit C"** and incorporated herein by reference.) SHAMBAUGH requested STEADFAST accept the communication as a formal tender of a claim and recognize the erosion of the SIR from the date of tender.  SHAMBAUGH explained and asserted that the Subpoena and/or SHAMBAUGH being identified as a responsible party in the Underlying Action required STEADFAST to recognize the erosion and satisfaction of the SIR and to reimburse SHAMBAUGH for any fees, costs and expense expended over the SIR.

16.    The June 1, 2020 correspondence explained the background circumstances giving rise to the Subpoena as follows:

> The subpoena served on April 11, 2020 was propounded by the Plaintiffs in a multi-district Federal action, now consolidated for discovery purposes in the United States District Court for the District of South Carolina, under the title of In re: Aqueous Film-Forming Foams Products Liability Litigation, under MDL No.

2:18-mn-2873. Upon investigation of the subpoena, EMCOR/Shambaugh has learned that the underlying litigation involves thousands of Plaintiffs across the country who have sued manufacturers of aqueous film-forming foam ("AFFF") under the brand names of Ansulite, Ansul, Thunderstorm, T-Storm, Light Water, Aer-O-Water, Aer-O-Lite, Centurion, Chemguard, Amerex, Buckeye, Kidde, Fireade, Phos-Chek, Universal, and/or Universal Gold, among other names. The principal Defendants include the manufacturers of the AFFF product and manufacturers of the chemical component-portion of the AFFF.

AFFF is used primarily to suppress and control the spread of fire in both airport and military facilities in case of fire due to either explosions, accidents involving aircraft, and/or ignition of fuel. In addition, the fire suppression systems are installed in commercial buildings, industrial buildings, and multi-unit residential facilities, where AFFF products are enclosed in pipes. To date, as noted above, neither EMCOR Group, Inc., Shambaugh, nor any other EMCOR subsidiary company has been named or served with a Complaint in any pending lawsuit. Shambaugh's primary business function is to install fire suppression systems in commercial buildings, airport facilities, military installations, industrial buildings, and multi-unit residential facilities. Shambaugh is also involved in the design of systems under certain contracts. Some of the fire suppression systems that Shambaugh designs and/or installs utilize AFFF when other forms of fire suppression such as water or sand are not able to be used in the system because of the damage that could be caused to sensitive equipment, computers, and electronics.

The primary assertions in the pending litigation is that the AFFF is a known carcinogen, causing bodily injury to individuals exposed, and contamination to real property arising from pollution conditions caused by the contamination arising from the release of the AFFF product by various users, primarily military and airport installations. In addition, there are allegations that when the AFFF is applied, the foam migrates into the soil and underground water tables, causing contamination and property damage to the soil and water tables, which may ultimately be causing discharge or migration into drinking water in a number of municipalities. In general, the allegations include property damage, bodily injury, and the cost of monitoring, i.e. both medical of affected individuals as well as monitoring levels of contamination found in underground water tables. The remedies sought include cost of decontamination and removal of pollutants, as well as damages arising from bodily injury caused by such environmental exposure.

In general, the consolidated suits include claims for strict liability design defect and defective product, strict liability - failure to warn, public nuisance, private nuisance, trespass, negligence, negligence per se, and improper transfer against the 3M Company; Tyco Fire Products LP; Chemguard Inc.; Buckeye Fire Equipment Company; National Foam, Inc.; E.I. DuPont de Nemours & Company; and The Chemours Company.

Many of the municipalities that serve potable water services within various cities and counties are among the Plaintiffs and operate wells which pump ground water from aquifers to supply drinking water to customers. As noted above, AFFF has

historically been used to control and extinguish aviation, marine, fuel, and other shallow spill fires. The particular components of the AFFF is the following chemicals: perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS"). According to the EPA, the Plaintiffs in these consolidated actions have determined, "human epidemiology data report associations between PFOA exposure and high cholesterol, increased liver enzymes, decreased vaccination response, thyroid disorders, pregnancy induced hypertension and preeclampsia, and cancer (testicular and kidney)" and that, "there is suggestive evidence of carcinogenic potential for PFOS." The lawsuit filed by various individuals are claiming bodily injury arising from the migration of the PFOA and PFOS into the drinking water supplies.

17. On September 3, 2020, SHAMBAUGH sent correspondence to STEADFAST explaining plaintiffs in the Underlying Action intended to file an amended complaint after obtaining documents in response to the subpoenas and add "distributors" of AFFF as defendants in the MDL. (A true and correct copy of the correspondence is attached hereto as **"Exhibit D"** and incorporated herein by reference.) SHAMBAUGH attached a document prepared by plaintiffs' counsel in the Underlying Action and filed in the Underlying Action identifying Shambaugh as an entity which plaintiffs intend to add as a defendant to the MDL. The documents identified SHAMBAUGH as a "distributor of 3M AFFF products from approximately 1955 to 2000."

18. On April 9, 2021, SHAMBAUGH sent correspondence to STEADFAST asserting the Policies provide coverage in response to a "Claim." (A true and correct copy of the correspondence is attached hereto as **"Exhibit E"** and incorporated herein by reference.)

SHAMBAUGH explained the document identifying SHAMBAUGH as a defendant, plaintiffs intended to name established the existence of a "Claim" alleging liability and responsibility for "damages relating to either bodily injury claims or clean-up of waterways, which provide drinking water to residents at various geographic locations."

19.     On June 8, 2021, more than a year after SHAMBAUGH originally tendered the claim to STEADFAST, STEADFAST sent correspondence to SHAMBAUGH denying coverage. (A true and correct copy of the correspondence is attached hereto as **"Exhibit F"** and incorporated herein by reference.)   STEADFAST unreasonably denied coverage stating the "subpoena served on Shambaugh does not allege liability or responsibility for 'loss'…Instead, it identifies Shambaugh as a 'distributor' and, generally, seeks information related to the distribution of AFFF products. Accordingly, the subpoena has not triggered the Policy's Insuring Agreement and coverage is not available at this time." STEADFAST further stated the document identifying SHAMBAUGH as an entity to be named as a defendant does not convey a demand or allegation. STEADFAST further denied coverage stating SHAMBAUGH had not been named in a lawsuit.

20.     On January 19, 2022, STEADFAST sent additional correspondence to SHAMBAUGH maintaining its denial of coverage. (A true and correct copy of the correspondence is attached hereto as **"Exhibit G"** and incorporated herein by reference.) STEADFAST unreasonably maintained its denial of coverage stating: "The Subpoena requests the production of documents and/or information.   It makes no allegations of liability or responsibility on the part of Shambaugh or any other Named Insured."

21.     On January 8, 2022, SHAMBAUGH responded to STEADFAST'S denial of coverage. (A true and correct copy of the correspondence is attached hereto as **"Exhibit H"** and

incorporated herein by reference.) SHAMBAUGH explained the Subpoena met the definition of "Claim" because it was a demand seeking a remedy, i.e., the production of documents, and alleged liability or responsibility on the part of the insured by identifying SHAMBAUGH as a distributor of AFFF. Moreover, the document filed by plaintiffs' counsel in the Underlying Action identified Shambaugh as an entity which plaintiffs intend to add as a defendant to the MDL.

22.     On February 11, 2022, STEADFAST issued its latest denial letter to SHAMBAUGH. (A true and correct copy of the correspondence is attached hereto as **"Exhibit I"** and incorporated herein by reference.) STEADFAST asserted for the first time that "the Policy provides that only demands for monetary damages constitute a **Claim**." (emphasis in original). However, no such language is found in the Policies. Rather, the Policies define Claim as "a demand received by an Insured seeking a remedy and alleging liability or responsibility on the part of the Named Insured for Loss." Here, SHAMBAUGH received a demand seeking a remedy and alleging liability or responsibility on the part of SHAMBAUGH, i.e., the subpoena demanded SHAMBAUGH produce documents and identified SHAMBAUGH as a distributor of AFFF. The plaintiffs in the Underlying Action also identified SHAMBAUGH as a party to be named as a defendant in the future. Moreover, the hundreds of plaintiffs in the Underlying Action have alleged both bodily injury and property damage.

23.     In denying coverage, STEADFAST ignored the legal duties owed by SHAMBAUGH in the investigation, compilation, assembly and production of millions of pages of documents responsive to the Subpoena and further based upon the identification that SHAMBAUGH was a responsible party, although not yet named as a defendant, triggered a duty by STEADFAST to recognize both the satisfaction of the SIR and the duty to reimburse

SHAMBAUGH for the costs, fees and expense incurred in response to the Subpoena. Furthermore, STEADFAST ignored the fact that SHAMBAUGH was identified as a responsible party to be named as a defendant in the Underlying Action, SHAMBAUGH reasonably began to prepare for the defense of the Underlying Action in conjunction with responding to the Subpoena, review of documents that potentially affected SHAMBAUGH's liability, if any.  As such, STEADFAST was required to recognize SHAMBAUGH's efforts as reasonably related to the defense of the Underlying Action as well as responding to the lawfully served Subpoena. Furthermore, STEADFAST was obligated under Texas law to review whether a subpoena constitutes a "Claim" as that term is defined in the Policies and to identify the cases in Texas that implicated STEADFAST's duty to indemnify over and above the SIR. *Oceans Healthcare, L.L.C. v. Illinois Union Ins. Co.*, 379 F. Supp. 3d 554, 563 (E.D. Tex. 2019); *Agillis Benefit Services, LLC v. Travelers Casualty & Surety,* No. 5:08CV213, 2010 WL 11595321 (E.D. Tex. Feb. 24, 2010).

24.     At no time from the date of tender did STEADFAST advise Plaintiff of the following cases all of which identified a subpoena constitutes a "claim" requiring reimbursement of amounts above the SIR: *Polychron v. Crum & Forster Ins. Cos.*, 916 F.2d 461, 463 (8th Cir. 1990); *Oceans Healthcare, L.L.C. v. Illinois Union Ins. Co.*, 379 F. Supp. 3d 554, 563 (E.D. Tex. 2019); *Astellas U.S. Holdings, Inc. v. Starr Indemnity and Liability Co.*, No. 17-cv-8220, 2018 WL 2431969, at *3 (N.D. Ill. May 30, 2018); *Syracuse Univ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 40 Misc. 3d 1205(A), 975 N.Y.S.2d 370 (Sup. Ct.), *aff'd*, 112 A.D.3d 1379 (2013); *Conduent State Healthcare v. AIG Specialty Insurance Company*, No. N18C-12-074, 2019 WL 2612829 (Del. June 24, 2019); *Patriarch Partners, LLC v. AXIS Ins. Co.*, 2017 U.S. Dist. LEXIS 155367, at *13-18 (S.D.N.Y. Sept. 22, 2017); *Weaver v. Axis Surplus Ins. Co.*, 2014

U.S. Dist. LEXIS 154746, at *27-28 (E.D.N.Y. Oct. 30, 2014); *Prot. Strategies, Inc. v. Starr Indem. & Liab. Co.*, 2013 U.S. Dist. LEXIS 187451, at *5 (E.D. Va. Sept. 10, 2013); *AndersonTully Co. v. Fed. Ins. Co.*, 2007 U.S. Dist. LEXIS 104204 (W.D. Tenn. Aug. 7, 2007); *Minuteman Int'l, Inc. v. Great Am. Ins. Co.*, 2004 U.S. Dist. LEXIS 4660, at *21-22 (N.D. Ill. Mar. 18, 2004); *Conduent State Healthcare, LLC v. AIG Specialty Ins. Co.*, 2019 Del. Super. LEXIS 298, at *11 (Del. Super. Ct. June 24, 2019); *Syracuse Univ. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, *PA*, 975 N.Y.S.2d 370 (N.Y. Sup. Ct. Mar. 7, 2013).

25.     Pursuant to the Policies of insurance referred to above, STEADFAST promised to pay all sums which SHAMBAUGH became obligated to pay because of claims for bodily injury, property damage, or clean-up costs caused by pollution conditions which are unexpected and unintended from the standpoint of the Insured which result from covered operations performed for others by the insured during the effective coverage period of the Policies and furthermore was required indemnify SHAMBAUGH in response to SHAMBAUGH being identified as a responsible party and to reimburse SHAMBAUGH for responding to the Subpoena as set forth herein.

26.     Plaintiffs in the Underlying Action made allegations and claims, and evidence is otherwise available, of bodily injury, property damage, or clean-up costs caused by pollution conditions which are unexpected and unintended from the standpoint of the Insured (SHAMBAUGH) which result from covered operations performed for others by the insured during the effective coverage period of the Policies issued by STEADFAST.

27.     As a result, STEADFAST was required to indemnify and/or refused to fully indemnify and/or reimburse SHAMBAUGH for fees, costs and expenses in the defense of the Underlying Action and in responding to the Subpoena served on SHAMBAUGH in the

Underlying Action under the terms of the Policies.

28.     No applicable exclusions to the Policies preclude STEADFAST's duty to indemnify and/or reimburse SHAMBAUGH in the investigation and defense of the Underlying Action given both the Subpoena and SHAMBAUGH being identified as a responsible defendant to be named as a defendant.  While SHAMBAUGH to date has not been served and named in a complaint naming SHAMBAUGH as a defendant, SHAMBAUGH was at all times required to respond to the Subpoena in accordance with the law and prepare for its defense given SHAMBAUGH's notification of it being named as a defendant pursuant to the court filings.

29.     SHAMBAUGH has complied with all other relevant conditions of the Policies.

30.     STEADFAST failed to indemnify and/or reimburse SHAMBAUGH for expenses, fees and costs expended over and above the SIR and as required under the terms of the Policies at issue by unreasonably finding the Subpoena issued to SHAMBAUGH, in conjunction with the plaintiffs identification of SHAMBAUGH as an entity to be named as a defendant, does not constitute a "Claim" as that term is defined in the Policies. STEADFAST's failure and refusal to indemnify and/or refusal to fully indemnify and/or reimburse SHAMBAUGH for fees, costs and expenses in the defense of the Underlying Action and responding to the Subpoena served on SHAMBAUGH is contrary to the terms of the Policies and applicable law.

31.     STEADFAST's position as communicated to Plaintiff constitutes a mistake of fact or law the pertinent facts regarding coverage and the terms of the Policies. The Policies definition of "Claim" is "a demand received by an Insured seeking a remedy and alleging liability or responsibility on the part of the Named Insured for loss." The definition of "Claim" does not state the insured must be named as a defendant in a lawsuit. Here, the Subpoena was a demand seeking a remedy, i.e., the production of documents, and alleged liability or

responsibility on the part of SHAMBAUGH by identifying it as a "distributor" of AFFF. The fact that SHAMBAUGH has not been named in a lawsuit has no legal bearing on whether the Subpoena constitutes a "Claim." The Subpoena, in conjunction with plaintiffs identifying SHAMBAUGH as an entity to be named as a defendant, meets the definition of "Claim" under the Policies in accordance with Texas law.

32.     Nevertheless, STEADFAST denied coverage and further refused to recognize the erosion and satisfaction of the SIR under the Policies notwithstanding the definition of "Claim" under the Policies. STEADFAST's denial of coverage was committed with malice, fraud, gross negligence, and/or oppressiveness which did not result from a mistake of fact or law, honest error of judgment, overzealousness, mere negligence, and/or other human failing whereby STEADFAST denied coverage notwithstanding the terms of the Policies, the pertinent facts of the Underlying Action, and with knowledge of the definition of "Claim" under the Policies in determining coverage.

33.     As a result of the Underlying Action and STEADFAST's subsequent conduct, SHAMBAUGH has been compelled to incur loss and adjustment, defense, mitigation, and other costs in responding to the Subpoena, as well as to prepare defending the anticipated action given the underlying filing with the court identifying Plaintiff as a defendant to be named in the future, and investigative costs as well as attorneys' fees, expert fees and other expenses.

34.     STEADFAST should have but failed to agree to indemnify and/or reimburse fees, costs and expenses incurred in the defense of the Underlying Action and with respect to the response to the Subpoena served on SHAMBAUGH in the Underlying Action by finding the Subpoena meets the definition of "Claim" pursuant to the terms and conditions of the Policies at issue. In refusing to indemnify and/or reimburse SHAMBAUGH for fees, costs and expenses in

the defense of the Underlying Action and responding to the Subpoena served on SHAMBAUGH under the Policies, STEADFAST has made material misrepresentations concerning SHAMBAUGH's coverage under said Policies.

## V.

## CAUSES OF ACTION

### A.      First Claim: Breach of Contract

35.     Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

36.     As set forth above, STEADFAST, among other things, pursuant to the Policies terms and conditions, agreed to indemnify and/or reimburse SHAMBAUGH for fees, costs and expense in the defense of the Underlying Action and in responding to the Subpoena on account of bodily injury, property damage, or clean-up costs caused by pollution conditions which are unexpected and unintended from the standpoint of the Insured, falling within or potentially falling within the coverage of, or as defined in, each insurance policy referenced herein. Pursuant to each of these insurance Policies, STEADFAST also had a duty to conduct a reasonable, adequate, and diligent investigation of any claims made against Plaintiff and affecting STEADFAST's duty to indemnify and/or reimburse SHAMBAUGH for fees, costs and expenses in the defense of the Underlying Action and in responding to the Subpoena served on Plaintiff.

37.     Plaintiff is informed and believes and thereon alleges that the insurance Policies issued by STEADFAST did in fact, at a minimum, potentially cover all of the allegations raised in the Underlying Action and required STEADFAST to fully indemnify and/or reimburse SHAMBAUGH for fees, costs and expenses in the defense of the Underlying Action and in responding to the Subpoena served on Plaintiff in the Underlying Action.

38.     Plaintiff has performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of each written contract of insurance, except to the extent that Plaintiff was prevented by STEADFAST or excused from such performance, or said conditions, covenants and promises have accrued or have been waived.

39.     Plaintiff duly tendered the indemnification of each of the claims made against SHAMBAUGH in the Underlying Action to STEADFAST. STEADFAST failed and/or refused to fully indemnify and/or reimburse SHAMBAUGH for fees, costs and expenses in the defense of the Underlying Action and in responding to the Subpoena served on Plaintiff for the claims brought against it in the Underlying Action as required by the applicable insurance Policies.

40.     As a result of the Underlying Action, Plaintiff has been forced to incur loss, adjustment and investigative costs, including attorneys' fees and costs, experts' fees and costs, court costs and other expenses, because of bodily injury, property damage, and/or clean-up costs caused by pollution conditions which are unexpected and unintended from the standpoint of the insured, falling within, or potentially falling within the coverage of, or as defined in, each of the Policies referred to hereinabove.  In breach of these insurance Policies, STEADFAST through its officers and/or managerial agents, has refused and continues to refuse to fully indemnify and/or reimburse SHAMBAUGH for fees, costs and expenses in the defense of the Underlying Action and in responding to the Subpoena served on Plaintiff in connection with the Underlying Action.

41.     Plaintiff is informed and believes and thereon alleges that STEADFAST did not reasonably or diligently investigate the claims asserted by the claimants in the Underlying Action against Plaintiff or accept Plaintiff's request for indemnity as to the Underlying Action. Additionally, Plaintiff is informed and believes, and thereon alleges, that STEADFAST failed to properly respond to Plaintiff's request to STEADFAST for indemnification and/or refused to

fully indemnify and/or reimburse SHAMBAUGH for fees, costs and expenses in the defense of the Underlying Action and in responding to the Subpoena served by denying coverage more than a year after the date of original tender.

42.    The failure and refusal of STEADFAST to adequately investigate the claims made against Plaintiff by the claimants in the Underlying Action; the failure and refusal to provide indemnification to Plaintiff; and the failure and refusal of STEADFAST to adequately respond to the indemnification demands and other correspondence from Plaintiff also constitutes breaches of the terms and conditions of the Policies at issue.

43.    By reason of STEADFAST's refusal to fully and completely indemnify and/or reimburse SHAMBAUGH for fees, costs and expenses in the defense of the Underlying Action and in responding to the Subpoena served on Plaintiff pursuant to the express obligation to do so in the Policies, STEADFAST has breached its written contracts of insurance under which Plaintiff is entitled to coverage as an insured.

44.    As a direct and proximate result of the breaches by STEADFAST of its respective duties, Plaintiff has incurred substantial attorneys' fees and costs, experts' fees and costs and other expenses in defense, loss adjustment, mitigation, and investigation in an amount within the jurisdictional limits of this Court, according to proof.  As a direct and proximate result of the STEADFAST breach of its contractual duties and in mitigation of Plaintiff's own damages, Plaintiff has incurred attorneys' fees and costs, experts' fees and costs and other costs and expenses in bringing this action, in an amount according to proof.  Plaintiff has been damaged in an amount presently unknown, but in excess of the jurisdictional minimum of this Court, to be established at the time of trial, according to proof.

/ / /

45.     Plaintiff is entitled to recover as damages against STEADFAST all the attorneys' fees, costs, and expenses, which it has incurred as a result of the Underlying Action and instant action together with interest. Plaintiff has been damaged in an amount presently unknown, but in excess of the jurisdictional minimum of this Court, to be established at the time of trial, according to proof.

46.     SHAMBAUGH is entitled to recover as damages against STEADFAST for all the attorneys' fees, costs, and expenses, which it has incurred as a result of the Underlying Action and instant action together with interests as set forth in Article 542.060 of the Texas Insurance Code, and pursuant to section 38.001 of the Texas Civil Practice and Remedies Code, Recovery of Attorney's Fees.

**B.     Second Claim: Breach of the Duty of Good Faith and Fair Dealing**

47.     Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

48.     Plaintiff was an insured under the insurance Policies issued by STEADFAST, which gave rise to a duty of good faith and fair dealing.

49.     STEADFAST breached the duty of good faith and fair dealing by failing and/or refusing to fully indemnify and/or reimburse SHAMBAUGH for fees, costs and expenses in the defense of the Underlying Action and in responding to the Subpoena served on Plaintiff for the claims brought against it in the Underlying Action as required by the applicable insurance Policies.

50.     As a direct and proximate result of the breaches of the duty of good faith and fair dealing by STEADFAST, Plaintiff has incurred substantial attorneys' fees and costs, experts' fees and costs and other expenses in defense, loss adjustment, mitigation, and investigation in an

amount within the jurisdictional limits of this Court, according to proof.  As a direct and proximate result of STEADFAST'S breach of its contractual duties and in mitigation of Plaintiff's own damages, Plaintiff has incurred attorneys' fees and costs, experts' fees and costs and other costs and expenses in bringing this action, in an amount according to proof.  Plaintiff has been damaged in an amount presently unknown, but in excess of the jurisdictional minimum of this Court, to be established at the time of trial, according to proof.

51.     Plaintiff is entitled to recover as damages against STEADFAST all the attorneys' fees, costs, and expenses, which it has incurred as a result of the Underlying Action and instant action together with interest. Plaintiff has been damaged in an amount presently unknown, but in excess of the jurisdictional minimum of this Court, to be established at the time of trial, according to proof.

52.     Plaintiff suffered injury independent of the loss of STEADFAST Policy benefits, and that injury resulted from STEADFAST's gross negligence, malice, or actual fraud, which entitles Plaintiff to exemplary damages under Section 41.003(a) of the Texas Civil Practice & Remedies Code.

## C.     <u>Third Claim: Violations of the Texas Insurance Code</u>

53.     Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

54.     The actions of STEADFAST constitute unfair settlement practices in violation of §541 *et seq.* of the TEXAS INSURANCE CODE, Unfair Methods of Competition And Unfair Or Deceptive Acts Or Practices.  Violations of STEADFAST's statutory obligations include but are not limited to:

       a.      Misrepresenting to Plaintiff a material fact or policy provision relating to coverage;

       b.      Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim with respect to which STEADFAST's liability had become reasonably clear;

       c.      Failing to promptly provide Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for STEADFAST's denial of the claim or offer of a compromise settlement of the claim;

       d.      Failing within a reasonable time to affirm or deny coverage of the claim or submit a reservation of rights to the policyholder;

       e.      Refusing to pay a claim without conducting a reasonable investigation with respect to the claim and unreasonably withholding monetary payment of the defense;

       f.      Making an untrue statement of material fact;

       g.      Failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

       h.      Making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of material fact; and/or

       i.      Making a material misstatement of law.

55.    The actions of STEADFAST, as set out in the paragraphs above, constitute a violation of the TEXAS INSURANCE CODE, and were a producing cause of damages to Plaintiff, its insured. Because those acts were knowingly committed, the trier of fact may award an amount not to exceed three times the amount of actual damages under Section 541.152(b) of the Texas Insurance Code.  Plaintiff is also entitled to recover its reasonable attorney's fees incurred in pursuing STEADFAST under Section 541.152(a)(1) of the Texas Insurance Code.

56.     The actions of STEADFAST, in failing to promptly reimburse or pay defense and/or indemnity fees and costs in the Underlying Action also violate TEXAS INSURANCE CODE, Chapter 542, *et seq.*, Prompt Payment of Claims Act, entitling Plaintiff to, among other things, recovery of the statutory penalty of 18 percent, together with its reasonable attorney's fees incurred in pursuing STEADFAST.  Those violations of STEADFAST's statutory obligations include, but are not limited to:

a.     Unreasonably refusing to immediately and timely indemnify and/or reimburse SHAMBAUGH in the Underlying Action after receipt of tender thereof and repeated communications from SHAMBAUGH to STEADFAST, in violation of the statutory time guidelines for accepting or denying coverage under Article 542.051 *et. seq.* of the Texas Insurance Code;

b.     Failing to acknowledge SHAMBAUGH's claim;

c.     Failing to record the acknowledgement of the claim;

d.     Failing to promptly investigate SHAMBAUGH's claims;

e.     Failing to timely request information from SHAMBAUGH;

f.     Failing to promptly accept or reject SHAMBAUGH's tenders;

g.     Failing to state the reasons for rejecting SHAMBAUGH's tenders;

h.     Failing to request more time to for accepting or rejecting SHAMBAUGH's claim and explaining the basis for needing additional time;

i.     Failing to accept or reject SHAMBAUGH's claim by the extended deadline; and/or

j.     Failing to pay the claim within 60 days of receiving the information requested.

57.     STEADFAST also violated Texas Insurance Code, Chapter 542, *et seq.*, Prompt Payment of Claims Act, by engaging in a course of conduct frustrating the protections of the statutes, including but not limited to:

      a.     Causing Plaintiff financial hardship by refusing to reimburse or pay defense and/or indemnity fees and costs in the Underlying Action;

      b.     Failing to give a reasonable interpretation to the provisions of the Policies, failing to reasonably apply provisions of the Policies to the claims, and unreasonably refusing to acknowledge that the claims asserted against Plaintiff in the Underlying Action were and are potentially covered, and failing to timely, promptly and without delay, pay for the reasonable and necessary defense incurred after the tender;

      c.     Failing to provide Plaintiff with any reasonable or justifiable basis for the decision to deny and/or delay the indemnity and/or reimbursement of the defense costs of the Underlying Action;

      d.     Interpreting the provisions of the Policies and the factual circumstances so as to resolve ambiguities and uncertainties against Plaintiff and to favor their own economic interests;

      e.     Embarking on a course of conduct and pattern and practice, whereby STEADFAST would fail and/or refuse to respond to tenders made by or on behalf of Plaintiff and/or to acknowledge the indemnity and/or reimbursement obligation owed to Plaintiff and/or to participate in the mounting and funding of the defense of Plaintiff with respect to the Underlying Action;

      f.     Continuing to pursue such course of conduct and pattern and practice after Texas law established that a subpoena constitutes a demand for non-monetary relief.  STEADFAST disobeyed clear legal precedent in a knowing manner in clear and conscious disregard to Plaintiff's

rights;

g.      Continuing to pursue such course of conduct and pattern and practice of not providing any reasonable basis to delay, reject, or deny the indemnity and/or reimbursement tendered and requested;

h.      Pursuing such a course of conduct and pattern and practice in violation of the terms of the policies and Texas law with the knowledge, understanding, consent and approval of the Defendant insurers' respective managing officers, directors, agents and employees; and

i.      Unreasonably failing to agree and/or refusing to pay its indemnity obligations arising from the Underlying Action upon SHAMBAUGH's demand that STEADFAST was required to pay such damages in violation of the Article 542 *et. seq.* of the Texas Insurance Code.

58.    As a result of the above conduct of SHAMBAUGH in this matter, Plaintiff has incurred substantial attorneys' fees, costs and expenses in defense, loss adjustment, mitigation, investigation and settlement and other costs and expenses in response to the Underlying Action and has been required to bring this Complaint to enforce its rights as a named insured under the Policies mentioned herein.  Plaintiff is entitled to recover as damages against SHAMBAUGH all the aforementioned fees, costs and expenses which it has incurred as a result of the Underlying Action and the instant action, together with interest thereon, including attorney fees as set forth in Article 542.060 of the Texas Insurance Code and pursuant to section 38.001 of the Texas Civil Practice and Remedies Code.  Plaintiff has suffered damages and will continue to suffer damages within the jurisdiction of this Court, according to proof.

59.    Plaintiff is further entitled to recover as damages against STEADFAST all fees, expenses and costs incurred in this action to enforce its rights under the

insurance Policies, plus interest thereon, according to proof and is entitled to 18% interests and attorney's fees as set forth in Article 542.060 of the Texas Insurance Code.

60.     The above described conduct of STEADFAST has been and continues to be intentional, unreasonable, capricious and arbitrary, and constitutes violations of the Texas Insurance Code in each and all of the insurance Policies referred to above in this Complaint.  The above-described conduct further constitutes intentional, malicious, oppressive, despicable, grossly negligent, and knowing conduct and conscious disregard of Plaintiff's rights, and stems from improper and evil motives, including STEADFAST's desire to reduce or avoid their obligations to Plaintiff, so as to justify an award of punitive and exemplary damages.

        C.      **Fourth Claim: Violations of the DTPA**

61.     Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

62.     Plaintiff is a consumer under the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA) because it is a partnership that sought or acquired goods or services by purchase. Specifically, Plaintiff sought and acquired insurance policies from STEADFAST, the Policies.

63.     STEADFAST is a corporation that can be sued under the DTPA.

64.     STEADFAST violated the DTPA when it

        a.  Engaged in false, misleading, or deceptive acts or practices that Plaintiff relied on to its detriment. Specifically, STEADFAST represented that an agreement conferred or involved rights, remedies, or obligations that it did not have or involve, or that were prohibited by law, in violation of subsection 17.46(b)(12), and failed to disclose information concerning goods or services that were known at the time of the transaction, because

such failure to disclose such information was intended to induce Plaintiff into a transaction into which it would not have entered had the information been disclosed, in violation of subsection 17.46(b)(24).

b.   Engaged in an unconscionable action or course of action that, to Plaintiff's detriment, took advantage of Plaintiff's lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

c.   Used or employed an act or practice in violation of Chapter 541 of the Texas Insurance Code.

65.    Plaintiff gave STEADFAST notice as required by Section 17.505(a) of the Texas Business & Commerce Code.

66.    In the alternative, it was impracticable for Plaintiff to give STEADFAST written notice under Section 17.505(a) of the Texas Business & Commerce Code because Plaintiff needed to file this suit to prevent the expiration of the statute of limitations. Therefore, written notice was not required.

67.    As a direct and proximate result of STEADFAST's wrongful conduct, Plaintiff has incurred substantial attorneys' fees and costs, experts' fees and costs and other expenses in defense, loss adjustment, mitigation, and investigation in an amount within the jurisdictional limits of this Court, according to proof.  Plaintiff has been damaged in an amount presently unknown, but in excess of the jurisdictional minimum of this Court, to be established at the time of trial, according to proof.

68.    Plaintiff is entitled to recover as damages against STEADFAST all the attorneys' fees, costs, and expenses, which it has incurred as a result of the Underlying Action and instant action together with interest. Plaintiff has been damaged in an amount presently unknown, but in

excess of the jurisdictional minimum of this Court, to be established at the time of trial, according to proof.

69.     STEADFAST acted knowingly, which entitles Plaintiff to recover treble economic damages under Section 17.50(b)(1) of the Texas Business & Commerce Code.

70.     STEADFAST acted intentionally, which entitles Plaintiff to recover treble economic damages under Section 17.50(b)(1) of the Texas Business & Commerce Code.

71.     Plaintiff is entitled to recover reasonable and necessary attorney fees for prosecuting this suit under Section 17.50(d) of the Texas Business & Commerce Code.

**D.     Fifth Claim: Declaratory Relief**

72.     Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

73.     As set forth above, STEADFAST, among other things, agreed to investigate, adjust, defend and indemnify and/or refused to fully indemnify and/or reimburse SHAMBAUGH for fees, costs and expenses in the defense of the Underlying Action and in responding to the Subpoena served on Plaintiff as to any claims made in the Underlying Action of alleged bodily injury, property damage, and/or clean-up costs caused by pollution conditions which are unexpected and unintended from the standpoint of the insured and which result from covered operations, falling within and/or potentially falling within the coverage defined in each of the Policies. Plaintiff contends the claims in the Underlying Action constitute a "Claim" under the express terms of the Policies, necessitating STEADFAST's indemnification of Plaintiff. Plaintiff is informed and believes and thereon alleges that STEADFAST unreasonably contends otherwise.

74.     Defense fees and costs, including attorneys' fees and costs, experts' fees and costs, investigation, loss and adjustment fees, costs and expenses have been incurred by Plaintiff

because of bodily injury, property damage, or clean-up costs caused by pollution conditions which are unexpected and unintended form the standpoint of the insured and which resulted from covered operations, falling within and/or potentially falling within the coverage of, and/or as defined in, each of the Policies referred to hereinabove.

75.     Moreover, SHAMBAUGH contends and STEADFAST disputes that STEADFAST is required to recognize the satisfaction of the self-insured retention arising from the response to the Subpoena and to undertake reasonable evaluation and defense-related efforts and tasks arising from the filings with the Court that SHAMBAUGH was a responsible party as alleged in the Underlying Action.  Moreover, SHAMBAUGH contends and STEADFAST disputes that any amounts over $500,000 expended by SHAMBAUGH in response to the Subpoena and/or defense of the Underlying Action is the financial responsibility of STEADFAST and therefore SHAMBAUGH is entitled to reimbursement of all sums paid to date over $500,000 from the amount of the SIR.

76.     Plaintiff provided timely notice of the claims asserted against it in the Underlying Action to STEADFAST.  Plaintiff has performed each covenant and/or condition which on its part must be performed in order to obtain indemnification under each and all of the Policies referenced hereinabove, or have been excused from so performing as a result of STEADFAST's breach of its respective insurance agreements, including its refusal to indemnify and/or reimburse SHAMBAUGH for fees, costs and expenses in the defense of the Underlying Action and in responding to the Subpoena served on Plaintiff among other matters.

77.     A dispute has arisen between Plaintiff and STEADFAST in that Plaintiff contends it was and is entitled to be completely and fully indemnified by STEADFAST. Here, STEADFAST has refused to indemnify and/or reimburse SHAMBAUGH for fees, costs and

expenses in the defense of the Underlying Action and in responding to the Subpoena served on Plaintiff. Accordingly, SHAMBAUGH is entitled to be reimbursed for the attorneys' fees and costs, experts' fees and costs, and other costs and expenses in the defense, repayment, loss adjustment, mitigation, investigation and including reimbursement of all costs and expenses incurred as a result of the Underlying Action.

78.     An actual controversy exists between Plaintiff and STEADFAST regarding its duty to completely indemnify and/or reimburse SHAMBAUGH for fees, costs and expenses in the defense of the Underlying Action and in responding to the Subpoena served on Plaintiff for any damages which Plaintiff may be required to pay in connection with respect to the Underlying Action pursuant to the terms and conditions insurance Policies.  A declaratory judgment is necessary and appropriate to determine the rights and duties of the parties under the insurance Policies.

## VI.

## <u>DAMAGES</u>

79.     Plaintiff repeats, re-alleges and incorporates by reference all of the previous allegations contained in this Complaint as though fully set forth herein.

80.     As a result of STEADFAST's failure to fully and completely indemnify and/or refusal to fully indemnify and/or reimburse SHAMBAUGH for fees, costs and expenses in the defense of the Underlying Action and in responding to the Subpoena served on Plaintiff, Plaintiff has suffered actual damages in the form of attorneys' fees, litigation costs, and investigative costs in the Underlying Action not less than the minimal jurisdictional limit of this Court.  In addition, Plaintiff has suffered and will suffer attorneys' fees and litigation costs by reason of prosecuting this Complaint.

81.     Plaintiff is also entitled to its attorneys' fees and costs pursuant to Section 37.009 and Section 38.001 of the Texas Civil Practice and Remedies Code as well as any other statute or law providing for recovery of the same, including, sections 541.152 and 542.060 of the Texas Insurance Code.

## VII.

## PRAYER

ACCORDINGLY, Plaintiff requests that Defendant STEADFAST have Judgment against them for:

a.     That Plaintiff be entitled to a judicial determination that STEADFAST owes Plaintiff full indemnification as to the Underlying Action;

b.     That Plaintiff be entitled to a judicial declaration that STEADFAST owes Plaintiff indemnification for all expenses from all claims in the Underlying Action including, but not limited to, attorney's fees, costs, settlement payments and/or Judgment;

c.     That Plaintiff be entitled to a judicial declaration that the claims in the Underlying Action constitute a "claim" as defined in the Policies, necessitating the indemnification of Plaintiff by STEADFAST;

d.     Judgment awarding Plaintiff all damages it has suffered as a result of STEADFAST's breach of the insurance policy contracts, including attorney's fees and costs;

e.     Judgment that Plaintiff is entitled to recover its costs and expenses, including attorney's fees incurred in prosecuting this action and in pursuing full indemnity from STEADFAST;

f.    Judgment awarding Plaintiff all damages it has suffered as a result STEADFAST's violations of the Texas Insurance Code, including any additional damages to which it may be entitled;

g.    Judgment awarding Plaintiff its costs and pre-judgment and post-judgment interest in the maximum as allowed by law; and

h.    Such other and further relief to which Plaintiff may be justly entitled.

Respectfully Submitted,

Dated:  February 15, 2022

**JOSEPH OLIVA & ASSOCIATES, P.C.**
Attorneys for Plaintiff Shambaugh & Son, L.P.

By    */s/ Joseph L. Oliva*
       Joseph L. Oliva, Esq. (Tex. SBN 24090987)
       Matthew R. Toothacre, Esq. (*Pending Pro Hac Vice*)
       Joseph Oliva & Associates, P.C.
       11956 Bernardo Plaza Drive # 532
       San Diego, CA 92128
       Phone (858) 304-7400
       oliva@olivafirm.com
       mtoothacre@olivafirm.com

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rule of Civil Procedure.

Respectfully Submitted,

Dated:  February 15, 2022

**JOSEPH OLIVA & ASSOCIATES, P.C.**
Attorneys for Plaintiff Shambaugh & Son, L.P.

By    */s/ Joseph L. Oliva*
Joseph L. Oliva, Esq. (Tex. SBN 24090987)
Matthew R. Toothacre, Esq. (*Pending Pro Hac Vice*)
Joseph Oliva & Associates, P.C.
11956 Bernardo Plaza Drive # 532
San Diego, CA 92128
Phone (858) 304-7400
oliva@olivafirm.com
mtoothacre@olivafirm.com