## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

SHAMBAUGH & SON, L.P.,

     Plaintiff,

v.

         Civil Action No.: 1:22-CV-135-LY

STEADFAST INSURANCE COMPANY,

     Defendant.

## DEFENDANT'S MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS

     Defendant Steadfast Insurance Company ("Steadfast") requests that the Court transfer this action to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1406(a) or, in the alternative, dismiss the complaint of Plaintiff Shambaugh & Son, L.P. for lack of personal jurisdiction and improper venue pursuant to Rules 12(b)(2) and 12(b)(3), respectively.

## INTRODUCTION

     This action arises out of a dispute between Plaintiff and Steadfast regarding insurance coverage for costs Plaintiff incurred in responding to a subpoena (the "Subpoena") issued in connection with the Aqueous Film-Forming Foams ("AFFF") multi-district litigation No. 2873 pending in the United States District Court for the District of South Carolina (the "MDL"). Plaintiff has not, and cannot, allege that Steadfast took any action in, or directed at, the state of Texas with respect to the coverage dispute. Consequently, the Court does not have personal jurisdiction over Steadfast with respect to Plaintiff's claims. Further, Texas has no connection to the events underlying the claim for coverage or the policy at issue aside from Plaintiff's alleged status as a registered Texas limited partnership. Venue is therefore not proper in this Court. Accordingly, this case should be transferred pursuant to 28 U.S.C. § 1406(a) to the United States

District Court for the District of Connecticut or, in the alternative, dismissed.

## STATEMENT OF ISSUES TO BE RULED ON

The issues to be decided herein are as follows:

(1)     Does the Court have personal jurisdiction over Steadfast?

(2)     Is venue proper in this Court?

(3)     If the Court lacks personal jurisdiction over Steadfast or venue is improper in this

Court, is it in the interest of justice to transfer this case to the United States

District Court for the District of Connecticut?

## FACTUAL BACKGROUND

Plaintiff alleges that Steadfast wrongfully denied insurance coverage for costs Plaintiff incurred in responding to the Subpoena issued to Plaintiff in connection with the MDL.  Dkt. 1 at ¶ 27.  The Subpoena was served on Plaintiff in Fort Wayne, Indiana.  Dkt. 1-2 at 2.  It identifies Plaintiff as a "distributor" of AFFF and seeks documents regarding Plaintiff's use of AFFF.  Dkt. 1 at ¶ 14; *see also* Dkt. 1-2 at 8, 11-13.  Plaintiff used AFFF "mostly in the Upper Midwest states." Dkt. 1-4 at 8.

Plaintiff alleges that coverage is owed for the Subpoena under "one or more" Contractor's Protective Professional Indemnity and Liability Insurance policies, including policy number EOC 9817132 02, which has a policy period of July 31, 2018 to July 31, 2019 (the "2018-2019 Policy"), and policy number EOC 9817132 03, which has a policy period of July 31, 2019 to July 31, 2020 (the "2019-2020 Policy" and, together with the 2018-2019 Policy, the "Policies").[1]  Dkt. 1 at ¶¶ 6,

---

[1]     Plaintiff alleges that true and correct copies of the Policies are attached as Exhibit A to the Complaint. Dkt. 1 at ¶ 6.  Exhibit A, however, consists of only the 2019-2020 Policy. *See* Dkt. 1-1.  A true and correct copy of the 2018-2019 Policy is attached as Exhibit 1 to the Affidavit of Melissa Pelletier (the "Pelletier Aff.").

27.   The Policies were issued to EMCOR Group, Inc. ("EMCOR")—Plaintiff's parent company—at addresses in Connecticut and contain a notification entitled "Connecticut Notification of Surplus Lines Policy."  *See* Dkt. 1 at ¶ 7; Dkt. 1-1 at 2-3; Pelletier Aff. Ex. 1 at 2-3.  Plaintiff alleges that it qualifies as an insured under the Policies because the Policies define "Insured" to include "such subsidiary or owned or controlled companies of the Named Insured as are in existence at the inception date of this policy."  Dkt. 1 at ¶ 7.  As noted, Plaintiff is not the named insured—EMCOR is—and Steadfast does not concede that Shambaugh is an insured under the Policies.

New York-based employees of the insurance brokerage firm Arthur J. Gallagher ("AJG") negotiated the Policies on behalf of EMCOR.  Pelletier Aff. at ¶¶ 7, 11.  On behalf of Steadfast, a New York-based underwriter negotiated the 2018-2019 Policy and a Massachusetts-based underwriter negotiated the 2019-2020 Policy.  Pelletier Aff. at ¶¶ 7, 11.  The Policies make no reference to Plaintiff or to Texas.  *See* Dkt. 1-1; Pelletier Aff. Ex. 1; Pelletier Aff. ¶ 5.

From its office in Norwalk, Connecticut, EMCOR provided notice to Steadfast of the Subpoena as a potential claim.  *See* Dkt 1-3.  Plaintiff retained Rhode Island-based counsel to respond to the Subpoena, as well as South Carolina-based counsel to serve as local counsel.  *See* Dkt. 1-3 at 4; Dkt. 1-4.  Correspondence regarding coverage for the Subpoena was exchanged between Plaintiff's Rhode Island-based counsel; Plaintiff's California-based insurance coverage counsel; New Jersey-based Steadfast employees; and Steadfast's Washington, D.C.-based coverage counsel.  *See* Dkt. 1-4; Dkt. 1-5; Dkt. 1-6; Dkt. 1-7; Dkt. 1-8; Dkt. 1-9.

Steadfast is incorporated in and maintains its principal place of business in Illinois. [2]  *See* Dkt. 12.  Plaintiff does not, and cannot, allege that any of the events underlying its claim for coverage occurred in Texas.

---

[2]      Plaintiff incorrectly alleges that Steadfast is incorporated in Delaware.  *See* Dkt. 1 at ¶ 2.

<u>**ARGUMENT**</u>

**I.     THE COURT LACKS PERSONAL JURISDICTION OVER STEADFAST**

To survive a Rule 12(b)(2) motion to dismiss, a plaintiff must make a *prima facie* showing

that the Court has personal jurisdiction over the defendant.  *Bulkley & Assocs., L.L.C. v. Dep't of*

*Indus. Rels., Div. of Occupational Safety & Health of the State of California*, 1 F.4th 346, 350 (5th

Cir. 2021).  In evaluating a Rule 12(b)(2) motion to dismiss, a court may consider "affidavits,

interrogatories, depositions, oral testimony, or any combination of the recognized methods of

discovery."  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772

F.2d 1185, 1192 (5th Cir.1985)).  A court must "take as true the nonconclusory, 'uncontroverted

allegations in the plaintiff's complaint'" and "resolve 'conflicts between the facts contained in the

parties' affidavits . . . in the plaintiff's favor.'"  *Bulkley & Assocs.*, 1 F.4th at 350 (quoting *Felch*

*v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 327 (5th Cir. 1996)).  Where a court finds it lacks

personal jurisdiction, it may dismiss the case or, pursuant to 28 U.S.C. § 1406(a), transfer it to any

district in which the case could have been brought.  *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466

(5th Cir. 2013).

A court has "jurisdiction over a nonresident defendant only to the extent consistent with

his federal due process rights."  *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317 (5th

Cir. 2021).  To satisfy federal due process requirements with regard to a nonresident defendant,

(1) the defendant must have purposefully availed itself of the benefits and protection of the forum

by establishing "minimum contacts" with the forum state; and (2) the exercise of personal

jurisdiction must comport with "traditional notions of fair play and substantial justice."  *Revell*,

317 F.3d at 469 (quoting *Mink v. AAAA Dev. LLC,* 190 F.3d 333, 336 (5th Cir. 1999)).  "There are

two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those

that give rise to general personal jurisdiction[.]"  *Halliburton Energy Servs., Inc. v. Ironshore*

*Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)).  Neither form of personal jurisdiction is present here.

### A.    Steadfast is Not Subject to General Personal Jurisdiction

General personal jurisdiction attaches to a defendant only where "the defendant's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'"  *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)).  The Supreme Court has made clear that, except in "an exceptional case," a defendant is "at home" only in "its formal place of incorporation or principal place of business."  *Daimler*, 571 U.S. at 139 n.19.  Thus, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."  *Monkton*, 768 F.3d at 432.

Steadfast is incorporated in and maintains its principal place of business in Illinois.  *See* Dkt. 12.  Moreover, Plaintiff fails to allege any facts that would satisfy its "incredibly difficult" burden of establishing that Steadfast's contacts with Texas are so "continuous and systematic" that, its place of incorporation and principal place of business notwithstanding, Steadfast is essentially "at home" in Texas.  Indeed, the only allegation Plaintiff makes regarding Steadfast's presence in Texas is that Steadfast is "either admitted to do business as an insurer under the laws of the State of Texas or authorized to sell insurance in the State of Texas through a licensed surplus lines broker."  Dkt. 1 at ¶ 2.  Such allegations, however, are insufficient to subject Steadfast to general personal jurisdiction in this State.  *See Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992) ("[A] corporation's qualification to do business in the forum state . . . 'is of no special weight in evaluating general personal jurisdiction.'") (quoting *Ratliff v. Cooper Lab'ys, Inc.*, 444 F.2d 745, 748 (4th Cir. 1971)).  Accordingly, there is no basis to find that Steadfast is subject to general personal jurisdiction in Texas.

### B.      Steadfast is Not Subject to Specific Jurisdiction

Specific personal jurisdiction attaches where the defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Halliburton Energy Servs.*, 921 F.3d at 539 (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001)).   Accordingly, the Fifth Circuit applies a three-step analysis to the issue of specific personal jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton*, 768 F.3d at 433.   Plaintiff has the burden to satisfy the first two prongs; only then does the burden shift to Steadfast to establish that exercising jurisdiction would be unfair or unreasonable.   *Id.*

Plaintiff cannot meet its burden.   In Plaintiff's 81-paragraph Complaint, only two allegations can be read as alleging any connection between Steadfast and Texas.   First, Plaintiff alleges that it is a "limited partnership existing under the laws of the State of Texas" and that it is an insured under the Policies.   Dkt. 1 at ¶ 1.   The Fifth Circuit, however, has expressly held that a nonresident insurer's issuance of a policy covering a Texas resident is alone insufficient to establish the necessary minimum contacts between the insurer and Texas.   *See Halliburton Energy Servs.*, 921 F.3d at 544 (explaining that "the Supreme Court has long held that 'an individual's contract with an out-of-state party *alone* [cannot] automatically establish sufficient minimum contacts'") (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).   Instead, a court must evaluate the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts within the forum."

*Id.* (quoting *Gulf Coast Bank & Tr. Co. v. Designed Conveyor Sys., L.L.C.*, 717 F. App'x 394, 399 (5th Cir. 2017)).

Plaintiff does not allege that any negotiations, contemplated future consequences, or course of dealing occurred in Texas.  Nor can it.  The Policies were negotiated on behalf of EMCOR by New York-based employees of the insurance brokerage firm AJG and on behalf of Steadfast by New York and Massachusetts-based underwriters.  Pelletier Aff. at ¶¶ 7, 11. Moreover, the Policies were issued to EMCOR in Connecticut, provide that they were issued as Connecticut surplus lines policies, and make no reference to Plaintiff or the State of Texas.  *See* Dkt. 1-1 at 2-3; Pelletier Aff. Ex. 1 at 2-3; Pelletier Aff. at ¶ 5.

Second, Plaintiff alleges that Steadfast "was and is at all relevant times either admitted to do business as an insurer under the laws of the State of Texas or authorized to sell insurance in the State of Texas through a licensed surplus lines broker."  Dkt. 1 at ¶ 2.  Steadfast's alleged status as a Texas-admitted insurer or surplus lines insurer, however, is insufficient to establish minimum contacts.  *See Halliburton Energy Servs.*, 921 F.3d at 544 ("Texas's decision to regulate the lines insurance market has nothing to do with Ironshore's minimum contacts with Texas."); *Saeed v. Bennett-Fouch Assocs.*, LLC, No. 3:11-CV-01134-F, 2011 WL 13233158, at *3 (N.D. Tex. Oct. 12, 2011) ("A single act of registering a business in the forum state and nothing more is insufficient to confer specific jurisdiction on a non-resident defendant.").  Moreover, even if such status were sufficient to establish minimum contacts, Plaintiff does not, and cannot, allege any facts connecting such status to its claims herein.  *See TheHuffingtonPost.com*, 21 F.4th at 324 ("For specific jurisdiction, a plaintiff must link the defendant's *suit-related* conduct to the forum.") (emphasis in original).  Indeed, as discussed above, the Policies were issued to EMCOR in Connecticut and expressly provide they were issued as Connecticut surplus lines policies.  *See*

Dkt.1-1 at 2-3; Pelletier Aff. Ex. 1 at 2-3.   Plaintiff is not named as an additional insured under the Policies.  *See* Dkt. 1-1 at 2-3; Pelletier Aff. Ex. 1 at 2-3; Pelletier Aff. at ¶ 5.  There is therefore no connection between Steadfast's alleged status as a Texas-admitted insurer or surplus lines insurer and Plaintiff's claims under the Policies.

Accordingly, there is no basis to find that the Court has specific personal jurisdiction over Steadfast.

## II.   THIS COURT IS AN IMPROPER VENUE FOR THIS ACTION

To survive a Rule 12(b)(3) motion to dismiss for improper venue, a plaintiff bears "the burden of demonstrating that the chosen venue is proper." *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 719 (W.D. Tex. 2013).  In considering a Rule 12(b)(3) motion to dismiss, a court "is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 493 (5th Cir. 2018) (quoting *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009)).  The court must, however, view "all facts in a light most favorable to the plaintiff." *Id.* (quoting *Ambraco*, 570 F.3d at 237).  As is the case if the Court lacks personal jurisdiction, if venue is improper "the case must be dismissed or transferred pursuant to [28 U.S.C.] § 1406(a)." *Id.*

Plaintiff claims that venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), which provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."[3]  In the context of an insurance coverage action, to determine whether venue

---

[3]     Accurately, Plaintiff does not claim that venue is proper under the remaining two sections of the venue statute: 28 U.S.C. §§ 1391(b)(1) and (b)(3).  Indeed, a prerequisite to proper venue under both § 1391(b)(1) and § 1391(b)(3) is that the Court have personal jurisdiction over Steadfast.  More specifically, § 1391(b)(1) provides that venue is proper in "a judicial district in which

is proper under § 1391(b)(2) courts look to (1) "the whole sequence of events that gave rise to the action", including "important factors" such as "the place where the contract . . . was negotiated or executed; (2) the place where the services were performed; and (3) the place where the alleged breach occurred." *RLI Ins. Co. v. Caliente Oil, Inc.*, No. MO:17-CV-00183-DC, 2018 WL 11272846, at *4 (W.D. Tex. Aug. 21, 2018); *see also Am. States Ins. Co. v. Andrews*, No. 6:13-CV-865-JDL, 2014 WL 12601031, at *3 (E.D. Tex. Aug. 15, 2014) ("[T]he whole sequence of events that gave rise to this action should be considered in determining whether venue is proper, including the negotiation and signing of the insurance policy and [the event giving rise to the claim].").

As discussed above, the Policies were negotiated on behalf of EMCOR by New York-based employees of AJG and on behalf of Steadfast by New York and Massachusetts-based underwriters.  Pelletier Aff. at ¶¶ 7, 11.  The 2018-2019 Policy was executed in New York, and the 2019-2020 Policy was executed in Massachusetts, as the underwriters bound and finalized the Policies in those locations.  Pelletier Aff. at ¶¶ 8, 13.  *Cardoni v. Prosperity Bank*, 805 F.3d 573, 583 (5th Cir. 2015) ("[T]he place of contracting is the place where occurred the last act necessary . . . to give the contract binding effect.") (quoting Restatement (Second) of Conflict of Laws § 188, cmt. e).  Moreover, the Policies were issued to EMCOR at addresses in Connecticut.  Dkt. 1-1 at 3; Pelletier Aff. Ex. 1 at 3.  The alleged breach of failing to pay the costs Plaintiff allegedly incurred in responding to the Subpoena occurred in New Jersey, which is the location from which Steadfast

---

which any defendant resides, if all defendants are residents of the State in which the district is located."  For purposes of this provision, Steadfast is deemed a "resident" of any judicial district in which it is subject to personal jurisdiction with respect to Plaintiff's claims.  *See* 28 U.S.C. § 1391(c)(2).  § 1391(b)(3) provides that "if there is no district in which an action may otherwise be brought as provided in this section," venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  As explained *supra*, there is no personal jurisdiction here.

denied coverage.  *See* Dkt. 1-6, 1-7; *Wolf Network, LLC v. AML Diagnostics, Inc.*, No. 3:15-CV-3797-B, 2016 WL 1357742, at *3 (N.D. Tex. Apr. 5, 2016) (finding that the location from which the defendant refused to pay the plaintiff constituted the place of breach); *Holdridge v. TricorBraun Inc.*, No. 3:13-CV-1202-L, 2013 WL 3213318, at *5 (N.D. Tex. June 26, 2013) (finding that the location from which the defendant made decisions regarding payment constituted the place of breach).

In addition, not only did none of the above "important factors" occur in Texas, neither did any of the other events underlying the claim or this coverage dispute.  A summary of the remaining underlying events is as follows:

- The Subpoena was served on Plaintiff in Fort Wayne, Indiana.  Dkt. 1-2 at 2.

- The Subpoena was issued in connection with a multi-district litigation pending in the U.S. District Court for the District of South Carolina.  Dkt. 1 at ¶ 13.

- The Subpoena seeks documents regarding Plaintiff's use of AFFF.  Dkt. 1 at ¶ 14; *see also* Dkt. 1-2 at 11-13.

- Plaintiff used AFFF "mostly in the Upper Midwest states."  Dkt. 1-4 at 8.

- From Connecticut, EMCOR sent a letter to Steadfast in Illinois providing notice of the Subpoena as a "potential claim" under the 2019-2020 Policy.  Dkt. 1-3.

- EMCOR retained Rhode-Island based counsel to respond to the Subpoena.  Dkt. 1-4 at 1. From Rhode Island, that counsel sent a letter to Steadfast in Illinois providing an update as to Plaintiff's efforts in responding to the Subpoena.  Dkt. 1-4.

- Plaintiff retained California-based insurance coverage counsel, and that counsel and Steadfast exchanged several letters from their respective California and New Jersey locations.  *See* Dkt. 1-5; Dkt. 1-6; Dkt. 1-7; Dkt. 1-8.

In short, none of the events underlying the claim for coverage or the parties' dispute occurred in Texas.  As a result, venue is not proper in this Court.

## III. THE INTEREST OF JUSTICE REQUIRES TRANSFER TO THE DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT PURSUANT TO 28 U.S.C. § 1406(A)

Upon finding that personal jurisdiction is lacking or venue is improper, a court may either (1) dismiss the action pursuant to Rule 12(b)(2) or Rule 12(b)(3), respectively, or (2) transfer the case pursuant to 28 U.S.C. § 1406(a) to "any district or division in which it could have been brought" if it finds that transfer is "in the interest of justice".  *Herman*, 730 F.3d at 466 (addressing transfer under § 1406(a) upon a finding that the court lacks personal jurisdiction); *Trois*, 882 F.3d at 493 (addressing transfer under § 1406(a) upon a finding that venue is improper).

The Fifth Circuit has not articulated a standard for determining when transfer is in the "interest of justice" under § 1406(a).  Rather, "it is enough simply that the court thinks transfer is in the interest of justice."  *Castaneda v. Bradzoil, Inc.*, No. 1:20-CV-1039-RP, 2021 WL 1390423, at *2 (W.D. Tex. Apr. 13, 2021) (quoting 14D C. Wright, et al., Federal Practice and Procedure § 3811 (4th ed. 2019)), *report and recommendation adopted*, No. 1:21-CV-1039-RP, 2021 WL 8053500 (W.D. Tex. May 10, 2021).  However, there is a general preference for transfer rather than dismissal.  *See Chenevert v. Springer*, No. CIV.A.C-09-35, 2009 WL 2215115, at *4 (S.D. Tex. July 22, 2009) ("Generally, the 'interest of justice' instructs courts to transfer cases to the appropriate judicial district, rather than dismiss them.") (quoting *James v. Booz-Allen*, 227 F. Supp. 2d 16, 20 (D.D.C. 2002)).

The facts here make transfer to the District Court for the District of Connecticut compelling.  The Policies were issued to EMCOR at addresses in Connecticut and expressly provide they were issued as Connecticut surplus lines policies.  *See* Dkt. 1-1 at 2-3; Pelletier Aff. Ex. 1 at 2-3.  Further, EMCOR, from its office in Norwalk, Connecticut, provided notice to

Steadfast of the Subpoena as a potential claim. *See* Dkt 1-3. Moreover, this case could have been brought in the District of Connecticut, as Steadfast is subject to specific personal jurisdiction in Connecticut.

## **CONCLUSION**

For the foregoing reasons, Defendant Steadfast Insurance Company respectfully requests that this case be transferred to the United States District Court for the District of Connecticut, or in the alternative, that Plaintiff Shambaugh & Son, L.P's Complaint be dismissed.

Dated: June 29, 2022               Respectfully Submitted,

*/s/ Mary-Ellen King*
Mary-Ellen King
State Bar No. 24067219
THOMPSON, COE, COUSINS, & IRONS L.L.P.
7501 Brazos Street, Suite 1500
Austin, TX 78701
Tel.: (512) 827-2305
Fax: (512) 708-8777
mking@thompsoncoe.com

Clarence Y. Lee (*pro hac vice* motion to be filed)
Ian A. McLin (*pro hac vice* motion to be filed)
SAUL EWING ARNSTEIN & LEHR LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, DC 20006
Tel.: (202) 295-6614
Fax: (202) 295-6721
clarence.lee@saul.com
ian.mclin@saul.com

*Counsel for Defendant Steadfast Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2022, I caused a copy of the foregoing **DEFENDANT'S MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS** to be filed with the Clerk of Court using the CM/ECF system, which will provide electronic notification of filing to the following counsel for Plaintiff:

Joseph L. Oliva
Matthew R. Toothacre
JOSEPH OLIVA & ASSOCIATES, P.C.
11956 Bernardo Plaza Drive #532
San Diego, CA 92128
Tel.: (858) 304-7400
Fax: (858) 214-1600
oliva@olivafirm.com
mtoothacre@olivafirm.com

Clayton Carter Utkov
ANDREWS MYER, P.C.
919 Congress Avenue, Suite 1050
Austin, TX 78701
Tel.: (512) 900-3012
Fax: (512) 900-3082
cutkov@andrewsmyers.com

*/s/ Mary-Ellen King*
Mary-Ellen King

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

SHAMBAUGH & SON, L.P.,

     Plaintiff,

v.

STEADFAST INSURANCE COMPANY,

     Defendant.

Civil Action No.:  1:22-CV-135-LY

## <u>AFFIDAVIT OF MELISSA PELLETIER</u>

I, Melissa Pelletier, do hereby state under oath that I am over eighteen years of age and that I have personal knowledge of and am competent to testify to the following:

1.     I am employed by Zurich American Insurance Company ("ZAIC") as an Assistant Vice President.  I am an underwriter in the USCI Construction area and have authority to underwrite coverage for the ZAIC group of insurance companies, which includes Steadfast Insurance Company ("Steadfast").

2.     I have been employed by ZAIC since 2009 and have been based in the Boston, Massachusetts office at all times relevant to this case.

3.     In my role as an underwriter, I am familiar with the underwriting process for the Contractor's Protective Professional Indemnity and Liability Insurance policy, policy number EOC 9817132 02, which has a policy period of July 31, 2018 to July 31, 2019 (the "2018-2019 Policy"), and the Contractor's Protective Professional Indemnity and Liability Insurance policy, policy number EOC 9817132 03, which has a policy period of July 31, 2019 to July 31, 2020 (the "2019-2020 Policy").  Both the 2018-2019 Policy and the 2019-2020 Policy were issued by

Steadfast to EMCOR Group, Inc. ("EMCOR").  A true and correct copy of the 2018-2019 Policy is attached hereto as **Exhibit 1**.  A copy of the 2019-2020 Policy is attached as Exhibit A to Plaintiff's Complaint.  *See* Dkt. 1-1.

4.      Specifically, since 2019 I have been the underwriter for Contractor's Protective Professional Indemnity and Liability Insurance policies issued by Steadfast to EMCOR.  In my role as the underwriter for that account, I am familiar with the underwriting of the 2018-2019 Policy.

5.      Neither the 2018-2019 Policy nor the 2019-2020 Policy reference the State of Texas, name the Plaintiff in this matter as an additional insured, or otherwise make any reference to Plaintiff.

6.      The 2018-2019 Policy was underwritten by James Byrnes in Zurich's New York, NY office.

7.      The 2018-2019 Policy was negotiated by Mr. Byrnes on behalf of Steadfast and by Christine Tramontelli of Arthur J. Gallagher in White Plains, NY on behalf of EMCOR.

8.      Mr. Byrnes bound the 2018-2019 Policy in New York, NY.  This was the last step to finalize the 2018-2019 Policy.

9.      A letter attaching the 2018-2019 Policy binder was sent by Mr. Byrnes in New York, NY to Ms. Tramontelli in White Plains, NY on July 25, 2018.  A true and correct copy of that letter is attached hereto as **Exhibit 2**.

10.     I underwrote the 2019-2020 Policy in Zurich's Boston, MA office.

11.     The 2019-2020 Policy was negotiated by me on behalf of Steadfast and by Ms. Tramontelli of Arthur J. Gallagher in White Plains, NY on behalf of EMCOR.

2

12.     On July 23, 2019, I sent to an e-mail confirming the 2019-2020 Policy to Ms. Tramontelli.  A true and correct copy of that e-mail is attached hereto as **Exhibit 3**.

13.     I bound the 2019-2020 Policy in Boston, MA.  This was the last step to finalize the 2019-2020 Policy.

14.     On July 26, 2019, I sent a letter from Boston, MA to Ms. Tramontelli in White Plains, NY attaching the 2019-2020 Policy binder.  A true and correct copy of that letter is attached hereto as **Exhibit 4**.

I SOLEMNLY AFFIRM under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true.


Dated: June 28th, 2022

Melissa Pelletier
Zurich American Insurance Company


~~State of Illinois~~
COMMONWEALTH OF MASSACHUSETTS
COUNTY OF _Cook_

On this 28 day of _June_____, 2022, before me, the undersigned notary public, personally appeared Melissa Pelletier, proved to me through satisfactory evidence of identification, which were _drivers license_, to be the person who signed the foregoing document in my presence, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of her knowledge and belief.


(seal)

Notary Public

OFFICIAL SEAL
MICHELE L JOHANSEN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/30/22

# Connecticut Notification of Surplus Lines Policy



**THIS IS A SURPLUS LINES POLICY AND IS NOT PROTECTED BY THE CONNECTICUT INSURANCE GUARANTY ASSOCIATION.**

# Contractor's Protective Professional Indemnity® and Liability Insurance Declarations



**STEADFAST INSURANCE COMPANY**
Dover, Delaware
Administrative Offices - 1400 American Lane
Schaumburg, Illinois 60196-1056

**Policy Number:** EOC 9817132 02          **Renewal of:** EOC 9817132 01
**Producer Number:** 60197000
**Producer Name:** Arthur J. Gallagher Risk Management Services

**Item 1.**  **Named Insured:**          EMCOR Group, Inc.,

**Address:**          301 Merritt Seven
Norwalk, Connecticut 06851
USA

**Item 2.**  **Limits of Liability:**  **COVERAGE PARTS:**          **Contractor's Professional Liability**

| | |
|---|---|
| $25,000,000 | Each Claim |
| $25,000,000 | Aggregate |

**Contractor's Pollution Liability**

| | |
|---|---|
| $25,000,000 | Each Claim |
| $25,000,000 | Aggregate |

**Microbial Events (Claims Made)**

| | |
|---|---|
| $25,000,000 | Each Microbial Event Claim |
| $25,000,000 | Total all Microbial Event Claims |

**Mitigation Expenses (Claims Made)**

| | |
|---|---|
| $25,000,000 | Each Claim |
| $25,000,000 | Aggregate (Total Zurich Mitigation including Excess Layer) |

**Rectification Coverage (Claims Made)**

| | |
|---|---|
| $25,000,000 | Each Claim |
| $25,000,000 | Aggregate (Total Zurich Rectification including Excess Layer) |

**Policy**

$25,000,000 Aggregate Limit of Liability

**Item 3.**  **"Policy Period":**          Inception Date: 07/31/2018    Expiration Date:    07/31/2019
(12:01 a.m. local time at the address shown in Item 1.)

**Item 4.**  **Self-Insured Retention:**    **COVERAGE PARTS:**  **Contractor's Professional Liability**
$500,000 Each Claim
**Contractor's Pollution Liability**
$500,000 Each Claim
**Microbial Events (Claims Made)**
$500,000 Each Claim
**Mitigation Expenses (Claims Made)**
$500,000  Each Claim
**Rectification Coverage (Claims Made)**
$500,000  Each Claim

**Item 5.**  **"Retroactive Date":**    January 1, 1968

**Item 6.**  **Premium:**          $1,224,737    (25% Minimum and Deposit)

**Item 7.**   **Endorsement(s) Effective at Inception:** **"See Schedule of Forms and Endorsements"**

**Item 8.**   **Extended Reporting Period:**          One (1) year @ 75% of the total annual premium

Two (2) years @ 125% of the total annual premium

Three (3) years @ 150% of the total annual premium

Four (4) years @ 165% of the total annual premium

Five (5) years @ 175% of the total annual premium

Six (6) years @ 200% of the total annual premium

**Item 9.**   **Policy Form:**   STF-CPP-140-A CW (07/16) (Manuscript)

**THESE DECLARATIONS TOGETHER WITH THE APPLICATION(S), COVERAGE PART FORM(S), AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE NUMBERED POLICY. THE INSURANCE AS PROVIDED HEREIN IS "CLAIMS MADE." PLEASE DISCUSS ANY QUESTIONS YOU MAY HAVE WITH YOUR AGENT OR BROKER.**

# Schedule of Forms and Endorsements



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

| Form Number | Form Name | Endorsement No. |
|---|---|---|
| STF-CPP-140-A CW  (07/16) | MANUSCRIPT:  Contractors Protective Professional Indemnity and Liability Declarations | |
| STF-CPP-129-A CW (05/09) | Schedule of Forms and Endorsements | |
| STF-CPP-140-A CW  (07/16) | MANUSCRIPT: Contractor's Protective Professional Indemnity and Liability Insurance Policy | |
| STF-CPP-140-A CW  (07/16) | Acquisition Endorsement | 1 |
| STF-CPP-140-A CW  (07/16) | Amendment of Named Insured | 2 |
| STF-CPP-140-A CW  (07/16) | Completed Operations Coverage Retroactive Date | 3 |
| STF-CPP-140-A CW  (07/16) | Minimum Earned Premium | 4 |
| STF-CPP-140-A CW  (07/16) | Amendment of Disposal Site Exclusion | 5 |
| STF-CPP-140-A CW  (07/16) | How Other Insurance Applies | 6 |
| STF-CPP-140-A CW  (07/16) | Rating Endorsement | 7 |
| STF-CPP-140-A CW  (07/16) | Reduced Retention and Indemnity Agreement | 8 |
| STF-CPP-140-A CW  (07/16) | First Named Insured Endorsement | 9 |
| STF-CPP-140-A CW  (07/16) | Technology Services Endorsement with Additional Exclusions | 10 |
| STF-CPP-140-A CW  (07/16) | Cancellation Clause Amendment Pro Rata Cancellation | 11 |
| STF-CPP-140-A CW  (07/16) | Amendment to Watercraft, Aircraft, Motor Vehicle or Rolling stock Exclusion Endorsement | 12 |
| STF-CPP-140-A CW  (07/16) | Amendment of the Definition of Pollution Conditions Endorsement | 13 |
| STF-CPP-140-A CW  (07/16) | Emergency Response Costs Coverage Endorsement | 14 |
| STF-CPP-140-A CW  (07/16) | War Exclusion | 15 |
| STF-CPP-140-A CW  (07/16) | CPL Additional Insured and Primary Coverage Endorsement | 16 |
| STF-CPP-140-A CW  (07/16) | Amendment of Restoration Costs Endorsement | 17 |
| STF-CPP-140-A CW  (07/16) | Biological Terrorism Coverage Endorsement | 18 |
| STF-CPP-140-A CW  (07/16) | Advice of Cancellation to Entities Other than the Named Insured Limited to E-Mail Notification | 19 |
| STF-CPP-140-A CW  (07/16) | Economic Sanctions Endorsement | 20 |
| STF-CPP-140-A CW  (07/16) | Amendment Damages Endorsement | 21 |
| STF-CPP-140-A CW  (07/16) | Professional Liability Crisis Response Coverage Extension | 22 |
| STF-CPP-140-A CW  (07/16) | Biodiversity Damage Definition and Property Damage Definition Amendatory Endorsement | 23 |
| STF-CPP-140-A CW  (07/16) | Definition of Insured Amendatory Endorsement | 24 |

| | | |
|---|---|---|
| STF-CPP-140-A CW  (07/16) | Amendatory Endorsement | 25 |
| STF-CPP-140-A CW  (07/16) | Additional Named Insured Endorsement | 26 |
| STF-CPP-140-A CW  (07/16) | Additional Named Insured Endorsement (with retroactive dates) | 27 |
| STF-CPP-140-A CW  (07/16) | Additional Named Insured Endorsement (with special limits and retroactive dates) | 28 |
| STF-CPP-140-A CW  (07/16) | Pre-Claims Assistance Endorsement | 29 |
| STF-CPP-140-A CW  (07/16) | Rectification Indemnity Coverage | 30 |
| STF-CPP-140-A CW  (07/16) | Headquarters Address Change | 31 |
| U-GU-1191-A CW (03/15) | Sanctions Exclusion Endorsement | 32 |
| STF-CPP-119-B CW (02/12) | Nuclear Energy Liability Exclusion – Broad Form | 33 |
| STF-CPP-107-A CW (05/09) | Additional Named Insured(s) | 34 |
| STF-CPP-107-A CW (05/09) | Additional Named Insured(s): Cherokee Millwright, Inc. | 35 |
| STF-CPP-140-A CW (07/16) | Amendment of the Definition of Pollution Conditions Endorsement | 36 |
| STF-CPP-172-A CW (05/11) | ADA, FHA, OSHA, State Licensing and Regulatory Board Legal Expense Reimbursement Endorsement | 37 |
| STF-GU-199-B (01/09) | Important Notice – Service of Suit and in Witness Clause | |

# Contractor's Protective Professional Indemnity and Liability Insurance Policy



**STEADFAST INSURANCE COMPANY**
Dover, Delaware
Administrative Offices - 1400 American Lane
Schaumburg, Illinois 60196-1056

### CONTRACTORS PROFESSIONAL SERVICES AND POLLUTION LIABILITY INSURANCE

#### *NOTICE*

*THIS POLICY PROVIDES CLAIMS MADE AND REPORTED COVERAGE, HAS CERTAIN PROVISIONS AND REQUIREMENTS UNIQUE TO IT, AND MAY BE DIFFERENT FROM OTHER POLICIES THE NAMED INSURED MAY HAVE PURCHASED. THE POLICY REQUIRES THAT A CLAIM BE MADE UPON THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE SAME POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF ANY.*

*PLEASE READ THE ENTIRE POLICY CAREFULLY TO DETERMINE THE INSURED'S RIGHTS AND DUTIES, AND WHAT IS AND IS NOT COVERED. VARIOUS PROVISIONS THROUGHOUT THIS POLICY RESTRICT OR EXCLUDE COVERAGE.*

*DEFINED TERMS APPEAR IN BOLD-FACED TYPE. PLEASE REFER TO SECTION V. TO EXAMINE THE APPLICABLE DEFINITIONS.*

In consideration of the payment of the premium and Self-Insured Retention by the Named Insured and in reliance upon the statements in the **Insured's** Application incorporated herein by reference, the Company agrees with the **Insured** subject to all of the terms, exclusions and conditions of this Policy, as follows:

## I. INSURING AGREEMENTS

**A.    COVERAGE: CLAIMS-MADE CLAUSE:**

The Company will pay on behalf of the **Insured** all sums in excess of the Self-Insured Retention that the **Insured** shall become legally obligated to pay as **Loss** because of **Claims** first made against the **Insured** and reported to the Company during the **Policy Period**.

This insurance as specified below applies to **Claims** for:

1.    **Professional Liability**

A **Breach of Professional Duty** in the rendering or failure to render **Professional Services** to others

(a) By the **Insured**; or

(b) By an entity for which the **Insured** is legally liable as a result of the performance of others.

2.    **Contractor's Pollution Liability**

**Bodily Injury, Property Damage,** or **Clean-up Costs** caused by **Pollution Conditions** which are unexpected and unintended from the standpoint of the **Insured** and which result from **Covered Operations** performed for others

(a) By the **Insured**; or

(b) By an entity for which the **Insured** is legally liable as a result of the performance of others.

For this insurance to apply, all of the following conditions must be satisfied:

1.   (a)  The **Insured's Professional Services** which result in a **Claim**; or

     (b)  The **Insured's Covered Operations**, which result in a **Claim**;

     whichever is applicable, must commence on or after the Retroactive Date stated in the Declarations.

2.   Prior to the date Steadfast Insurance Company first wrote this coverage, the Director Risk Management of EMCOR Group, Inc. had no knowledge of

     (a)  **Breach of Professional Duty** or circumstance arising from the **Insured's Professional Services**; or

     (b)  **Pollution Condition or circumstance resulting from the Insured's Covered Operations likely to give rise to a Claim.**

3.   **Claim** must first be made against the Insured during the **Policy Period**.

4.   The **Insured** must report the Claim to the Company, in writing, as provided in Section IV – A.1 of this policy during the **Policy Period** or within the sixty (60) day period immediately following the expiration of the **Policy Period**.

**B.   TERRITORY:**

The insurance afforded by this Policy applies to:

(a)  A **Breach of Professional Duty** arising out of **Professional Services**; or

(b)  **Bodily Injury, Property Damage** or **Clean-up Costs** resulting from **Covered Operations** that take place in and result in a **Claim** brought within:

(1)  the United States of America, its territories or possessions or Puerto Rico; and

(2)  elsewhere in the world.

**C.   DEFENSE PROVISIONS:**

With respect to any Claim made against the Insured for which coverage is provided under this Policy and payable hereunder in excess of the Self-Insured Retention, or for which coverage is provided under this Policy and payable by the Insured under its Self-Insured retention:

(1)  The Company shall not be called upon to assume charge of the investigation, defense or settlement of any Claim made against the Insured, but the Company, at its option shall have the right and shall be given the opportunity to associate, at its own expense, with the Insured in the investigation, defense or control of such Claim which would involve or appear reasonably likely to involve the Company, in which event the Insured and the Company shall cooperate in the defense or settlement of such Claim. The Insured and the Company shall mutually agree to select independent counsel for the defense of any claim. The consent of the Insured for such counsel shall not be unreasonably withheld.

(2)  In the absence of such election by the Company, the Insured shall arrange for and assume the investigation, defense and settlement of such Claim provided that the Insured shall take no action or agree to any settlement which alone or taken together with Claim Expenses will exceed the Self-Insured Retention without the prior written consent of the Company.

**D.   SETTLEMENT PROVISIONS:**

For **Claims** covered under Coverage A.1, Coverage A.2 or under both Coverage A.1 and A.2, the Company will not settle or compromise the **Claim** without the consent of the Insured. Under all Coverages of this Policy, if the **Insured** refuses to consent to a settlement or compromise recommended by the Company and elects to contest such **Claim** or continue legal proceedings in connection with such **Claim**, then the Company's liability for the **Claim** shall not exceed the amount for which the **Claim** could have been so settled plus **Claim Expenses** incurred up to the date of such refusal subject to the applicable limit of liability under this Policy.

**E.   CLAIM EXPENSES:**

**Claim Expenses** shall be paid by the Company and such payments reduce the available Limit of Liability.  The Insured must first pay any applicable Self -Insured Retention amounts.

**F.   CLEAN-UP UNDER COVERAGE A.2**

With respect to  Coverage  A.2, the Company shall have  the  right  but not  the duty  to participate in decisions regarding **Clean-up  Costs**  and to assume  the  direct  control over  all aspects of  the clean-up and the adjustment of any **Claim** up to the Limit of Liability. In case of the exercise of this right, the **Insured,** on demand of the Company, shall promptly  reimburse the Company for  any  element of **Loss**  falling within the Insured's **Self-Insured Retention.**

### II. EXCLUSIONS

This  Policy does  not provide coverage and  the  Company  will not pay  Claim  Expenses or Loss for any  **Claim** based upon or  arising out of:

A.   1.  any dishonest, fraudulent, or criminal **Breach of Professional** Duty, or those of a knowingly wrongful  nature  committed intentionally by or  at the  direction of  any  Insured,  however, defense  for allegations of fraud will be provided  until final adjudication;

This exclusion shall  not apply  to  any  **Insured** who did  not  commit, participate in  or have  knowledge of such conduct.

B.   any **Claim** made by any **Insured** against  any  other **Insured;** however, solely  with  respect to Coverage A.2, this exclusion shall not apply to **Claim** against  the **Insured** performing **Covered Operations** made by  any Additional **Insured,** as defined in Section VI., Paragraph 4.of  Definition J, who is a client for whom the **Insured** performs or performed **Covered  Operations;**

C.   the actual or alleged **Wrongful Termination** of any  employee of  the **Insured; Discrimination** involving any employee of  the **Insured;** or **Sexual Harassment** of any employee of  the **Insured;**

D.   any **Insured's** involvement as a partner, officer, director,   stockholder, employer or  employee of  any business enterprise not named in the Declarations or  endorsed onto this  policy;

E.   any  claim made  by or on behalf of any business enterprise that wholly or partly owns  the Insured or which to  any extent  controls, operates or manages  an Insured, or that is wholly owned  or in which an Insured has a greater  than 25%  ownership, or which is controlled, operated or managed  by an Insured;

F.
     any  claim based upon  or arising out  of the  design or manufacture of any product  or piece
     of equipment sold, supplied  or furnished by the  Insured, any subsidiary of the Insured or
     any entity which wholly or partly owns, operates or manages the  Insured or any  subsidiary of such entity, or by any person under license from  the  Insured.  This  exclusion does not apply if  the claim arises out of  an act, error or  omission in the  performance of design services or contractor's pollution liability  caused by  pollution conditions arising out  of covered operations which are performed for  others by  the Insured or any  entity for  whom the Insured is  legally liable;

G.   solely  with respect to Coverage A.2, any  **Claim** for (1) **Property  Damage** to the  work performed by, or on behalf of the **Named Insured** or its parent, subsidiary  or affiliate arising out of the work  or any portion thereof, or out  of materials, parts or equipment furnished in connection therewith; or (2) **Property  Damage** to the **Named Insured's Products** caused in whole  or in part by the **Named Insured's Products;**

H.   any express  warranties or guarantees; however, this  exclusion shall not apply to Loss resulting  from the failure to meet such warranties  or guarantees if such Loss would have resulted in the absence of such express warranties  or guarantees;

I.   the cost  to repair or replace  any faulty workmanship, assembly, construction, erection, fabrication,

installation if such work is performed in whole or in part by:

    1.  the **Insured**; or

    2.  any sub-contractor of any Insured; or

    3.  any enterprise and/or any subsidiary of any enterprise that any **Insured** controls, manages, operates or holds ownership in or by any enterprise that controls, manages, operates or holds in an **Insured**;

J.    liability of others assumed by the Insured under any contract or agreement. This exclusion does not apply to liability:

    1.  under Coverage A.1. only, for a **Breach of Professional Duty** in the rendering or failure to render **Professional Services** to others by the **Insured** or for which the Insured is legally liable as a result of the performance of others;

    2.  under Coverage A.2. only, to liability assumed in a contract or agreement that is an **Insured Contract,** provided that the **Bodily Injury, Property Damage or Clean-up Costs** occurs subsequent to the existence of the contract or agreement; or

    3.  that the **Insured** would have in the absence of the contract or agreement.

K.    punitive or exemplary damages, fines or penalties; except, this exclusion does not apply in any jurisdiction where the regulatory authority governing this type of insurance prohibits such exclusion or where this type of insurance may be insurable by law;

L.    **Bodily Injury** sustained by any employee of the **Insured** while engaged in employment by the **Insured** or by any person whose right to assert a **Claim** against the **Insured** arises by reason of any employment, blood, marital, or any other relationship with the employee. This exclusion applies:

    1.  whether the **Insured** may be liable as an employer or in any other capacity; or

    2.  to any obligation to share damages with or repay someone else who must pay damages because of **Bodily Injury**; or

    3.  to any obligation for which an Insured or any party may be liable under any unemployment, workers compensation, disability benefits or any similar laws.

This exclusion does not apply to liability assumed by the **Insured** under an **Insured Contract**; any obligation for which an **Insured** or any party may be held liable under any unemployment, Workers' Compensation, disability benefits, or other similar laws;

M.    the ownership, entrustment, maintenance, operation or use of any watercraft, aircraft, **Motor Vehicle**, or rolling stock of any kind, which is owned, operated or rented by or loaned to the **Insured**. As respects Coverage A.2 only, this exclusion does not apply 1) to the **Loading or Unloading** of any watercraft, aircraft, **Motor Vehicle**, or rolling stock of any kind, whether owned, operated or rented by or loaned to the **Insured** or not, or 2) to the transportation by any watercraft, aircraft, motor vehicle or rolling stock of any kind not operated by the Insured;

N.    any consequence, whether direct or indirect, of war, invasion, act of foreign enemy, hostilities, whether war be declared or not, civil war, rebellion, revolution, insurrection or military or usurped power, strike, riot or civil commotion;

O.    any waste or any products or materials transported, shipped, or delivered via **Mobile Equipment**, **Motor Vehicle**, aircraft, watercraft or rolling stock to a location beyond the boundaries of a site at which the **Insured** is rendering **Professional Services** or performing **Covered Operations**;

P.    any claim based upon or arising out of **Covered Operations** in connection with any real property or facility which is or was at any time owned by the **Insured** or by any entity that:

    1.  wholly or partly owns the **Insured**; or

2.   is wholly or partly owned;

This exclusion does not apply to any real property or facility in which the Insured is an equity partner of 25% or less;

Q.   any **Claim** based upon or arising out of nuclear reaction, radiation or contamination, under any · circumstances and regardless of cause, within or originating from a **nuclear facility**. This exclusion does not apply to class A, class B, and class C low level radioactive waste as defined 1OCFR Part 61;

R.   any claim based upon or arising out of;

1.   the specification or installation of any product, material or process containing asbestos, prior to January 1, 1990, for projects located within the United States, its territories, possessions or Canada; or

2.   the specification or installation of any product, material or process containing asbestos for projects located outside the United States, its territories, possessions or Canada;

### III. LIMITS OF LIABILITY AND SELF-INSURED RETENTION

A.      LIMIT OF LIABILITY-EACH **CLAIM**:

The Limit of Liability shall apply in excess of the Self-Insured Retention. The liability of the Company for each covered **Claim** shall not exceed the amount stated in the Declarations for Each **Claim**. This limit is the maximum amount of **Claim Expenses** or **Loss** or both that the Company will pay on each covered **Claim**.

payment reimbursable under this Paragraph E. which was made prior to the Mediation, as soon as practicable after the conclusion of the Mediation.

### IV.   CONDITIONS

A.   **INSURED'SDUTIES WHEN THERE IS A CLAIM**:

As a condition precedent to the right of coverage under this Policy the **Insured** must do the following:

1.   if a **Claim** to which this Policy applies is made against the **Insured**, the **First Named Insured** must give written notice, as soon as practicable, and as otherwise required by this Policy, to:

**Construction Professional Liability Claims Manager**
**Steadfast Insurance Company (or name of insurance company used)**
**P.O. Box 968041**
**Schaumburg, IL 60196**
**Fax number: (866) 255-2962**
**New matters may also be reported via email at:**
**USZ_Zurich_Construction_Professional_Claims@zurichna.com**

Written notice shall include every demand, notice, summons or other process received by the **Insured's** Director Risk Management.

2.   The **Insured** must cooperate with the Company. The Company may require that the **Insured** submit to examination under oath, if required, produce and make available all records, documents and other materials, which the Company deems relevant to the Claim. With respect to any **Claim** as described in subparagraph 1) of I. Insuring Agreements C., Defense Provisions of this Policy. The **Insured** must also, at the Company's request, attend hearings, depositions and trials. In the course of investigation or defense, provide the Company with written statements as requested by the Company or the Insured's attendance at meetings with the Company;

and the Insured must assist the Company in effecting settlement, securing and providing evidence and obtaining the attendance.

3.  The **Insured** must do whatever is necessary to secure and affect any rights of indemnity, contribution or apportionment that the **Insured** may have.

4.  The **Insured** shall refrain from discussing the facts and circumstances of any **Claim** with anyone other than legal counsel or representatives of the Company.

**B.   REPORTING OF A POSSIBLE CLAIM**:

If the **Insured's Director Risk Management** first becomes aware during the **Policy Period or Extended Reporting Period** of this Policy of:

1.  a **Breach of Professional Duty** or circumstance arising out of **Professional Services** with respect to Coverage A.1; or

2.  a **Pollution Condition** arising out of **Covered Operations** with respect to Coverage A.2

which is reasonably expected to result in a **Claim**, then the **Insured** may provide written notice to the Company containing the information itemized below. If such written notice is received by the Company prior to the effective date of cancellation or nonrenewal of this Policy or the end of the Extended Reporting Period (whichever is applicable), then any **Claim** subsequently first made against the **Insured** arising out of such conduct, shall be deemed for the purpose of this Policy to have been made on the date on which, such written notice is received by the Company. The **Insured** shall cooperate fully with the Company, and any investigation conducted by the Company or its authorized representatives shall be subject to the terms set forth in Section IV. A. above as applicable to a **Claim**.

**C.   LIMIT OF LIABILITY-AGGREGATE**:

Subject to Limit of Liability - Each **Claim**, the liability of the Company shall in no event exceed the amount stated in the Declarations as aggregate as a result of all covered **Claims**. This limit is the total amount of **Claim Expenses** or Loss or both that the Company will pay under this policy for all covered **Claims** including those reported as provided for in Condition C., Extended Reporting Period below.

Once the Limits of Liability have been exhausted, the Company will not defend, pay Loss or Claim Expenses for any Claim.

**D.   MULTIPLE INSUREDS**:

The number of Insureds covered by this policy shall not operate to increase the Limits of Liability as specified above.

**E.   MULTIPLE CLAIMS**:

1.  Regardless of the number of **Claims, Pollution Conditions**, claimants or **Insureds**, the total liability of the Company for all **Claims** that are made and reported during one or more Each **Policy Periods** and arise out of the same, interrelated, associated, repeated or continuous (a) **Breach of Professional Duty** or (b) **Pollution Conditions** shall be considered a single **Claim**, subject to the Each **Claim** Limit of Liability shown in the Declarations of the Policy in effect when the first
**Claim** was made and reported to the Company, and shall be deemed first reported to the Company during the **Policy Period** in which the initial **Claim** was first reported to the Company.

2.  When the same, interrelated, associated, repeated or continual **Breach of Professional Duty** and the same, interrelated, associated, repeated or continuous **Pollution Conditions** result in a **Claim** for **Loss** covered under both Coverage A.1 and Coverage A.2 of this Policy, only one Each **Claim** Limit of Liability shall apply collectively to such **Claim**, even if **Claims** are made and reported in different Policy Periods, and these Claims shall be considered a single **Claim** subject to one Each Claim Limit of Liability. The applicable Limit of Liability shall be the Each **Claim** limit shown in the declarations of the Policy in effect when the first **Claim** was made and reported.

F.    **SELF-INSURED RETENTION - EACH CLAIM:**

The Company's obligation, under  the coverages provided by this Policy to pay Loss or Claim Expenses  or both on behalf  of the Insured,  applies only  to the  payment of Loss or Claim Expenses in excess  of  the Self-Insured Retention stated   in Item  4 of the Declarations, and subject to the Limits of  Liability stated in Item 3 of the Declarations.

The Self-Insured Retention shall be applied to the payment of Loss or Claim Expenses or both. The terms of the Policy including those with respect to the Company's rights and duties with respect to the defense of Claims applies in excess of the Self -Insured Retention amount.

G.    **MEDIATION:**

If the **Insured** and the  Company  jointly agree to utilize  **Mediation** as a means  to resolve  a **Claim** made against the  **Insured**, and if such  **Claim**  is resolved  through the  use of  **Mediation**, then  the **Insured's** Self -Insured Retention obligation shall be reduced by 50% subject  to  a maximum reduction of  $20,000.  The Company shall reimburse the  **Insured** for any  Self-Insured Retention

It is a condition precedent to the coverage  afforded by this Section that  written notice shall  be given to the  Company containing as much of  the  following information reasonably  available to the  **Insured** at the time  **Insured** first becomes  aware of a **Breach of Professional Duty**  or a **Pollution Condition** arising out   of **Covered Operations**:

1.  The actual  or alleged  **Breach of Professional Duty**  or circumstance or **Pollution Condition**  which  is the subject  of a possible  **Claim**;

2.  The **Professional Services**  rendered o r  **Covered  Operations**  performed by the **Insured,**   which  gave rise to  1 above;

3.  The date(s) of  such conduct;

4.  The injury or  damage which has or may  result from such  conduct;

5.  The identity(ies) of  the  **Insured**(s) who may  be subject of  the  **Claim**;

6.  The identity(ies) of  any  potential claimant(s);

7.  The anticipated location(s) of  any such  **Claim**; and

8.  The circumstances by  which the  **Insured**  first became aware of  the  potential **Claim**.

If the submitted information  in the  reasonable judgment  of  the  Company is  deemed inadequate, the Company shall inform the **Insured** that the  report is inadequate and the  **Insured** shall have 60 days to respond to the Company to the extent possible. If the  **Insured** does not respond  to the Company within the  60-day period, such  **Claim**  will not be considered as covered under this  policy but the Insured may resubmit notice at such time  the supplemental information  is obtained.

Any  **Claim**  that  may  subsequently be made against  the  **Insured**  arising out  of  such  possible  **Claim** as described above  shall be considered a **Claim** first  made  against  the  **Insured** during the  **Policy Period** of this policy and shall be subject to all terms and conditions of this  policy.

The **Insured** s h a l l  comply with all subparagraphs  in Condition V., A.  Insured's Duties When There  is a **Claim**. Until the actual  **Claim**  is made against  the  Insured, any  **Claims Expenses**, including  any expenses pertaining to pre-claims services rendered to  the  Insured  by the  Company  or its  designee to  investigate  or monitor  such possible **Claim** shall not be considered an obligation under  Ill.  E **Self Insured Retention**.

H.  **EXTENDED REPORTING PERIOD:**

If the  Company cancels  for  any reason  other than  non-payment of  premium  or failure to  pay Self-Insured Retention amounts due  the  Company  or refuses  to  renew  this  Policy the  **Named Insured** shall  have the  right   to  purchase

for an additional premium as set forth in the Declarations of this Policy an Extended Reporting Period. Any **Claim** made against the **Insured** during the Extended Reporting Period must arise:

1. out of a **Breach of Professional Duty** first committed prior to the cancellation or expiration date and on or after the Retroactive Date stated in the Declarations as respects Coverage A.1; or

2. from **Covered Operations** performed prior to the cancellation or expiration date and on or after the Retroactive Date stated in the Declarations as respects Coverage A.2.

To exercise this right the **Named Insured** must send a request for the Extended Reporting Period in writing to the Company not later than sixty (60) days after the cancellation or expiration date. Failure by the **Named Insured** to give such notice within sixty (60) days waives the right to the Extended Reporting Period.

The entire additional premium due must be paid at the time such request is made. Mailing by the **Named Insured** by registered mail of such notice to the Company at its address stated in the Declarations shall be sufficient proof of notice.

The quotation of a different premium or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

As a condition precedent to the **Named Insured's** right to purchase the Extended Reporting Period, the **Named Insured** shall have satisfied all conditions of this Policy.

At the commencement of any Extended Reporting Period, the entire premium therefore shall be considered earned, and in the event the **Named Insured** terminates the Extended Reporting Period before its term, for any reason, the Company shall not be liable to return to the **Named Insured** any portion of the premium paid for such Extended Reporting Period.

The purchase of the Extended reporting Period prov1s1on shall not serve to increase or reinstate the Aggregate Limit or otherwise increase the Limit of Liability set forth in the Declarations. **D.   HOW OTHER INSURANCE APPLIES**

Where other insurance is available to the **Insured** for **Loss** covered under the terms and conditions of this Policy, the Company's obligation to the **Insured** shall be as follows:

With respect to Coverage A.1.:

1. This Policy shall apply as excess insurance over any other valid and collectible insurance be it primary or excess. This excess insurance shall in no way be increased or expanded as a result of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend. This also applies to the **Insured** while acting as a self-insured for any coverage.

2. Where this Policy is excess insurance, the Company will pay only its share of the amount of Loss, if any, that exceeds the total amount of all such valid and collectible insurance.

3. The **Insured** shall promptly upon request of the Company provide the Company with copies of all policies potentially applicable against the liability covered by this Policy.

With respect to Coverage A.2:

1. This insurance is primary, and the Company's obligations are not affected unless any of the other insurance is also primary. In that case, the company will share with all such other insurance by the method described in Paragraph 2. Below.

2. If all of the other insurance permits contribution by equal shares, the Company will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid it applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, the Company will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limit of insurance to the total applicable limits of insurance of all insurers.

**I.  BANKRUPTCY**

Bankruptcy or insolvency of the **Insured's** estate shall not relieve the Company of any of its obligations under this Policy.

**J.  APPLICATION**

The statements in the Application are the Insured's representations and are deemed material. This Policy is issued based upon the truth and accuracy of such representations. Upon the binding of coverage, the Application shall be attached to and become part of this Policy. This Policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this Policy.

**K.  AUDIT**

The Company may examine and audit the **Insured's** books and records at any time during the **Policy Period** and within three (3) years after the final termination of this Policy, as far as they relate to this **Policy.**

**L.  ACTION AGAINST THE COMPANY**

No action shall be maintained against the Company by the Insured to recover for any Loss under this Policy, unless:

1. the **Insured** has fully complied with all the terms and conditions of this Policy; and

2. the amount of Loss has been fixed or rendered certain:

    a.   by final judgment against the Insured after trial of the issues;

    b.   the time to appeal such judgment has expired without an appeal being taken;

    c.   if appeal is taken, after the appeal has been determined; or

    d.   the Claim is settled in accordance with the terms and conditions of this Policy.

In no event shall any action brought by anyone be maintained against the Company unless such action is brought within twenty-four (24) months from the time the right to bring action first becomes available.

**M.  FALSE OR FRAUDULENT CLAIMS**

If the **Insured** reports any **Claim** knowing such **Claim** to be false or fraudulent, this Policy shall become void and all insurance coverage hereunder shall be forfeited.

**N.  SERVICE OF SUIT**

It is agreed that in the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703, and that in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in

any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## O.  INSPECTION

The Company shall be permitted but not obligated to inspect, sample, and monitor on a continuing basis the **Insured's** property or operations, at any time. Neither the Company's right to make inspections, sample, and monitor, nor the actual undertaking thereof nor any report thereon, shall constitute an undertaking, on behalf of the **Insured** or others, to determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practice or are in compliance with any law, rule, or regulation.

## P.  SOLE AGENT

The **Named Insured** first listed in Item 1 of the Declarations shall act on behalf of all other **Insureds**, if any, for the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy, and giving and receiving notice of cancellation or nonrenewal.

## Q.  ASSIGNMENT

This Policy shall not be assigned without the prior written consent of the Company. Assignment o f interest under this Policy shall not bind the Company until its consent is endorsed onto this Policy.

## R.  SUBROGATION

If there is a payment made by the Company, the Company shall be subrogated to all the Insured's rights of recovery against any person or organization. The **Insured** shall cooperate with the Company and do whatever is necessary to secure these rights. The **Insured** shall do nothing after a claim to waive or prejudice such rights. The Company agrees to waive this right of subrogation against the client of the Insured or other entities to the extent that the **Insured** had, prior to **Claim**, a written agreement to waive such rights.

All recoveries obtained through subrogation will be applied towards the **Named Insured's** Self-Insured Retention first with the remaining balance payable to the Company.

## S.  CHANGES

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or stop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy.

## T.  CANCELLATION

This Policy can be canceled by the **Named Insured** by returning this Policy to the Company or its authorized representatives. The **Named Insured** can also cancel the Policy by written notice to the Company stating at what future date cancellation is to be effective. If the **Named Insured** cancels, earned premium shall be computed using the customary short rate table, or pro-rata of the Minimum Annual Policy Premium, whichever is greater.

This Policy can be canceled by the Company by written notice to the **Named Insured**, at the address last known to the Company. The Company shall provide written notice at least ninety (90) days before cancellation is to be effective.

There are exceptions to the length of the notice that shall be provided to the **Named Insured**. The **Named Insured** shall only be entitled to ten (10) days' notice if the Company cancels because:

1.  The **Insured** has failed to pay a premium when due; or

2.  The **Insured** has failed to pay the applicable Self-Insured Retention amounts due.

If the Company cancels, earned premium shall be computed pro-rata, except that if the Company cancels for the reason specified in 1. or 2. above, earned premium shall be computed in the same manner provided above when the **Named Insured** cancels.

Proof of mailing of any notice of cancellation shall be sufficient proof of notice.    The effective date of cancellation terminates the **Policy Period.**   Return of unearned premium is not a condition of cancellation. Unearned premium shall be returned by the Company as soon as practicable.

## V. DEFINITIONS

A. **Bodily Injury** means:

1. physical injury, sickness or disease sustained by any person, including death resulting therefrom and solely with respect to this item A.1 , any accompanying medical monitoring; or

2. mental anguish or emotional distress.

B **Breach of Professional Duty** means an error, omission or other act that causes liability in the performance or nonperformance of **Professional Services** rendered to others by the **Insured**, or for which the **Insured** is legally liable as a result of the performance or non- performance of others.

C. **Claim** means a demand received by an **Insured** seeking a remedy and alleging liability or responsibility on the part of the **Named Insured** for **loss**.

D. **Claim Expenses** means:

1. Fees charged by any lawyer designated by the Company; and

2. All other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, if authorized by the Company.

E. **Claim Expenses** shall not include:

1. The salaries of any employee of the Company; and

2. Costs, charges or other expenses incurred by the **Insured** for goods supplied or services performed by or on behalf of the staff or salaried employees of the **Insured**, or its parent, subsidiary or affiliate, unless such costs, charges or other expenses are incurred with the prior written approval of the Company at its sole discretion.

F. **Clean-Up Costs** means reasonable and necessary expenses, including legal expenses incurred with the Company's written consent, which shall not be unreasonable withheld or delayed, incurred in the investigation, removal, remediation including the associated monitoring, or disposal of soil, surface water, groundwater or other contamination:

1. To the extent required by **Environmental laws**, or specifically mandated by court order, the government or any political subdivision of the United States of America or any state or any municipality thereof, or Canada or any province thereof; or

2. Which have been actually incurred by the government or any political subdivision of the United States of America or any state thereof, or Canada or any province thereof, or by third parties.

Clean-Up Costs also includes **Restoration Costs**.

G. **Covered Operations** means those operations and activities performed by or on behalf of the **Insured**.

H. **Damages** means, any amount which an **Insured** is legally obligated to pay for any **Claim** to which this insurance applies; and shall include judgments, settlements, and interest on judgments, provided always that **Damages** shall not include the return or withdrawal of professional fees, sanctions, fines or penalties imposed by law, or other matters that may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

**I.**  **Discrimination** means  termination of  an employment relationship or  a demotion  or a failure  or refusal to hire  or promote any  individual because  of  race,  color,  religion, age, sex, disability, pregnancy, national origin or sexual orientation.

**J.**  **Insured** means :

    1.  The **Named Insured**;

    2.  Any person who  is or  was a director,  officer, principal, partner,  or employee of the **Named Insured** while acting  within the scope of his/her duties  as such;

    3.  The heirs, executors, administrators, and legal representatives of each **Insured** as defined in 1. and 2. above in the event of death, incapacity or bankruptcy but only with respect to liability arising out of **Professional Services** or **Covered Operations** rendered on behalf of the **Named Insured** prior to such **Insured's** death, incapacity or bankruptcy;

    4.  Solely with respect to Coverage  A.2, the client  or other entity for  whom the Named Insured performs or performed Covered Operations, provided  that  a written contract  or agreement  exists between  the Named Insured  and such written contract  or agreement  requires the client  or another entity to  be insured  under the  Named Insured's contractor's pollution liability policy.  However, such clients or other entities are covered  under this Policy solely with respect to Loss arising from  Covered Operations performed by the Named Insured for others causing Bodily Injury, Property Damage, or Clean Up Costs caused  by Pollution  Conditions, and are not covered for any Loss arising from the client's or other  entities' sole liability.

    5.  contract or leased personnel rendering professional services  on behalf of the Named Insured  and for contractor's  pollution liability caused  by pollution conditions arising out of covered  operations which are performed for  others by the Insured  or any entity for  whom  the Insured is legally  liable;

    6.  joint ventures, limited  liability companies or partnerships  in which the Insured has a 50%  or less ownership and in which the Insured is named  as a co-venturer or member; but only as respects  the Insured's legal liability arising  out of the Insured's participation in such joint venture, limited  liability company or partnership.

    7.  Any former  retired principal, partner, officer, director  or employee  of the **Named Insured** but only while acting  within the capacity as a provider of **Professional Services** on behalf of the **Named Insured**.

    8.  Any  spouse  of a person  insured  under this  policy to  the extent that  the spouse may be legally  liable  for  any debt  or liability arising  from matters covered in this  policy.

    9.  such subsidiary or owned or controlled companies of the Named Insured as are in existence at the inception date of this policy;

**K.**  **Insured Contract** means :

    1.  an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    2.  that part  of any other  contract  or agreement  pertaining to the **Named Insureds** business (including an indemnification of a municipality in connection with work  performed  for a municipality)  under which  the **Named Insured**  assume  the tort liability  of another  party to  pay for  **Bodily Injury, Property Damage** or **Clean-up Costs** to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**L.**  **Loading or Unloading** means the handling of property at the job site where **Covered Operations** are being  performed:

    1.  after the property  is moved from  the place  where  it is accepted  for movement  into or  onto a watercraft, aircraft, **Motor  Vehicle**, or rolling stock  of any kind;

    2.  while the property is in or  on a watercraft, aircraft, **Motor  V e h i c l e**, or rolling  stock  of  any kind; or

    3.  while the property is being moved  from  a watercraft, aircraft, **Motor  Vehicle**, or rolling  stock of any kind  to the place  where  it is  finally  delivered;

but **Loading or Unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the watercraft, aircraft, **Motor Vehicle**, or rolling stock of any kind.

M.   **Loss** means:

1.   monetary awards or settlements of compensatory **Damages** and where insurable by law, punitive, exemplary or multiplied Damages because of:

(a)   Claims arising out of **Breach of Professional Duty** in the performance of **Professional Services** under Coverage A.1 or

(b)   **Bodily Injury, Property Damages** or **Clean-up Costs** under Coverage A.2; and

2.   **Claim Expenses**; and

3.   **Emergency Response Costs**.

N.   **Mediation** means the non-binding intervention of a neutral third-party to effect settlement of a **Claim**.

O.   **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1.   Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.   Vehicles maintained for use solely on premises owned or rented by the **Named Insured**;

3.   Vehicles that travel on crawler treads;

4.   Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mount:

a.   Power cranes, shovels, loaders or drills; or

b.   Road construction or resurfacing equipment such as graders, scrapers or rollers.

5.   Vehicles not described in 1, 2, 3, or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

a.   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment, or

b.   Cherry pickers and similar devices used to raise or lower workers.

6.   Vehicles not described in 1, 2, 3, 4, or 5 above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment** but will be considered **Motor Vehicles**:

a.   Equipment designed primarily for:

i.   Snow removal;

ii.   Road maintenance, but not construction or resurfacing; or

iii.   Street cleaning.

b.   Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers, and

c.   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

P.  **Motor Vehicle** means an automobile, van, truck, trailer or semi-trailer designed to travel on public roads, but does not include **Mobile Equipment**.

Q. **Named Insured** means the person or entity designated as such in Item 1 of the Declarations.

R.  **Named Insured's Product** means goods, products, or pieces of equipment, including component parts thereof and including other products in which such goods, products or pieces of equipment are incorporated, which are manufactured, sold, furnished, or supplied by the **Named Insured**, any subsidiary of the **Named Insured**, any entity which wholly or partly owns, operates or manages the **Named Insure**d or any subsidiary of such entity, or any person under license from the **Named Insured**.

S.  **Nuclear Facility** means the site at which a nuclear reactor is located or where nuclear waste or material is disposed of or stored.

T.  **Personal Injury** means injury, other than **Bodily Injury**, arising out of one or more of the following offenses:

1.  false arrest, detention or imprisonment;

2.  malicious prosecution;

3.  wrongful entry into, or eviction of a person from a room, dwelling, or premises that the person occupies;

4.  oral or written publication of material that slanders or libels a person or organization or disparages a people or organization's goods, products or services;

5.  oral or written publication of material that violates a person's right of privacy; and

6.  humiliation.

U.  **Policy Period** means the period set forth in Item 2 of the Declarations, or any shorter period arising as a result of cancellation of this Policy.

V.  **Pollution Conditions** means the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, provided such conditions are not naturally present in the environment.

W.  **Professional Services** means:

a.  architectural, engineering, land surveying, landscape architectural, or construction management services; or

b.  other services as specifically stated in the application to this policy, that the Insured or anyone for whom the Insured is legally liable performs for others for a fee.

X   **Property Damage** means:

1.  Physical injury to or destruction of tangible property of parties other than the Insured including the resulting loss of use and diminution in value thereof;

2.  Loss of use, but not diminution in value, of tangible property of parties other than the Insured that has not been physically injured or destroyed; or

3.  **Natural Resource Damage**.

 **Property Damage** does not include **Clean-Up Costs**.

Y.  **Sexual Harassment** means unwelcome sexual advances and/or requests for sexual favors and/or other verbal or physical conduct of a sexual nature that (1) are made a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance.

**Z**.   **Wrongful Termination** means termination of an employment relationship in a manner which is against the law and   wrongful or in breach of an implied agreement to continue employment.

**AA.**   **Restoration Costs** means reasonable and necessary costs  incurred by the **Insured** with  the company's written  consent,  which   consent   shall not be unreasonably withheld or delayed, to repair, replace or restore   real or personal property to substantially the   same condition it was in prior to being damaged during  work  performed  in the course  of incurring **Clean-Up Costs**.  **Restoration Costs** do not include costs associated with improvements or betterments.

**BB.**   **Natural Resource Damage**   means physical injury  to or destruction of, including the resulting loss of value of, land, fish, wildlife, biota, air, water, groundwater, drinking water   supplies,  and other   such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of  the  fishery conservation zone established by the Magnuson-Stevens Fishery  Conservation and Management Act  (16  U.S.C.  1801 et seq.)), any state or local government,  any foreign government, any  Indian tribe, or, if such resources are subject to a trust restriction on alienation, any member of an Indian tribe.

**CC.**   **Environmental Laws** means any federal, state, provincial or local laws (including, but not limited to, statutes, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives) that are applicable to **Pollution Conditions.**

Endorsement # 1

# Acquisitions Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

## ACQUISITIONS ENDORSEMENT

Any entity acquired by the **Named Insured** shall be considered an Insured for a period of 180 days following the acquisition date. A Retroactive Date of the legal acquisition date of the entity by the Named Insured will apply. Acquired entity(s) with annual revenues greater than $75,000,000 shall be endorsed onto the policy within 180 days of the acquisition date subject to underwriting and additional premium.

Any acquired entity providing services similar to those traditionally provided by the **Named Insured** and with annual revenue less than $75,000,000 will be an Insured with a Retroactive Date as of the date of acquisition and will not be subject to an additional premium charge.

Three years following the date of acquisition the Retroactive Date for such acquired entity(ies) shall automatically revert to the policy Retroactive Date for Architects and Engineers Professional Liability and Contractor's Pollution Liability.

In cases where a Retroactive Date prior to the legal acquisition date of the acquired entity is necessary at the date of acquisition, underwriting information as requested by the underwriter must be submitted for the retroactive coverage to be approved. Additional premium may be charged for retroactive coverage.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 2

# Amendment of Named Insured



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is hereby agreed that Section V. Definitions, Paragraph Q., Named Insured is amended to include the following:
The Named Insured includes any subsidiary, affiliate, or partnership of which the Named Insured owns more than 50% financial interest including those created, or acquired subsequent to the inception date of the policy.

Any entity acquired by the Named Insured shall be considered a Named Insured for a period of one hundred and eighty (180) days following the acquisition date. A retroactive date of the legal acquisition date of the entity by the Named Insured will apply.

In order to provide coverage for the policy term for the acquired entity, underwriting information as requested must be submitted and approved. Additional premiums may be charged in order to endorse the acquired entity or purchased assets to the policy. The retroactive date may be reconsidered at the time of the acquired entity's amendment to the policy.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 3

# Completed Operations Coverage Retroactive Date Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

This endorsement modifies insurance provided by the policy:

In consideration of the premium charged, it is hereby understood and agreed that the Policy is amended as follows:

1.  Section **I. INSURING AGREEMENTS**, **COVERAGE: CLAIMS-MADE CLAUSE**, Subsection A.2 is deleted in its entirety and replaced with the following:

2.  **Contractor's Pollution Liability**

    The Company will pay on behalf of the **Insured** all sums that the **Insured** shall become legally obligated to pay as **Loss** as a result of **Claims** for **Bodily Injury, Property Damage** or **Clean-up Costs** caused by **Pollution Conditions** resulting from **Covered Operations** by the Insured; or by any entity for which the **Insured** is legally liable as a result of the performance of others. The **Pollution Conditions** must be unexpected and unintended from the standpoint of the **Insured**. **Claims** for **Bodily Injury, Property Damage** or **Clean-up Costs** must be first made against the **Insured** and reported to the Company during the **Policy Period**.

    For this Policy to apply, all of the following conditions must be satisfied:

    1.  The **Covered Operations** which result in a **Claim** must commence on or after the Retroactive Date stated in Item 8 of the Declarations; however, solely with respect to **Completed Operations,** the **Bodily Injury, Property Damage** or environmental damage which result in a **Claim** must commence on or after the **Completed Operations** Retroactive Date stated in Item 8 of the Declarations, as amended by this Endorsement below; and

    2.  The **Insured** must report the **Claim** to the Company, in writing, as provided in Section **IV. CONDITIONS, A. INSURED'S DUTIES WHEN THERE IS A CLAIM**, subparagraph 1., of this Policy within the **Policy Period** or within thirty days thereafter.

2.  The following is added to Item 8. Retroactive Date of the Declarations:

    01/01/1968 Coverage A.2. Completed Operations

3.  The following definition is added to Section **V. DEFINITIONS**:

    **EE. 1. Completed Operations** means **Covered Operations** performed during the policy period other than **Covered Operations, which** have not yet been completed or abandoned. **Covered Operations** will be deemed completed at the earliest of the following times:

    (a) When all of the work called for in the **Named Insured's** contract has been completed.

(b) When all of the work to be done at a job site has been completed if the **Named Insured's** contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2. **Completed Operations** shall not include:

(a) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(b) Ownership, entrustment, maintenance, operation or use of any watercraft, aircraft, **Motor Vehicle,** or rolling stock of any kind, which is owned, operated or rented by or loaned to the **Named Insured** other than the **Loading or Unloading** of any watercraft, aircraft, **Motor Vehicle,** or rolling stock of any kind, whether owned, operated or rented by or loaned to the **Named Insured;** or

(c) Waste or any products or materials transported, shipped, or delivered via **Mobile Equipment, Motor Vehicle,** aircraft, watercraft or rolling stock to a location beyond the boundaries of a site at which the **Covered Operations** are performed.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 4**



# Minimum Earned Premium

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is understood and agreed that in the event of cancellation of this policy by or at the direction of the Insured, the Company shall retain a Minimum Earned Premium of $328,336.

It is further agreed that the provision regarding cancellation by the Insured is amended to read:

"If the Insured cancels this policy, earned premium will be computed in accordance with the Customary short-rate table and procedure, or the Minimum Earned Premium stated herein, whichever is greater".

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 5**

# Amendment of Disposal Site Exclusion Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

1. It is hereby agreed that Section **II. EXCLUSIONS**, Paragraph **O.**, is deleted in its entirety and replaced with the following:

   **O.**   Any **Claim** based upon or arising out of any waste or products or materials, which have been delivered to a location beyond the boundaries of a site at which the **Insured** is rendering **Professional Services** or performing **Covered Operations**.

   However, this exclusion does not apply to **Loss** based upon or arising out of any waste, products or materials delivered to Non-Owned Disposal Site(s); provided the Non-Owned Disposal Site: (i) is not owned or operated by the **Named Insured**; (ii) is not a known CERCLA NPL site or listed site under any similar state statute or regulation at the time of delivery; and provided such waste, products or materials originated from a site at which the **Named Insured** is rendering **Professional Services** or performed **Covered Operations**.

2. It is further agreed that the following is added as Non-Owned Disposal Site Sublimit, to Section III.LIMITS OF LIABILTIY AND SELF-INSURED RETENTION:

   Subject to paragraphs A through E above, of this Section III, the most the Company will pay for (1) all **Loss** for each covered **Claim** under Coverage A; or (2) all **Loss** arising out of the same, related or continuous **Pollution Conditions** under Coverage B arising from, associated or in connection with Non-Owned Disposal Site(s) is $ 25,000,000 up to an aggregate amount of $25,000,000 for all **Claims** or **Loss** regardless of the number of **Pollution Conditions**, **Claims** or claimants or **Insureds**. The sublimit shall be included within and not in addition to the limit of liability shown in Item 3 of the Declarations.

3. Coverage under this Endorsement is excess of the Self-Insured Retention amount stated in Item 5 of the Declarations and is limited to the Disposal Site Liability sub-Limit listed in paragraph 2, above of this Endorsement and shall cease when this limit has been exhausted. Any payments made under this Endorsement shall erode the Each Claim and Aggregate limit of liability set forth in Item 3 of the Declarations.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 6**

# How Other Insurance Applies



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

**OTHER INSURANCE CLAUSE**

**Section IV.D. of the policy is deleted in its entirety and replaced with the following: D.**

Where other insurance is available to the **Insured** for **Loss** covered under the terms and conditions of this Policy, the Company's obligation to the **Insured** shall be as follows:

With respect to Coverage A.1.:

1.  This Policy shall apply as excess insurance over any other valid and collectible insurance be it primary, excess, or contributing. This excess insurance shall in no way be increased or expanded as a result of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend. This also applies to the **Insured** while acting as a self-insured for any coverage.

2.  Where, in accordance with paragraph 1. above, this Policy is excess insurance, the Company will pay only its share of the amount of. **Loss,** if any, that exceeds the total amount of all such valid and collectible insurance, and only for such loss as is covered by the terms and conditions of this policy.

    The **Insured** shall promptly upon request of the Company provide the Company with copies of all policies potentially applicable against the liability covered by this Policy.

With respect to Coverage A.2:

This policy shall be primary where required by written contract.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 7

# Rating Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is hereby understood and agreed that the policy premium of $1,224,737 for policy year 07/31/18 to 07/31/19 is based on $83,656,933 annual professional fees. It is further agreed that for rating purposes of EMCOR we will use the following: the total of design/professional fees as reported by EMCOR on their revenue matrix under columns (A) + (C) + (D) + (E) + (G) + (H) + (K) + (L); 6.5%of the total Construction Management At-Risk Revenues reported under column (F); and 1.0% of the total revenues reported under Service Work column (I) + (J).

Any premium adjustments for newly acquired/merged entities during the policy year would be calculated by multiplying the rate derived by taking the total policy premium, indicated above, divided by $83,656,933 times that entity's fees which would be reported under the revenue matrix listed above. The rate thus derived per $1,000 of fees equals $14.640.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 8**

# Reduced Retention and Indemnity Agreement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is hereby understood and agreed that if a **claim** is made against the **Insured** by any person, firm or organization to whom an evidence of insurance document has been issued which specifies a Retention amount that is less than the Self-Insured Retention amount specified in Item 4 of the DECLARATION of this policy, then the Self-Insured Retention applicable to such **claim** shall be such lesser amount; provided, however, the **Insured** hereby agrees to indemnify the **Company** for the difference between the lesser Retention amount specified on the evidence of insurance document and the Self-Insured Retention amount specified in Item 4 of the DECLARATIONS, and to promptly reimburse the **Company** for all costs, expenses and attorney's fees which may be incurred by it in enforcing this indemnity agreement.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 9**

# First Named Insured Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

EMCOR Group, Inc. is hereby designated as the First Named Insured in this policy and as the First Named Insured shall act for all Insureds for the following purposes:

1. receipt of notice of cancellation by the Company;

2. as sole payee of premium due the Company and as recipient of any unearned premium that is returned by the Company;

3. to request changes made to the policy and as recipient to the Company's response to any such request;

4. payment of all premiums and all self-insured retention amounts and for keeping records of information the Company needs for premium computation;

5. consent to settlement or compromise of any claim in accordance with the Settlement Provision I.D of the policy;

6. reporting of changes in scope or nature of the project to the Company.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 10**

# Technology Services Endorsement With Additional Exclusions



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is hereby understood and agreed that this endorsement modifies insurance provided by the policy as follows:

1.  Paragraph **DD, T**echnology Services is added to Section **V. DEFINITIONS** as follows:

   **DD.**   **Technology Services** means computer or electronic information technology service performed in conjunction with **Professional Services** by the **Insured** or any entity for whom the **Insured** is legally liable and shall include data processing, website creation and maintenance, system integration, technology consulting and training.

2.  Section **V. DEFINITIONS**, Paragraph **W**. **Professional Services** is amended to include **Technology Services**.

3.  Paragraph **F.** of Section **II. EXCLUSIONS** is deleted in its entirety and replaced with the following:

   **F.**   any claim based upon or arising out of the design or manufacture of any product or piece of equipment sold, supplied or furnished by the **Insured,** any subsidiary of the **Insured** or any entity which wholly or partly owns, operates or manages the **Insured** or any subsidiary of such entity, or by any person under license from the **Insured.** This exclusion does not apply if the **Claim** arises out of an act, error or omission in the performance of design services or contractor's pollution liability caused by **Pollution Conditions** arising out of **Covered Operations** which are performed for others by the **Insured** or any entity for whom the **Insured** is legally liable. This exclusion shall also not apply to software created or modified specifically for a client for whom the **Insured** is rendering **Professional Services,** except for computer system security software of any type;

4.  Paragraph **S.** is added to Section **II. EXCLUSIONS** as follows:

   **S**.   any infringement of any patent, copyright, trademark, service mark, trade dress, trade name, trade secret, or other intellectual property right in the providing of **Technology Services.**

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 11**



# Cancellation Clause Amendment Pro Rata Cancellation Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

This endorsement modifies insurance provided by the policy:

The Cancellation Provision, Cancellation Condition, or Cancellation Clause, whichever is applicable, is amended by adding the following paragraph to the end thereof:

Notwithstanding any other terms or conditions of this policy to the contrary, if this policy is canceled by the **First Named Insured** for any reason, then the **Company** shall return the unearned pro rata proportion of the premium as of the effective date of cancellation.

The following definitions apply to this endorsement:

1. **Company** means the insurer as shown in the header on the Declarations page of this policy.

2. **First Named Insured** means the first Named Insured as shown on the Declarations page of this policy.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 12

# Amendment to Watercraft, Aircraft, Motor Vehicle or Rolling stock Exclusion Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

1. Subject to the sub-limit of liability below, it is hereby agreed that Section **II. EXCLUSIONS,** Paragraph M. is deleted in its entirety and replaced with the following:

    **M.** Any **Claim** based upon or arising out of the entrustment, maintenance, operation, use, of any watercraft, aircraft, **Motor Vehicle,** or rolling stock of any kind, which is owned, operated, rented by or loaned to the **Insured.** With respect to Coverage A.2, only this exclusion does not apply to:

    1) **loading or Unloading** of any watercraft, aircraft, **Motor Vehicle,** or rolling stock of any kind whether owned, operated or rented by or loaned to the Insured or not; or

    2) Transportation of materials to or from any job site in the course of the performance of the **Named Insured's Covered Operations.**

2 . For purposes of coverage under this Endorsement only, the following exclusion is added to Section **II. EXCLUSIONS:**

    Any **Claim** for **Bodily Injury, Property Damage or Clean-up Costs, which** occurs subsequent to the time the transported material reaches its final destination or while it is in storage off-loaded from the conveyance, which was transporting it for a period of more than 72 hours.

3. Coverage under this Endorsement is subject to a sub-limit of liability as follows:

    Transportation Liability Sub-Limit:    $25,000,000 Per Claim
                                           $25,000,000 Aggregate

4. Coverage under this Endorsement is excess of the Self-Insured Retention amount stated in Item 4 of the Declarations and is limited to the Transportation Liability Sub-Limit listed above and shall cease when this limit has been exhausted. Any payments made under this Endorsement erode the Each Claim limit of liability set forth in Item 3 of the Declarations.

5. Solely with respect to coverage afforded under this endorsement, Item 8. Retroactive Date, Coverage A.2. Contactor's Pollution Liability of the Declarations Page is amended to read as follows:
   01/01/1968

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 13

# Amendment of the Definition of Pollution Conditions Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is hereby agreed that Section **V. DEFINITIONS**: Paragraph **V. Pollution Conditions** is deleted in its entirety and replaced with the following:

1.  Section **V. DEFINITIONS**, Paragraph **V. Pollution Conditions** is deleted in its entirety and replaced with the following:

    **V.  Pollution Conditions** means the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, hazardous substances, low-level radioactive material, electromagnetic fields, medical waste including infectious and pathological waste and waste materials into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment in the concentration or amounts discovered, unless such natural condition(s) are released or dispersed as a result of the performance of **Covered Operations**, and such release or dispersal is unexpected and unintended from the standpoint of the **Insured**. **Pollution Conditions** shall include **Microbial Matter** and Legionella pneumophila in any structure on land and the atmosphere contained within that structure.

    **Pollution Conditions** shall also include the discharge, dispersal, release or escape of silt or sedimentation that originated at and migrated from a job site.

2.  Solely with respect to **Pollution Conditions** arising out of or associated with **Microbial Matter**, Section **I. INSURING AGREEMENTS**, **A. COVERAGES**, **3. EMERGENCY RESPONSE COSTS** is deleted in its entirety.

3.  The following is added to Section **V. DEFINITIONS**, as Paragraph **DD. Microbial Matter**:

    **Microbial Matter** means fungi or bacterial matter, which reproduces through the release of spores or the splitting of cells, including but not limited to mold, mildew and viruses, whether or not such **Microbial Matter** is living.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 14

# Emergency Response Costs Coverage Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is hereby agreed that the Policy is amended as follows:

1.   The following is added to Section **I. INSURING AGREEMENTS**, **A**. **COVERAGE**:

    3.   **EMERGENCY RESPONSE COSTS**

        The Company will pay **Emergency Response Costs** resulting from **Pollution Conditions** caused by **Covered Operations**. **Emergency Response Costs** must be first incurred by the **Insured** during the **Policy Period**.

For this Coverage to apply, all of the following conditions must be satisfied:

    1.   The **Insured** must report the **Emergency Response Costs** to the Company, in writing, as provided in Section **III. CLAIMS AND NOTICE PROVISIONS, A. INSURED'S DUTIES WHEN THERE IS A CLAIM OR EMERGENCY RESPONSE COSTS**, Subparagraph 1. and Subparagraph 3. of this Policy.

    2.   Such **Pollution Conditions** must be unexpected and unintended from the standpoint of the **Insured**.

2.   The following is added to Section **II**. **EXCLUSIONS**, Paragraph **J**.:

    Solely with respect to **Emergency Responses Costs**, based upon or arising out of liability of other assumed by the **Insured** under any contract or agreement.

3.   Section **IV**. **CONDITIONS**, Paragraph **A**. **INSURED'S DUTIES WHEN THERE IS A CLAIM** subparagraph 1. is deleted in its entirety and replaced with the following:

1.   In the event of a **Claim** or **Emergency Response Costs** to which this Policy applies is made against the **Insured**, the **Insured** must give written notice as soon as practicable, and as otherwise required under this section to:

**Construction Professional Liability Claims Manager**
**Steadfast Insurance Company (or name of insurance company used)**
**P.O. Box 968041**
**Schaumburg, IL 60196**
**Fax number: (866) 255-2962**
**New matters may also be reported via email at:**
**USZ_Zurich_Construction_Professional_Claims@zurichna.com**

Written notice shall include every demand, notice , summons or other process received by the Insured's Vice President of Risk Management or Director of Claims Management.

4. Section **IV**. **CONDITIONS** Paragraph **A. INSURED'S DUTIES WHEN THERE IS A CLAIM** is amended by the addition of the following:

As a condition precedent to coverage under this Policy, when **Emergency Response Costs** have been incurred, the **Insured** shall forward to the Company within fourteen (14) days of the commencement of **Pollution Conditions** for which the **Emergency Response Costs** have been incurred all information including but not limited to: the cause and location of the **Pollution Conditions,** technical reports, laboratory data, field notes, expert reports, investigations, data collected, invoices, regulatory correspondence or any other documents relating to such **Emergency Response Costs**.

The Company shall have the right but not the duty to clean up or mitigate **Pollution Conditions** upon receiving the notice as provided in the above paragraph.

5. The following is added to Section **III**. **LIMITS OF LIABILITY AND SELF-INSURED RETENTION**, Paragraph **A. LIMITS OF LIABILITY – EACH CLAIM**:

Solely with respect to coverage for **Emergency Response Costs**, and subject to Paragraph **B**. **LIMITS OF LIABILITY – AGGREGATE**, the most the Company will pay for all **Loss** arising out of any one **Pollution Condition** or the same, related or continuous **Pollution Conditions** is $25,000,000**.**

6. Section **III**. **LIMITS OF LIABILITY AND SELF-INSURED RETENTION**, Paragraph **E. SELF-INSURED RETENTION** is deleted in its entirety are replaced with the following:

**E**.  **SELF-INSURED RETENTION**

The Company's obligation, under the coverages provided by this Policy to pay **Loss**, **Claims Expenses** or **Emergency Response Costs** on behalf of the Insured applies on to the payment of **Loss**, **Claim Expenses** or **Emergency Response Costs** in excess of the **Self-Insured Retention** stated in Item 4. of the Declarations, and subject to the Limits of Liability stated in Item 3. of the Declarations.

The **Self-Insured Retention** shall be applied to the payment of **Loss**, **Claim Expenses** or **Emergency Response Costs**.

The terms of the Policy including those with respect to the Company's rights and duties with respect to defense of **Claims** apply in excess of the **Self-Insured Retention** amount.

7. The following is added to Item 3. of the Declarations:

Coverage **3**. **Emergency Response Costs**: Each Loss: $25,000,000

8. The following is added to Section **V**. **DEFINITIONS**:

**Emergency Response Costs** means reasonable and necessary expenses, including legal expenses incurred with the Company's written consent which consent shall not be unreasonably withheld or delayed, incurred in the remediation of soil, surface water, groundwater or other contamination that must be incurred:

i.   in response to **Pollution Conditions** that necessitate immediate action; and

ii.    within seventy-two (72) hours of the commencement of such **Pollution Condition(s)**; or as approved by the Company in writing.


**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 15**

# War Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

This endorsement modifies insurance provided by the policy:

This insurance does not apply to any loss, cost, damage, expense, injury, claim or suit, caused by, arising out of, or resulting directly or indirectly, in whole or in part from war, including but not limited to:

a.   War, including undeclared or civil war; or

b.   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c.   Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

However, this exclusion does not apply to "terrorism".

As used in this exclusion, "terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

a.   A government;

b.   The civilian population of a country, state or community; or

c.   To disrupt the economy of a country, state or community.

So long as the Terrorism Risk Insurance Act of 2002 (the "Act") is in effect, "terrorism" includes an act of terrorism as defined by Section 102. Definitions of the Act and any revisions or amendments thereto.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 16



# CPL Additional Insured and Primary Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

Solely with respect to coverage provided under Section A.2 Contractors Pollution Liability, It is hereby agreed that Section **V. DEFINITIONS,** Paragraph J. **Insured** is amended to include clients or other entities as additional **Insureds** where required by contract but only for **Loss** arising out of **Covered Operations** performed by the **Named Insured** for such additional **Insured**.

This does not apply to **Bodily Injury, Property Damage** or **Cleanup Costs** arising out of the sole negligence or willful misconduct of the additional **Insured**.

As respects, the coverage afforded the additional **Insured** and where required by contract, this insurance is 1) primary; or 2) primary and non-contributory, and our obligations are not affected by any other insurance carried by such additional **Insured** whether primary, excess, contingent, or on any other basis.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 17



# Amendment of Restoration Costs Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

It is hereby agreed as follows:

1. Section **V. DEFINITIONS**, Paragraph **AA. Restoration Costs** is deleted in its entirety and replaced with the following:

   AA.   **Restoration Costs** means reasonable and necessary costs incurred by the **Insured** with the Company's written consent, which consent shall not be unreasonably withheld or delayed, to repair, replace or restore real or personal property to substantially the same condition it was in prior to being damaged during work performed in the course of incurring **Clean-Up Costs** arising from **Environmental Damage**.

   **Restoration Costs** shall not include costs associated with improvements or betterments, except to the extent that such improvements or betterments of the damaged property entail the use of materials, which are environmentally preferable to those materials, which comprised the damaged property. Such environmentally preferable material must be certified as such by an applicable independent certifying body, where such certification is available, or, in the absence of such certification, based on the judgment of the Company in its sole discretion.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 18**



# Biological Terrorism Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

Solely with respect to any **Loss** arising directly or indirectly as a result of certified "acts of terrorism" as defined by Section 102(1) of the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2007 (collectively, "TRIA") it is hereby agreed that:

1.  Section **V. DEFINITIONS,** Paragraph **V. Pollution Condition** is deleted in its entirety and replaced with the following:

    **V.   Pollution Condition** means the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, hazardous substances, low-level radioactive material, electromagnetic fields, medical waste including infectious and pathological waste and waste materials into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment in the amounts or concentrations discovered unless such natural condition(s) are released or dispersed as a result of the performance of **Covered Operations**, and such release or dispersal is unexpected and unintended from the standpoint of the **Insured**.. Pollution Conditions shall include **Microbial Matter** and Legionella pneumophila in any structure on land and the atmosphere contained within that structure **Pollution Condition** shall also include **Bioterrorism Agents**.

2.  The following is added to Section **V. DEFINITIONS**:

    **Bioterrorism Agents** means viruses, bacteria or other agents, as defined by the U.S. Center for Disease Control, whether or not such viruses, bacteria or other agents are living, provided such matter was deliberately released, discharged or dispersed intentionally by a third party.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 19**

# Advice of Cancellation to Entities Other Than The Named Insured Limited To E-Mail Notification



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

This policy is amended as follows:

In the event that the **Insurer** cancels this policy for any reason other than non-payment of premium, and

1. The cancellation effective date is prior to this policy's expiration date;

2. The **First Named Insured** is under an existing contractual obligation to notify a certificate holder when this policy is canceled (hereinafter, the "Certificate Holder(s)"); and has provided to the **Insurer**, either directly or through its broker of record, the email address of the contact at such entity, and the **Insurer** received this information after the **First Named Insured** receives notice of cancellation of this policy and prior to this policy's cancellation effective date, via an electronic spreadsheet that is acceptable to the **Insurer**, the **Insurer** will provide advice of cancellation (the "Advice") via e-mail to such Certificate Holders.

Proof of the **Insurer** emailing the Advice, using the information provided by the **First Named Insured**, will serve as proof that the **Insurer** has fully satisfied its obligations under this endorsement.

This endorsement does not affect, in any way, coverage provided under this policy or the cancellation of this policy or the effective date thereof, nor shall this endorsement invest any rights in any entity not insured under this policy.

The following Definitions apply to this endorsement:

1. **First Named Insured** means the Named Insured shown on the Declarations Page of this policy.

2. **Insurer** means the insurance company shown in the header on the Declarations Page of this policy.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 20**

# Economic Sanctions Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

This endorsement modifies insurance provided under the following:

• ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY

• ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY AND CONTRACTORS

• POLLUTION LIABILITY

• CONTRACTORS PROFESSIONAL LIABILITY

• CONTRACTORS PROFESSIONAL LIABILITY AND CONTRACTORS POLLUTION

• LIABILITY INSURANCE

• DESIGNERS & AGENCY CONSTRUCTION MANAGERS PROJECT SPECIFIC - PROTECH

• DESIGNERS & CONSTRUCTORS PROJECT SPECIFIC – PROTECH

The following is added to the **CONDITIONS** section:

The **Company** shall not be deemed to provide cover and the **Company** shall not be liable to pay any **Claim** or provide any benefit hereunder to the extent that the provision of such cover, payment of such **Claim** or provision of such benefit would expose the **Company**, the **Company's** parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 21

# Amendment Damages Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is hereby agreed as follows:

1.  Section **V. DEFINITIONS,** Paragraph **H. Damages,** is deleted in its entirety and replaced with the following:

> **H. Damages** means any amount which an **Insured** is legally obligated to pay for any **Claim** to which this insurance applies and shall include judgments, settlements, and interest on judgments, provided always that **Damages** shall not include the return or withdrawal of professional fees, sanctions, uninsurable fines or penalties imposed by law, or other matters that may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 22**

# Professional Liability Crisis Response Coverage Extension Endorsement
(WITH CRISIS MANAGEMENT LOSS AND CRISIS RESPONSE COSTS)



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

This endorsement modifies insurance provided by the policy:

**THIS ENDORSEMENT EXTENDS COVERAGE TO PROVIDE FOR "CRISIS RESPONSE COSTS" AND "CRISIS MANAGEMENT LOSS" IN THE EVENT OF A "CRISIS EVENT" AS DEFINED HEREIN. THE LIMITS OF INSURANCE PROVIDED FOR SUCH COVERAGE ARE IN ADDITION TO THE LIMITS OF INSURANCE PROVIDED IN THE DECLARATIONS OF THIS POLICY. IF THIS ENDORSEMENT IS ATTACHED TO A CLAIMS-MADE POLICY, THIS ENDORSEMENT NEVERTHELESS REQUIRES THAT ALL OF THE CRITERIA SET FORTH IN SECTION I., SUBPARAGRAPHS B.1. THROUGH B.4., INCLUSIVE, BE MET.**

## SCHEDULE

| Crisis Response Coverage Extension | Limits of Insurance |
|---|---|
| Crisis Response Aggregate Limit | **$300,000** |
| Each Crisis Response Costs Limit | **$250,000** Each "Crisis Event" |
| Each Crisis Management Loss Limit | **$50,000** Each "Crisis Event" |

Notwithstanding any provisions to the contrary in the policy to which this endorsement is attached, subject to the Limits of Insurance as shown in the above Schedule and in accordance with the terms and conditions set forth in this endorsement, the policy is extended to provide "crisis response costs" and "crisis management loss" resulting from a "crisis event".

## SECTION I. – CRISIS RESPONSE COVERAGE EXTENSION

**A.** We will reimburse you or pay on your behalf reasonable and necessary "crisis response costs" and/or "crisis management loss" arising out of: (1) "bodily injury" or "property damage" for which coverage is provided under this policy, or (2) "imminent injury", but only with respect to a "crisis event" to which this insurance applies. The amount we will reimburse you or pay on your behalf for such "crisis response costs" and/or "crisis management loss" is limited as described in SECTION III – CRISIS RESPONSE LIMITS OF INSURANCE. No self-insured retention or deductible shall apply to this coverage extension endorsement.

**B.** We will reimburse you or pay on your behalf "crisis response costs" and/or "crisis management loss" arising out of a "crisis event" only if:

1.  The "bodily injury" or "property damage" or "imminent injury" takes place in the "coverage territory"; and

2.  The "bodily injury" or "property damage" or "imminent injury" commences to occur during the policy period, and

3.  Such "crisis response costs" and/or "crisis management loss" did not arise out of any fact, circumstance, pre-existing condition, situation, "bodily injury", "property damage", or "imminent injury" that you, prior to the inception date of this policy, knew, or reasonably should have known, could lead to, cause or result in such "crisis response costs" and/or "crisis management loss", and

4.  Such "crisis response costs" and/or "crisis management loss" are incurred within thirty (30) days after the commencement date of the "crisis event". The end of the policy period will not cut short this thirty (30) day period.

## SECTION II. – EXCLUSIONS

The exclusions of the policy apply to this endorsement, including, but not limited to, any exclusion, which applies to workers compensation, or any similar law. However, the following additional exclusions applicable to this endorsement supersede any similar exclusions in the policy.

This coverage extension does not apply to:

**Newly acquired or merged entities**

"Crisis response costs" or "crisis management loss" resulting from "bodily injury" or "property damage" or "imminent injury" that occurred prior to the date you acquired or merged with any other entity.
**Infectious Diseases or Illnesses**

"Crisis response costs" or "crisis management loss" arising out of infectious diseases or illnesses caused by any bacterium, virus, or fungus. However, this exclusion does not include, food-borne illnesses or defective vaccines.

## SECTION III. – CRISIS RESPONSE LIMITS OF INSURANCE

**A.**  The Schedule above and the rules below establish the most we will reimburse or pay on your behalf for "crisis response costs" and "crisis management loss" regardless of the number of Insureds, "crisis events", or "affected persons".

**B.**  The Crisis Response Aggregate Limit is the most we will reimburse or pay on your behalf for the sum of all "crisis response costs" and "crisis management loss" under this endorsement.

**C.**  Subject to Paragraph **B.** above, the Each Crisis Response Costs Limit is the most we will reimburse or pay on your behalf for all "crisis response costs" arising out of any one "crisis event".

**D.**  Subject to Paragraph **B.** above, the Crisis Management Loss Limit is the most we will reimburse or pay on your behalf for all "crisis management loss" arising out of any one "crisis event".

All "crisis events" or all related or interrelated "crisis events" will be deemed to be one "crisis event".

## SECTION IV – DEFINITIONS

The definitions of the policy apply to this endorsement. However, the following additional definitions applicable to this endorsement supersede any similar definitions in the policy.

You and your refer to the Named Insured and we, us and our refer to the Company providing this insurance. Other words and phrases that appear in quotation marks have special meaning as follows:

**A.**  "Affected persons" means those individuals who suffer direct "bodily injury" or "property damage", or directly experience "imminent injury", including such individual's immediate family members.

**B.**  "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

**C.**   "Coverage territory" means the United States of America, including its territories and possessions, Puerto Rico and Canada.

If coverage for "crisis response costs" or "crisis management loss" under this endorsement is in violation of any United States of America's economic or trade sanction, including, but not limited to, sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") then coverage for such "crisis response costs" or "crisis management loss" shall be null and void.

**D.**   "Crisis event" means:

   **1.**   An emergency situation including, but not limited to, a manmade disaster, such as arson, a bombing, the taking of hostages, a mass shooting, terrorism (if covered under the policy only), intentional contamination of food, drink, or pharmaceuticals or the actual or alleged mishandling of a natural disaster, that results in covered "bodily injury", "property damage" or "imminent injury" to any person, and

   **2.**   Such emergency situation has been associated with or may reasonably be associated with significant adverse regional or national news media coverage.

**E.**   "Crisis management firm" means a public relations firm or crisis management firm, assigned or approved by us in writing that is hired by you to perform services of the type covered under "crisis management loss" in connection with a "crisis event".

**F.**   "Crisis management loss" means reasonable and necessary fees and expenses charged by a "crisis management firm" or your employees in providing public relations and media management services for the purpose of maintaining and restoring public confidence in you. These expenses may include printing, advertising, or mailing of materials to manage reputational risk. This does not include the salaries of your employees.

**G.**   "Crisis response costs" means:

   **1.**   reasonable and necessary "emergency transport expenses", "emergency psychology expenses", funeral expenses, travel expenses, and temporary living expenses incurred by you to provide relief and/or support to "affected persons", and

   **2.**   expenses incurred by you to secure the scene of a "crisis event". "Crisis response costs" shall not include "defense costs" or "crisis management loss".

**H.**   Defense costs" means legal fees and expenses incurred by you for legal advice or services sought in anticipation of, or upon actual receipt of, a claim alleging liability and seeking damages for "bodily injury", "property damage" or "imminent injury".

**I.**   "Emergency transport expenses" means reasonable and necessary emergency transport expenses, occurring within 24-hours after a "crisis event", to transport an "affected person" sustaining "bodily injury" in a "crisis event" to a medical treatment facility.

**J.**   "Emergency psychology expenses" means reasonable and necessary expenses for psychology or counseling services provided to "affected persons" and incurred within the first fourteen (14) days after a "crisis event". This does not include the costs or expenses of any medications or hospitalizations. Such psychology or counseling services must be approved by the "crisis management firm".

**K.**   "Imminent injury" means the actual and immediate threat of "bodily injury" or "property damage".

**L.**   "Property damage" means:

   **1.**   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **2.**   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "crisis event" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

## SECTION V. – CONDITIONS

The general and/or common conditions of the policy apply to this endorsement. However, the following conditions applicable to this endorsement supersede any similar conditions in the policy to the contrary.

**A. Insured's Duties in the Event of a "Crisis Event"**

   1. You must see to it that we are notified by within twenty-four (24) hours of a "crisis event" which may result in "crisis response costs" or "crisis management loss".

      The call notice must be to:

      Construction Professional Liability Claims Manager
      Steadfast Insurance Company (or name of insurance company used)
      P.O. Box 968041
      Schaumburg, IL 60196
      Fax number: (866) 255-2962
      New matters may also be reported via email at:
      USZ_Zurich_Construction_Professional_Claims@zurichna.com

      If necessary, we will provide you with an approved "crisis management firm" unless we agree to accept a "crisis management firm" that you have
      selected.

   2. Thereafter you must provide written notice, as soon as practicable. To the extent possible, this written notice should include:

      a. How, when and where the "crisis event" took place;

      b. The names and addresses of any "affected persons" and witnesses; and

      c. The nature and location of any injury or damage arising out of the "crisis event".

   3. If reimbursement is sought directly by you, you must submit a claim for reimbursement of "crisis response costs" and "crisis management loss" within ninety (90) days after incurring such "crisis response costs" or "crisis management loss". Such claim(s) must include invoices and/or receipts supporting such "crisis response costs" or "crisis management loss" for each and every expense in excess of fifty (50) dollars.

   4. Written notice and claim submission as required in Paragraphs **1.** and **2.** of this section, respectively, shall be submitted to:

      Construction Professional Liability Claims Manager
      Steadfast Insurance Company (or name of insurance company used)
      P.O. Box 968041
      Schaumburg, IL 60196
      Fax number: (866) 255-2962
      New matters may also be reported via email at:
      USZ_Zurich_Construction_Professional_Claims@zurichna.com

**B. Anti-Stacking Provision**

If "crisis response costs" and/or "crisis management loss" provided by this coverage extension endorsement are also provided by any other insurance issued to you by us or any of our affiliated companies (whether or not such costs or loss are referred to using these same terms), the maximum limit of insurance under all insurance available shall not

exceed the highest applicable limit of insurance available under any one policy or endorsement. This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically intended to apply as excess insurance over this coverage extension endorsement.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 23

# Biodiversity Damage Definition and Property Damage Definition Amendatory Endo



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is hereby agreed that:

1.  The following are added to Section **V. DEFINITIONS**:

    **Biodiversity Damage** means actual physical damage to or destruction of water, land or protected species or natural habitats for which the **Insured** is legally responsible or has been incurred by the **Insured** under European Union Directive 2004/35/CE on environmental liability and/or any equivalent local legislation.

    **Mitigation Expenses** means those expenses resulting from reasonable measures taken at the sole initiative of the **Insured** in good faith, either to avoid **Pollution Conditions, which** may give rise to a **Claim** or to avoid or reduce any consequences thereof, in as much as these measures are urgent.

2.  Section **V. DEFINITIONS**, Paragraph **CC. Environmental Laws** and Paragraph **X. Property Damage** are deleted in their entirety and replaced with the following:

    **CC. Environmental Laws** means any federal, state, provincial or local laws, or the European

    Union Directive 2004/35/CE on environmental liability where it has been enacted into national legislation, (including, but not limited to, statutes, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives) that are applicable to **Pollution Conditions**.

    **X. Property Damage** means:

    1.  Physical injury to or destruction of tangible property of parties other than the **Insured**, including the resulting loss of use and diminution in value thereof;

    2.  Loss of use, but not diminution in value, of tangible property of parties other than the **Insured** that has not been physically injured or destroyed; or

    3.   **Natural Resource Damage** or **Biodiversity Damage**. **Property Damage** does not include **Environmental Damage**.

3.   The following is added to Section **II. EXCLUSIONS**:

**MITIGATION EXPENSES:**

Based upon or arising from **Mitigation Expenses**.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 24**



# Definition of Insured Amendatory Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is hereby understood and agreed that this endorsement modifies insurance provided by the policy as follows:

Definition **J**. of Section **V. DEFINITIONS** is deleted in its entirety and replaced with the following:

**J.   Insured** means:

1.   the **Named Insured** designated in Item 1 of the Declarations;

2.   any person who is or was a partner, officer, member, director, stockholder or employee of the **Named Insured,** but only while acting within the scope of his/her duties as such;

3.   the heirs, executors, administrators, and legal representatives of each **Insured** as defined in 1. and 2. above, in the event of death, incapacity or bankruptcy of such **Insured**, but only as respects liability arising out of **Professional Services** or **Covered Operations** rendered by or on behalf of the **Named Insured** prior to such **Insured's** death, incapacity or bankruptcy;

4.   solely with respect to Coverage A. 2., the client for whom the **Named Insured** performs or performed **Covered Operations**, provided that a written contract or agreement is in effect between the **Named Insured** and the client requiring the client to be an **Insured** under the **Insured's** contractors pollution liability policy. However, such clients are covered under this policy solely with respect to **Loss** arising from **Covered Operations** performed by the **Named Insured** and are not covered for any **Loss** arising from the client's own liability

5.   a former partner, officer, director or employee of the **Named Insured** while rendering **Professional Services** on behalf of the **Named Insured;**

6.   contract or leased personnel rendering **Professional Services** or performing **Covered Operations u**nder the supervision and on behalf of the **Named Insured**;

7.   a joint venture, partnerships, or limited liability company in which the **Named Insured** is named as a coventurer or member, but only as respects the **Insured's** legal liability arising out of the **Insured's** participation in such joint venture or limited liability company;

8.   Joint ventures, limited liability companies and partnerships for which the Insured has 50% or less ownership, and has agreed to provide the co-ventures' Additional Named Insured status under the policy, but at the sole discretion of the First Named Insured;

9.   any predecessor in interest.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 25**



# Amendatory Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is hereby understood and agreed that **I. INSURING AGREEMENTS**, **D. SETTLEMENT PROVISIONS,** is deleted in its entirety and replaced with the following:

**D.  SETTLEMENT PROVISIONS:**

For Claims covered under Coverage A.1, Coverage A.2 or under both Coverage A.1 and A.2, the Company will not settle or compromise the **Claim** without the consent of the Director Risk Management. Under all Coverage of this Policy, if the Director Risk Management refuses to consent to a settlement or compromise recommended by the Company and elects to contest such Claim or continue legal proceedings in connection with such **Claim,** then the Company's liability for the **Claim** shall not exceed the amount for which the **Claim** could have been so settled plus **Claim** Expenses incurred up to the date of such refusal subject to the applicable limit of liability under this Policy.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 26**

# Additional Named Insured(s)



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that Item 1. of the DECLARATIONS is amended to include the following:

eTec Fire Protection, LLC
eTec Mechanical Corporation

Retroactive date: 5/3/2018

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement # 27**

# Additional Named Insured Endorsement
**(WITH RETROACTIVE DATES)**



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

This endorsement modifies insurance provided by the policy:

1.  The following additional **Named Insureds** are added to the policy. The **First Named Insured** is the appointed and irrevocable agent for all **Insureds**, including for the purpose of receipt of any notice of cancellation, notice of nonrenewal (if applicable), and the payment of any premium or deductible or the return of any premium under this policy.

2.  Notwithstanding the Retroactive Date shown in Item 8. of the Declarations, the Retroactive Date applicable to each **Named Insured** shown in the Schedule of Additional Named Insureds below shall be the Retroactive Date corresponding to such **Named Insured**.

<u>SCHEDULE OF ADDITIONAL NAMED INSUREDS</u>

| Named Insured | Retroactive Date |
|---|---|
| Newcomb and Company | 04/01/2016 |

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 28**

# ADDITIONAL NAMED INSURED ENDORSEMENT
**(WITH SPECIAL LIMITS AND RETROACTIVE DATES)**



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

This endorsement modifies insurance provided under this Policy as follows:

1.  Item 1. of the Declarations, **Named Insured,** is amended to include the persons or entities shown on the Schedule of Additional Named Insureds below (hereinafter, the **Schedule**).

2.  Notwithstanding the Retroactive Date shown in Item 8. of the Declarations, the Retroactive Date applicable to each **Named Insured** shown in the **Schedule** below shall be the Retroactive Date corresponding to such **Named Insured**.

3.  The Limits of Liability applicable to each **Named Insured** shown in the **Schedule** below is included within and reduces the Annual Aggregate Limit and Per Claim Limit shown in Item 3. of the Declarations. Such Annual Aggregate Limit and Per Claim Limit shown in Item 3. of the Declarations shall not be reinstated, increased or extended as result of this endorsement.

4.   The Self-Insured Retention applicable to each **Named Insured** shown in the **Schedule** below shall be $500,000 Each Claim.

5.  The **Named Insured** first shown in Item 1. of the Declarations is the appointed and irrevocable agent for all **Insureds**, including for the purpose of receipt of any notice of cancellation, notice of nonrenewal (if applicable), and the payment of any premium, deductible or self-insured retention or the return of any premium under this policy.

## SCHEDULE OF ADDITIONAL NAMED INSUREDS

| Named Insured | Limits of Liability | Retroactive Date |
|---|---|---|
| Ardent Services, LLC | $25,000,000 Per Claim Limit<br>$25,000,000 Annual Aggregate Limit | 04/15/2016 |
| Rabalais Constructors, LLC | $25,000,000 Per Claim Limit<br>$25,000,000 Annual Aggregate Limit | 04/15/2016 |

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 29**



# PRE-CLAIMS ASSISTANCE ENDORSEMENT

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is hereby understood and agreed that the following **Section I.I. SUPPLEMENTAL PAYMENTS** shall be added to the policy following Section **I. INSURING AGREEMENT**:

**I.I.  SUPPLEMENTAL PAYMENTS**

All payments made under this section are not subject to the Self Insured Retention and are in addition to the Limits of Liability for each Coverage Part set forth in Item 2 of the Declarations. However, the Company shall not be obligated to make any payments under this Section after the Aggregate Limit of Liability set forth in the Declarations has been exhausted by payments of "Damages" and/or "Professional Liability Claim Expenses" or tendered into court.

A.  Pre-Claims Assistance

If the "Insured" reports a circumstance during the "Policy Period," in accordance with Section **V. CLAIM PROVISIONS**, Item A.2. NOTICE OF CIRCUMSTANCE the Company may, in its sole discretion and at its expense, investigate or monitor such circumstance, and such costs or expenses will not be applied towards the Self Insured Retention or erode the applicable Limit of Liability until a "Claim" is made.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 30



# RECTIFICATION INDEMNITY COVERAGE

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is agreed that the following COVERAGE PART is added to the Policy, and that Sections II. DEFINITIONS, III. EXCLUSIONS, IV. LIMITS OF LIABILITY, V. CLAIM PROVISIONS, VI. EXTENDED REPORTING PERIOD, and VII. CONDITIONS shall also apply to coverage provided under this Endorsement.

**COVERAGE PART – RECTIFICATION INDEMNITY COVERAGE**

**I.    INSURING AGREEMENT**

**A.    COVERAGE**

We shall indemnify the "Named Insured" for the "Named Insured's" "Actual and Necessary Costs and Expenses "incurred in rectifying a "Design Defect" in any part of the construction works or engineering works for any project, provided that:

1.  The "Named Insured" reports "Actual and Necessary Costs and Expenses" for a "Design Defect" as soon as practicable after discovery of such "Design Defect" but in no event after any certificate of substantial completion has been issued;

2.  The "Named Insured" demonstrates to us that the "Actual and Necessary Cost and Expenses" arise out of the "Named Insured's" rendering of "Professional Services" which resulted in a "Design Defect" for which a third party could otherwise make a "Claim" against the "Named Insured".

If we make any payment under this Rectification Indemnity Coverage, we shall be subrogated to all your rights against any person or organization, including the right to participate with the "Insured" in the exercise of all the "Insured's" rights of recovery. In the event an "Insured" either concurrently or subsequently files a "Protective Indemnity Claim" under this policy or a subsequent renewal for the same "Design Defect" for which the insured is undertaking or has previously undertaken rectification efforts, then any proceeds the "Insured" may receive from the "Design Professional's Insurance" shall be used to reimburse us for any payments under the Rectification Indemnity Coverage afforded under this coverage part. If the proceeds received from the "Design Professional's Insurance" are less than the amount paid by us under this Rectification Indemnity Coverage, then difference between the amount paid by us under this Rectification Indemnity Coverage and the proceeds received from the "Design Professional's Insurance" shall erode the limits of liability available under the Contractor's Protective Liability Coverage Part.

In the event that a "Professional Liability Claim" arises out of the same "Design Defect" for which the insured is undertaking or has previously undertaken rectification efforts under the Rectification Indemnity Coverage under this coverage part, then the "Insured's" self-insured retention obligation under the Contractor's Professional Liability Coverage Part shall be offset to the extent of the costs incurred by the "Insured" under their self-insured retention obligations under the Rectification Indemnity Coverage afforded under this coverage part. payments made under this Rectification

Indemnity Coverage part shall erode the limits of liability available under the Contractor's Professional Liability Coverage Part.

## B.  ARBITRATION

In the event that the "Named Insured" and we do not agree that "Actual and Necessary Costs and Expenses" presented by the "Named Insured" under this Coverage Part arises out of rectifying a "Design Defect," we mutually agree, the dispute, as to that sole issue only, shall be referred to the American Arbitration Association before a three member panel and pursuant to their then existing Construction Industry Rules for an opinion as to whether the breach was or was not the result of a "Design Defect". The panel shall be composed of one licensed attorney, one licensed "Design Professional" and one licensed contractor. The "Named Insured" and we agree to accept the opinion of a majority of the panel as final and binding upon each of us as to that issue only.

## II.  DEFINITIONS

In addition to Section II. DEFINITIONS of this policy, and solely as respects the coverage provided under Rectification Indemnity Coverage, the following Definitions shall apply:

A.  "Actual and Necessary Costs and Expenses" means those sums actually incurred by the "Named Insured" which are reasonably related to the efforts needed to remedy a "Design Defect" covered by this endorsement, less any overhead, profit and mark-up of the "Named Insured".

B.  "Design Defect" means an error, omission or negligent act in the preparation of engineering or architectural designs, plans, drawings, specifications, calculations, surveys, and studies and shall not include any actual or alleged negligence in the issuance of change orders, or observation of construction review of the contractor's requests for payment

C.  "Temporary Works" means formwork, structures, or mechanical plant designed and constructed for use as construction aids for a specific project.

## III.  EXCLUSIONS

In addition to Section III. EXCLUSIONS of this policy, and solely as respects the coverage provided under this Rectification Indemnity Coverage Endorsement, this insurance does not apply to:

A.  the failure of any "Temporary Works" to perform their intended function;

B.  loss of or damage to property other than property which forms the subject of the contract to which the "Professional Service" relates;

C.  any cost estimate being exceeded.

## IV. REPORTING OF ACTUAL AND NECESSARY COSTS AND EXPENSES

Solely with respect to the coverage provided by this endorsement, the "Named Insured" must report the "Actual and Necessary Costs and Expenses" for a "Design Defect" to us during the policy period or any applicable Automatic Extended Reporting Period or Optional Extended Reporting Period.

## V. SUB-LIMIT OF LIABILITY/SELF INSURED RETENTION/RETROACTIVE DATE

The following Sub-Limit of Liability and Self Insured Retention shall apply to RECTIFICATION INDEMNITY COVERAGE:

| | | |
|---|---|---|
| Sub-Limit of Liability | $25,000,000 | Each Claim |
| | $25,000,000 | Total for All Claims |
| Self-Insured Retention | $500,000 | Each Claim |

A retroactive date of 1/1/1968 shall apply to coverage provided under this endorsement.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 31**

# Headquarters Address Change



| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. | |
|---|---|
| Policy No. EOC 9817132 02 | Effective Date: 07/31/2018 |

**This Endorsement Changes the Insurance Policy. Please Read It Carefully.**

As of August 1, 2016, any and all references to the Headquarters Address 1400 American Lane, Schaumburg, IL 60196 are changed to 1299 Zurich Way, Schaumburg, IL 60196.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 32**

# Sanctions Exclusion Endorsement



**Policyholder:**  EMCOR Group, Inc.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided.  Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**Endorsement # 33**

# NUCLEAR ENERGY LIABILITY EXCLUSION – BROAD FORM



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that this policy does not apply:

A.  Under any liability coverage, to "bodily injury" or "property damage";

1.  With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

2.  Resulting from the "hazardous properties" of "nuclear material" and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, with any person or organization.

B.  Under any medical payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C.  Under any liability coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material" if:

1.  The "nuclear material" (i) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (ii) has been discharged or dispersed there from;

2.  The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

3.  The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility" but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such a "nuclear facility" and any property thereat.

D.  As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "by-product material";

"Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used of exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (1) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (2) resulting from the operation by any person or organization of any "nuclear facility" included under paragraphs (1) and (2) of the definition of "nuclear facility".

"Nuclear facility" means:

1. Any "nuclear reactor";

2. Any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing "spent fuel" or (iii) handling, processing or packaging "waste";

3. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

4. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Endorsement # 34

# Additional Named Insured(s)



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that Item 1. of the DECLARATIONS is amended to include the following:

Southstar Fire Protection Company d/b/a Northstar Fire Protection of Texas, Inc.

Northstar Alarm & Suppression System, L.L.C.

Retroactive Date:  01/04/2017

EMCOR-CCI Holdings, Inc.

CCI Mechanical, Inc.

Contractors Leasing, Inc.

Engineering and Construction Services, Inc.

Retroactive Date: 03/01/2017

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Endorsement # 35

# Additional Named Insured(s)



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that Item 1. of the DECLARATIONS is amended to include the following:

Cherokee Millwright, Inc.

Retroactive Date:  11/01/2017

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement # 36**

# Additional Insured and Primary Coverage Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of premium already paid, it is hereby understood and agreed that Endorsement No. 16 is deleted in its entirety and replaced as follows:

Solely with respect to coverage provided under Section A.2 Contractors Pollution Liability, It is hereby agreed that Section **V. DEFINITIONS,** Paragraph J. **Insured** is amended to include clients or other entities as additional **Insureds** where required by contract but only for **Loss** arising out of **Covered Operations** performed by or on behalf of the **Named Insured** for such additional **Insured**.

This does not apply to **Bodily Injury, Property Damage** or **Cleanup Costs** arising out of the sole negligence or willful misconduct of the additional **Insured**.

As respects, the coverage afforded the additional **Insured** and where required by contract, this insurance is 1) primary; or 2) primary and non-contributory, and our obligations are not affected by any other insurance carried by such additional **Insured** whether primary, excess, contingent, or on any other basis.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 37**

# ADA, FHA, OSHA, State Licensing and Regulatory Board Legal Expense Reimbursement Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 07/31/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided under the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

The following **Section I.I.  SUPPLEMENTAL PAYMENTS** shall be added to the policy following Section **I.  INSURING AGREEMENT**:

**I.I. SUPPLEMENTAL PAYMENTS**

All payments made under this section are not subject to the Self Insured Retention and are in addition to the Limits of Liability for each Coverage Part set forth in Item 2 of the Declarations.  However, the Company shall not be obligated to make any payments under this Section after the Aggregate Limit of Liability set forth in the Declarations has been exhausted by payments of "Damages" and/or "Professional Liability Claim Expenses" or tendered into court.

A. ADA, FHA, OSHA, State Licensing and Regulatory Board Legal Expense Reimbursement

The Company will reimburse the "Insured" for reasonable and necessary "Legal Expenses" incurred in responding to a proceeding initiated directly against the "Insured" by a:

1. governmental, quasi-governmental or administrative agency under the Americans with Disabilities Act of 1990 (ADA) as amended 42 USC §§ 12101-12213 (2005), the Fair Housing Act (FHA) as amended 42 USC §§ 3601-3631 (2003), or the Occupational Safety and Health Act (OSHA) as amended 29 USC §§ 651-678 (1999); or

2. by a state licensing or regulatory board;

up to a maximum of twenty-five thousand dollars ($25,000) per proceeding subject to a maximum of fifty thousand dollars ($50,000) per "Policy Period";

Provided always that any such proceeding results from "Professional Services" and is:

a. first commenced against the "Insured" during the "Policy Period"; and

b. reported to the Company in writing during the "Policy Period" and before any legal expenses have been incurred; and

c. the "Professional Services" occurred on or after any applicable "Retroactive Date."

B. For purposes of this Insuring Agreement, the following definition is added to Section **II. DEFINITIONS**:

U. "Legal Expense" means the reasonable costs, charges, fees and expenses charged by an attorney appointed by us, (other than compensation of any "Insured") and incurred by the "Insured" solely in connection with such proceeding.

**All other terms and conditions of this policy remain unchanged.**

# Important Notice
**Service of Suit and In Witness Clause**



**Service of Suit**

In the event an action or proceeding arises under the contract, it is agreed that the Company, at your request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver or limitation of the right to arbitration as set forth herein or to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is further agreed that service of process in such suit may be made upon Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703. In any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured of any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Illinois Corporation Service Company as the entity to whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

President                                                                 Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?** Your agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours: 8am - 4pm [CT])
**Email**: info.source@zurichna.com

Endorsement # 38



# Additional Named Insured(s)

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 02 | 07/31/2018 | 07/31/2019 | 10/02/2018 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that Item 1. of the DECLARATIONS is amended to include the following:

Morley Moss, Inc.

Retroactive Date: 10/02/2018

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement #** 39

# Additional Named Insured(s)



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132-02 | 07/31/2018 | 07/31/2019 | 11/01/2018 | 60197000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

EMCOR GROUP, INC.
301 Merritt Seven, 6th Floor
Hamden, CT  06518

**Producer:**

ARTHUR J GALLAGHER RISK MNGT SERV INC
2 WESTCHESTER PARK DR FL 3
WHITE PLAINS, NY  10604-3427

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that Item 1. of the DECLARATIONS is amended to include the following:

Control Solutions Group, Inc.

Retro Date:  11/1/2018

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement #** 40

# Additional Named Insured(s)



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132-02 | 07/31/2018 | 07/31/2019 | 01/04/2019 | 60197000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

EMCOR GROUP, INC.
301 Merritt Seven, 6th Floor
Norwalk, CT  06851-5914

**Producer:**

ARTHUR J GALLAGHER RISK MNGT SERV INC
2 WESTCHESTER PARK DR FL 3
WHITE PLAINS, NY  10604-3427

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that Item 1. of the DECLARATIONS is amended to include the following:

Hill York Service Company LLC
Retro date: 1/4/2019

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement #** 41

# Additional Named Insured(s)



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132-02 | 07/31/2018 | 07/31/2019 | 04/01/2019 | 60197000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

EMCOR GROUP, INC.
301 Merritt Seven, 6th Floor
Norwalk, CT  06851-5914

**Producer:**

ARTHUR J GALLAGHER RISK MNGT SERV INC
2 WESTCHESTER PARK DR FL 3
WHITE PLAINS, NY  10604-3427

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that Item 1. of the DECLARATIONS is amended to include the following:

Baker Electric, Inc.
Retro dated: 4/1/2019

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

## **Verification of Policy Records**

The attached record constitutes documents relative to the contents of policy EOC 9817132 02, (date) as of 07/31/2018 generated from computer data maintained by the issuing company. Cosmetic changes not affecting coverage may have occurred to the format of the policy over time.

_____
Name

Melissa Pelletier_____
Printed Name

June 29, 2022_____
Date

# Connecticut Notification of Surplus Lines Policy



**THIS IS A SURPLUS LINES POLICY AND IS NOT PROTECTED BY THE CONNECTICUT INSURANCE GUARANTY ASSOCIATION.**

# Contractor's Protective Professional Indemnity® and Liability Insurance Declarations



**STEADFAST INSURANCE COMPANY**
Dover, Delaware
Administrative Offices - 1400 American Lane
Schaumburg, Illinois 60196-1056

**Policy Number:** EOC 9817132 03         **Renewal of:** EOC 9817132 02

**Producer Number:** 60197000

**Producer Name:** Arthur J. Gallagher Risk Management Services

**Item 1.** **Named Insured:** EMCOR Group, Inc.,

        **Address:** 301 Merritt Seven
Norwalk, Connecticut 06851
USA

**Item 2.** **Limits of Liability:** **COVERAGE PARTS:**

**Contractor's Professional Liability**

| | |
|---|---|
| $25,000,000 | Each Claim |
| $25,000,000 | Aggregate |

**Contractor's Pollution Liability**

| | |
|---|---|
| $25,000,000 | Each Claim |
| $25,000,000 | Aggregate |

**Microbial Events (Claims Made)**

| | |
|---|---|
| $25,000,000 | Each Microbial Event Claim |
| $25,000,000 | Total all Microbial Event Claims |

**Mitigation Expenses (Claims Made)**

| | |
|---|---|
| $25,000,000 | Each Claim |
| $25,000,000 | Aggregate (Total Zurich Mitigation including Excess Layer) |

**Rectification Coverage (Claims Made)**

| | |
|---|---|
| $25,000,000 | Each Claim |
| $25,000,000 | Aggregate (Total Zurich Rectification including Excess Layer) |

**Contractor's Protective Professional Indemnity**

| | |
|---|---|
| $25,000,000 | Each Claim |
| $25,000,000 | Aggregate |

**Policy**

| | |
|---|---|
| $25,000,000 | Aggregate Limit of Liability |

**Item 3.** **"Policy Period":** Inception Date: 07/31/2019  Expiration Date: 07/31/2020
(12:01 a.m. local time at the address shown in Item 1.)

**Item 4.** **Self-Insured Retention:** **COVERAGE PARTS:** **Contractor's Professional Liability**

$500,000 Each Claim

**Contractor's Pollution Liability**

$500,000 Each Claim

**Microbial Events (Claims Made)**

$500,000 Each Claim

**Mitigation Expenses (Claims Made)**

$500,000   Each Claim

**Rectification Coverage (Claims Made)**

$500,000   Each Claim

**Contractor's Protective Professional Indemnity**

$500,000 Each Claim

**Item 5.**   **"Retroactive Date":**      January 1, 1968

**Item 6.**   **Premium:**      $1,547,616            (25% Minimum and Deposit)

**Item 7.**   **Endorsement(s) Effective at Inception:**  **"See Schedule of Forms and Endorsements"**

**Item 8.**   **Extended Reporting Period:**      One (1) year @ 75% of the total annual premium

Two (2) years @ 125% of the total annual premium

Three (3) years @ 150% of the total annual premium

Four (4) years @ 165% of the total annual premium

Five (5) years @ 175% of the total annual premium

Six (6) years @ 200% of the total annual premium

**Item 9.**   **Policy Form:**   STF-CPP-140-A CW (07/16) (Manuscript)

**THESE DECLARATIONS TOGETHER WITH THE APPLICATION(S), COVERAGE PART FORM(S), AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE NUMBERED POLICY. THE INSURANCE AS PROVIDED HEREIN IS "CLAIMS MADE." PLEASE DISCUSS ANY QUESTIONS YOU MAY HAVE WITH YOUR AGENT OR BROKER.**

# Schedule of Forms and Endorsements



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

| Form Number | Form Name | Endorsement No. |
|---|---|---|
| STF-CPP-140-A CW (07/16) | MANUSCRIPT:   Contractors Protective Professional Indemnity and Liability Declarations | |
| STF-CPP-129-A CW (05/09) | Schedule of Forms and Endorsements | |
| STF-CPP-140-A CW (07/16) | MANUSCRIPT: Contractor's Protective Professional Indemnity and Liability Insurance Policy | |
| STF-CPP-140-A CW (07/16) | Acquisition Endorsement | 1 |
| STF-CPP-140-A CW (07/16) | Amendment of Named Insured | 2 |
| STF-CPP-140-A CW (07/16) | Completed Operations Coverage Retroactive Date | 3 |
| STF-CPP-140-A CW (07/16) | Minimum Earned Premium | 4 |
| STF-CPP-140-A CW (07/16) | Amendment of Disposal Site Exclusion | 5 |
| STF-CPP-140-A CW (07/16) | How Other Insurance Applies | 6 |
| STF-CPP-140-A CW (07/16) | Rating Endorsement | 7 |
| STF-CPP-140-A CW (07/16) | Reduced Retention and Indemnity Agreement | 8 |
| STF-CPP-140-A CW (07/16) | First Named Insured Endorsement | 9 |
| STF-CPP-140-A CW (07/16) | Technology Services Endorsement with Additional Exclusions | 10 |
| STF-CPP-140-A CW (07/16) | Cancellation Clause Amendment Pro Rata Cancellation | 11 |
| STF-CPP-140-A CW (07/16) | Amendment to Watercraft, Aircraft, Motor Vehicle or Rolling stock Exclusion Endorsement | 12 |
| STF-CPP-140-A CW (07/16) | Amendment of the Definition of Pollution Conditions Endorsement | 13 |
| STF-CPP-140-A CW (07/16) | Emergency Response Costs Coverage Endorsement | 14 |
| STF-CPP-140-A CW (07/16) | War Exclusion | 15 |
| STF-CPP-140-A CW (07/16) | CPL Additional Insured and Primary Coverage Endorsement | 16 |
| STF-CPP-140-A CW (07/16) | Amendment of Restoration Costs Endorsement | 17 |
| STF-CPP-140-A CW (07/16) | Biological Terrorism Coverage Endorsement | 18 |
| STF-CPP-140-A CW (07/16) | Advice of Cancellation to Entities Other than the Named Insured Limited to E-Mail Notification | 19 |
| STF-CPP-140-A CW (07/16) | Economic Sanctions Endorsement | 20 |
| STF-CPP-140-A CW (07/16) | Amendment Damages Endorsement | 21 |
| STF-CPP-140-A CW (07/16) | Professional Liability Crisis Response Coverage Extension | 22 |
| STF-CPP-140-A CW (07/16) | Biodiversity Damage Definition and Property Damage Definition Amendatory Endorsement | 23 |
| STF-CPP-140-A CW (07/16) | Definition of Insured Amendatory Endorsement | 24 |

| STF-CPP-140-A CW  (07/16) | Amendatory Endorsement | 25 |
|---|---|---|
| STF-CPP-107-A CW  (05/09) | Additional Named Insured Endorsement | 26 |
| STF-CPP-140-A CW  (07/16) | Additional Named Insured Endorsement (with retroactive dates) | 27 |
| STF-CPP-140-A CW  (07/16) | Additional Named Insured Endorsement (with special limits and retroactive dates) | 28 |
| STF-CPP-140-A CW  (07/16) | Pre-Claims Assistance Endorsement | 29 |
| STF-CPP-140-A CW  (07/16) | Rectification Indemnity Coverage | 30 |
| STF-CPP-140-A CW  (07/16) | Headquarters Address Change | 31 |
| U-GU-1191-A CW (03/15) | Sanctions Exclusion Endorsement | 32 |
| STF-CPP-119-B CW (02/12) | Nuclear Energy Liability Exclusion – Broad Form | 33 |
| STF-CPP-140-A CW (07/16) | Amendment of the Definition of Pollution Conditions Endorsement | 34 |
| STF-CPP-172-A CW (05/11) | ADA, FHA, OSHA, State Licensing and Regulatory Board Legal Expense Reimbursement Endorsement | 35 |
| STF-CPP-140-A CW (05/09) | Contractor's Protective Professional Indemnity Coverage | 36 |
| STF-CPP-140-A CW (05/09) | Nuclear Exclusion Manuscript | 37 |
| STF-GU-199-B (01/09) | Important Notice – Service of Suit and in Witness Clause | |

# Contractor's Protective Professional Indemnity and Liability Insurance Policy



**STEADFAST INSURANCE COMPANY**
Dover, Delaware
Administrative Offices - 1400 American Lane
Schaumburg, Illinois 60196-1056

### CONTRACTORS PROFESSIONAL SERVICES AND POLLUTION LIABILITY INSURANCE

### *NOTICE*

*THIS POLICY PROVIDES CLAIMS MADE AND REPORTED COVERAGE, HAS CERTAIN PROVISIONS AND REQUIREMENTS UNIQUE TO IT, AND MAY BE DIFFERENT FROM OTHER POLICIES THE NAMED INSURED MAY HAVE PURCHASED.  THE POLICY REQUIRES THAT A CLAIM BE MADE UPON THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE SAME POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF ANY.*

*PLEASE READ THE ENTIRE POLICY CAREFULLY TO DETERMINE THE INSURED'S RIGHTS AND DUTIES, AND WHAT IS AND IS NOT COVERED. VARIOUS PROVISIONS THROUGHOUT THIS POLICY RESTRICT OR EXCLUDE COVERAGE.*

*DEFINED TERMS APPEAR IN BOLD-FACED TYPE.  PLEASE REFER TO SECTION V. TO EXAMINE THE APPLICABLE DEFINITIONS.*

In consideration of the payment of the premium and Self-Insured Retention by the Named Insured and in reliance upon the statements in the **Insured's** Application incorporated herein by reference, the Company agrees with the **Insured** subject to all of the terms, exclusions and conditions of this Policy, as follows:

### I. INSURING AGREEMENTS

**A.    COVERAGE: CLAIMS-MADE CLAUSE:**

The Company will pay on behalf of the **Insured** all sums in excess of the Self-Insured Retention that the Insured shall become legally obligated to pay as **Loss** because of **Claims** first made against the **Insured** and reported to the Company during the **Policy Period**.

This insurance as specified below applies to **Claims** for:

1.    **Professional Liability**

A **Breach of Professional Duty** in the rendering or failure to render **Professional Services** to others

(a) By the **Insured**; or

(b) By an entity for which the **Insured** is legally liable as a result of the performance of others.

2.    **Contractor's Pollution Liability**

**Bodily Injury, Property Damage,** or **Clean-up Costs** caused by **Pollution Conditions** which are unexpected and unintended from the standpoint of the **Insured** and which result from **Covered Operations** performed for others

(a) By the **Insured**; or

(b) By an entity for which the **Insured** is legally liable as a result of the performance of others.

For this insurance to apply, all of the following conditions must be satisfied:

1.      (a) The **Insured's Professional Services** which result in a **Claim**; or

   (b)  The **Insured's Covered Operations**, which result in a **Claim**;

   whichever is applicable, must commence on or after the Retroactive Date stated in the Declarations.

2.      Prior to the date Steadfast Insurance Company first wrote this coverage, the Director Risk Management of EMCOR Group, Inc. had no knowledge of

   (a)  **Breach of Professional Duty** or circumstance arising from the **Insured's Professional Services**; or

   (b)  **Pollution Condition or circumstance resulting from the Insured's Covered Operations likely to give rise to a Claim.**

3.      **Claim** must first be made against the Insured during the **Policy Period**.

4.      The **Insured** must report the Claim to the Company, in writing, as provided in Section IV – A.1 of this policy during the **Policy Period** or within the sixty (60) day period immediately following the expiration of the **Policy Period**.

## B.      TERRITORY:

The insurance afforded by this Policy applies to:

(a)  A **Breach of Professional Duty** arising out of **Professional Services**; or

(b)  **Bodily Injury, Property Damage** or **Clean-up Costs** resulting from **Covered Operations** that take place in and result in a **Claim** brought within:

(1)  the United States of America, its territories or possessions or Puerto Rico; and

(2)  elsewhere in the world.

## C.      DEFENSE PROVISIONS:

With respect to any Claim made against the Insured for which coverage is provided under this Policy and payable hereunder in excess of the Self-Insured Retention, or for which coverage is provided under this Policy and payable by the Insured under its Self-Insured retention:

(1)      The Company shall not be called upon to assume charge of the investigation, defense or settlement of any Claim made against the Insured, but the Company, at its option shall have the right and shall be given the opportunity to associate, at its own expense, with the Insured in the investigation, defense or control of such Claim which would involve or appear reasonably likely to involve the Company, in which event the Insured and the Company shall cooperate in the defense or settlement of such Claim. The Insured and the Company shall mutually agree to select independent counsel for the defense of any claim. The consent of the Insured for such counsel shall not be unreasonably withheld.

(2)      In the absence of such election by the Company, the Insured shall arrange for and assume the investigation, defense and settlement of such Claim provided that the Insured shall take no action or agree to any settlement which alone or taken together with Claim Expenses will exceed the Self-Insured Retention without the prior written consent of the Company.

## D.      SETTLEMENT PROVISIONS:

For **Claims** covered under Coverage A.1, Coverage A.2 or under both Coverage A.1 and A.2, the Company will not settle or compromise the Claim without the consent of the Insured. Under all Coverages of this Policy, if the **Insured** refuses to consent to a settlement or compromise recommended by the Company and elects to contest such **Claim** or continue legal proceedings in connection with such **Claim**, then the Company's liability for the **Claim** shall not exceed the amount for which the **Claim** could have been so settled plus **Claim Expenses** incurred up to the date of such refusal subject to the applicable limit of liability under this Policy.

**E.   CLAIM EXPENSES:**

**Claim Expenses** shall be paid by the Company and such payments reduce the available Limit of Liability.  The Insured must first pay any applicable Self -Insured Retention amounts.

**F.   CLEAN-UP UNDER COVERAGE A.2**

With respect to Coverage A.2, the Company shall have the right but not the duty to participate in decisions regarding **Clean-up Costs** and to assume the direct control over all aspects of the clean-up and the adjustment of any **Claim** up to the Limit of Liability. In case of the exercise of this right, the **Insured,** on demand of the Company, shall promptly reimburse the Company for any element of **Loss** falling within the Insured's **Self-Insured Retention.**

## II. EXCLUSIONS

This Policy does not provide coverage and the Company will not pay Claim Expenses or Loss for any **Claim** based upon or arising out of:

**A.   1.** any dishonest, fraudulent, or criminal **Breach of Professional Duty**, or those of a knowingly wrongful nature committed intentionally by or at the direction of any Insured, however, defense for allegations of fraud will be provided until final adjudication;

This exclusion shall not apply to any **Insured** who did not commit, participate in or have knowledge of such conduct.

**B.**   any **Claim** made by any **Insured** against any other **Insured; however,** solely with respect to Coverage A.2, this exclusion shall not apply to **Claim** against the **Insured** performing **Covered Operations** made by any Additional **Insured**, as defined in Section VI., Paragraph 4. of Definition J, who is a client for whom the **Insured** performs or performed **Covered Operations;**

**C.**   the actual or alleged **Wrongful Termination** of any employee of the **Insured; Discrimination** involving any employee of the **Insured**; or **Sexual Harassment** of any employee of the **Insured**;

**D.**   any **Insured's** involvement as a partner, officer, director, stockholder, employer or employee of any business enterprise not named in the Declarations or endorsed onto this policy;

**E.**   any claim made by or on behalf of any business enterprise that wholly or partly owns the Insured or which to any extent controls, operates or manages an Insured, or that is wholly owned or in which an Insured has a greater than 25% ownership, or which is controlled, operated or managed by an Insured;

**F.**

any claim based upon or arising out of the design or manufacture of any product or piece of equipment sold, supplied or furnished by the Insured, any subsidiary of the Insured or

any entity which wholly or partly owns, operates or manages the Insured or any subsidiary of such entity, or by any person under license from the Insured. This exclusion does not apply if the claim arises out of an act, error or omission in the performance of design services or contractor's pollution liability caused by pollution conditions arising out of covered operations which are performed for others by the Insured or any entity for whom the Insured is legally liable;

**G.**   solely with respect to Coverage A.2, any **Claim** for (1) **Property Damage** to the work performed by, or on behalf of the **Named Insured** or its parent, subsidiary or affiliate arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; or (2) **Property Damage** to the **Named Insured's Products** caused in whole or in part by the **Named Insured's Products**;

**H.**   any express warranties or guarantees; however, this exclusion shall not apply to Loss resulting from the failure to meet such warranties or guarantees if such Loss would have resulted in the absence of such express warranties or guarantees;

**I.**   the cost to repair or replace any faulty workmanship, assembly, construction, erection, fabrication,

installation if such work is performed in whole or in part by:

1. the **Insured**; or

2. any sub-contractor of any Insured; or

3. any enterprise and/or any subsidiary of any enterprise that any **Insured** controls, manages, operates or holds ownership in or by any enterprise that controls, manages, operates or holds in an **Insured**;

J.   liability of others assumed by the Insured under any contract or agreement.  This exclusion does not apply to liability:

1. under Coverage A.1. only, for a **Breach of Professional Duty** in the rendering or failure to render **Professional Services** to others by the **Insured** or for which the Insured is legally liable as a result of the performance of others;

2. under Coverage A.2. only, to liability assumed in a contract or agreement that is an **Insured Contract**, provided that the **Bodily Injury, Property Damage or Clean-up Costs** occurs subsequent to the existence of the contract or agreement; or

3. that the **Insured** would have in the absence of the contract or agreement.

K.   punitive or exemplary damages, fines or penalties; except, this exclusion does not apply in any jurisdiction where the regulatory authority governing this type of insurance prohibits such exclusion or where this type of insurance may be insurable by law;

L.   **Bodily Injury** sustained by any employee of the **Insured** while engaged in employment by the **Insured** or by any person whose right to assert a **Claim** against the **Insured** arises by reason of any employment, blood, marital, or any other relationship with the employee.   This exclusion applies:

1. whether the **Insured** may be liable as an employer or in any other capacity; or

2. to any obligation to share damages with or repay someone else who must pay damages because of **Bodily Injury**; or

3. to any obligation for which an Insured or any party   may be liable under any unemployment, workers compensation, disability benefits or any similar laws.

This exclusion does not apply to liability assumed by the **Insured** under an **Insured Contract**; any obligation for which an **Insured** or any party may be held liable under any unemployment, Workers' Compensation, disability benefits, or other similar laws;

M.   the ownership, entrustment, maintenance, operation or use of any watercraft, aircraft, **Motor Vehicle**, or rolling stock of any kind, which is owned, operated or rented by or loaned to the **Insured**.  As respects Coverage A.2 only, this exclusion does not apply 1) to the **Loading or Unloading** of any watercraft, aircraft, **Motor Vehicle**, or rolling stock of any kind, whether owned, operated or rented by or loaned to the **Insured** or not, or 2) to the transportation by any watercraft, aircraft, motor vehicle or rolling stock of any kind not operated by the Insured;

N.   any consequence, whether direct or indirect, of war, invasion, act of foreign enemy, hostilities, whether war be declared or not, civil war, rebellion, revolution, insurrection or military or usurped power, strike, riot or civil commotion;

O.   any waste or any products or materials transported, shipped, or delivered via Mobile Equipment, Motor Vehicle, aircraft, watercraft or rolling stock to a location beyond the boundaries of a site at which the Insured is rendering Professional Services or performing Covered Operations;

P.   any claim based upon or arising out of Covered Operations in connection with any real property or facility which is or was at any time owned by the Insured or by any entity that:

1. wholly or partly owns the **Insured**; or

    2.   is wholly or partly owned;

    This exclusion does not apply to any real property or facility in which the Insured is an equity partner of 25% or less;

Q.    any **Claim** based upon or arising out of nuclear reaction, radiation or contamination, under any · circumstances and regardless of cause, within or originating from a **nuclear facility**. This exclusion does not apply to class A, class B, and class C low level radioactive waste as defined 1OCFR Part 61;

    R.   any claim based upon or arising out of;

    1.   the specification or installation of any product, material or process containing asbestos, prior to January 1, 1990, for projects located within the United States, its territories, possessions or Canada; or

    2.   the specification or installation of any product, material or process containing asbestos for projects located outside the United States, its territories, possessions or Canada;

## III. LIMITS OF LIABILITY AND SELF-INSURED RETENTION

A.    LIMIT OF LIABILITY-EACH **CLAIM**:

    The Limit of Liability shall apply in excess of the Self-Insured Retention. The liability of the Company for each covered **Claim** shall not exceed the amount stated in the Declarations for Each **Claim**. This limit is the maximum amount of **Claim Expenses** or **Loss** or both that the Company will pay on each covered **Claim**.

payment reimbursable under this Paragraph E. which was made prior to the Mediation, as soon as practicable after the conclusion of the Mediation.

## IV. CONDITIONS

A.  **INSURED'S DUTIES WHEN THERE IS A CLAIM**:

    As a condition precedent to the right of coverage under this Policy the **Insured** must do the following:

    1.   if a **Claim** to which this Policy applies is made against the **Insured**, the **First Named Insured** must give written notice, as soon as practicable, and as otherwise required by this Policy, to:

**Construction Professional Liability Claims Manager**
**Steadfast Insurance Company (or name of insurance company used)**
**P.O. Box 968041**
**Schaumburg, IL 60196**
**Fax number: (866) 255-2962**
**New matters may also be reported via email at:**
**USZ_Zurich_Construction_Professional_Claims@zurichna.com**

    Written notice shall include every demand, notice, summons or other process received by the **Insured's** Director Risk Management.

    2.  The **Insured** must cooperate with the Company. The Company may require that the **Insured** submit to examination under oath, if required, produce and make available all records, documents and other materials, which the Company deems relevant to the Claim. With respect to any **Claim** as described in subparagraph 1) of I. Insuring Agreements C., Defense Provisions of this Policy. The **Insured** must also, at the Company's request, attend hearings, depositions and trials. In the course of investigation or defense, provide the Company with written statements as requested by the Company or the Insured's attendance at meetings with the Company; and the

Insured must  assist the  Company in effecting settlement, securing and providing evidence and obtaining  the attendance.

3.  The **Insured** must do whatever is necessary to secure and affect any rights of indemnity, contribution or apportionment that the **Insured** may have.

4.  The **Insured** shall refrain from discussing the facts and circumstances of any **Claim** with anyone other than legal counsel or representatives of the Company.

**B.  REPORTING OF A POSSIBLE CLAIM**:

If the **Insured's Director Risk Management** first becomes aware during the **Policy Period or Extended Reporting Period** of this Policy of:

1.  a **Breach of Professional Duty** or circumstance arising out of **Professional Services** with respect to Coverage A.1; or

2.  a **Pollution Condition** arising out of **Covered Operations** with respect to Coverage A.2

which is reasonably expected to result in a **Claim**, then the **Insured** may provide written notice to the Company containing the information itemized below. If such written notice is received by the Company prior to the effective date of cancellation or nonrenewal of this  Policy or the end of the Extended Reporting Period (whichever is applicable), then any **Claim** subsequently first made against the **Insured** arising out of such conduct, shall be deemed for the purpose of this Policy to have been made on the date on which, such written notice is received by the Company. The **Insured** shall cooperate fully with the Company, and any investigation conducted by the Company or its authorized representatives shall be subject to the terms set forth in Section IV. A. above as applicable to a **Claim**.

**C.    LIMIT OF LIABILITY-AGGREGATE**:

Subject to Limit of Liability - Each **Claim**, the liability of the Company shall in no event exceed the amount stated in the Declarations as aggregate as a result of all covered **Claims**. This limit is the total amount of **Claim Expenses** or Loss or both that the Company will pay under this policy for all covered **Claims** including those reported as provided for in Condition C., Extended Reporting Period below.

Once the Limits of Liability have been exhausted, the Company will not defend, pay Loss or Claim Expenses for any Claim.

**D.    MULTIPLE INSUREDS**:

The number of Insureds covered by this policy shall not operate to increase the Limits of Liability as specified above.

**E.    MULTIPLE CLAIMS**:

1.  Regardless of the number of **Claims, Pollution Conditions**, claimants or **Insureds**, the total liability of the Company for all **Claims** that are made and reported during one or more the **Policy Periods** and arise out of the same, interrelated, associated, repeated or continuous (a) **Breach of Professional Duty** or (b) **Pollution Conditions** shall be considered a single **Claim**, subject to the Each **Claim** Limit of Liability shown in the Declarations of the Policy in effect when the first
**Claim** was made and reported to the Company, and shall be deemed first reported to the Company during the **Policy Period** in which the initial **Claim** was first reported to the Company.

2.  When the same, interrelated, associated, repeated or continual **Breach of Professional Duty** and the same, interrelated, associated, repeated or continuous **Pollution Conditions** result in a **Claim** for **Loss** covered under both Coverage A.1 and Coverage A.2 of this Policy, only one Each **Claim** Limit of Liability shall apply collectively to such **Claim**, even if **Claims** are made and reported in different Policy Periods, and these Claims shall be considered a single **Claim** subject to one Each Claim **Limit** of Liability. The applicable Limit of Liability shall be the Each **Claim** limit shown in the declarations of the Policy in effect when the first **Claim** was made and reported.

**F.    SELF-INSURED RETENTION - EACH CLAIM:**

The Company's obligation, under the coverages provided by this Policy to pay Loss or Claim Expenses or both on behalf of the Insured, applies only to the payment of Loss or Claim Expenses in excess of the Self-Insured Retention stated in Item 4 of the Declarations, and subject to the Limits of Liability stated in Item 3 of the Declarations.

The Self-Insured Retention shall be applied to the payment of Loss or Claim Expenses or both. The terms of the Policy including those with respect to the Company's rights and duties with respect to the defense of Claims applies in excess of the Self -Insured Retention amount.

**G.    MEDIATION:**

If the **Insured** and the Company jointly agree to utilize **Mediation** as a means to resolve a **Claim** made against the **Insured**, and if such **Claim** is resolved through the use of **Mediation**, then the **Insured's** Self -Insured Retention obligation shall be reduced by 50% subject to a maximum reduction of $20,000. The Company shall reimburse the **Insured** for any Self-Insured Retention

It is a condition precedent to the coverage afforded by this Section that written notice shall be given to the Company containing as much of the following information reasonably available to the **Insured** at the time the **Insured** first becomes aware of a **Breach of Professional Duty** or a **Pollution Condition** arising out of **Covered Operations**:

1.  The actual or alleged **Breach of Professional Duty** or circumstance or **Pollution Condition** which is the subject of a possible **Claim**;

2.  The **Professional Services** rendered o r **Covered Operations** performed by the **Insured,** which gave rise to 1 above;

3.  The date(s) of such conduct;

4.  The injury or damage which has or may result from such conduct;

5.  The identity(ies) of the **Insured**(s) who may be subject of the **Claim**;

6.  The identity(ies) of any potential claimant(s);

7.  The anticipated location(s) of any such **Claim**; and

8.  The circumstances by which the **Insured** first became aware of the potential **Claim**.

If the submitted information in the reasonable judgment of the Company is deemed inadequate, the Company shall inform the **Insured** that the report is inadequate and the **Insured** shall have 60 days to respond to the Company to the extent possible. If the **Insured** does not respond to the Company within the 60-day period, such **Claim** will not be considered as covered under this policy but the Insured may resubmit notice at such time the supplemental information is obtained.

Any **Claim** that may subsequently be made against the **Insured** arising out of such possible **Claim** as described above shall be considered a **Claim** first made against the **Insured** during the **Policy Period** of this policy and shall be subject to all terms and conditions of this policy.

The **Insured** s h a l l comply with all subparagraphs in Condition V., A. Insured's Duties When There is a **Claim**. Until the actual **Claim** is made against the Insured, any **Claims Expenses**, including any expenses pertaining to pre-claims services rendered to the Insured by the Company or its designee to investigate or monitor such possible **Claim** shall not be considered an obligation under Ill. E **Self Insured Retention**.

**H.  EXTENDED REPORTING PERIOD:**

If the Company cancels for any reason other than non-payment of premium or failure to pay Self-Insured Retention amounts due the Company or refuses to renew this Policy the **Named Insured** shall have the right to purchase for

an additional premium as set forth in the Declarations of this Policy an Extended Reporting Period. Any **Claim** made against the **Insured** during the Extended Reporting Period must arise:

1. out of a **Breach of Professional Duty** first committed prior to the cancellation or expiration date and on or after the Retroactive Date stated in the Declarations as respects Coverage A.1; or

2. from **Covered Operations** performed prior to the cancellation or expiration date and on or after the Retroactive Date stated in the Declarations as respects Coverage A.2.

To exercise this right the **Named Insured** must send a request for the Extended Reporting Period in writing to the Company not later than sixty (60) days after the cancellation or expiration date. Failure by the **Named Insured** to give such notice within sixty (60) days waives the right to the Extended Reporting Period.

The entire additional premium due must be paid at the time such request is made. Mailing by the **Named Insured** by registered mail of such notice to the Company at its address stated in the Declarations shall be sufficient proof of notice.

The quotation of a different premium or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

As a condition precedent to the **Named Insured's** right to purchase the Extended Reporting Period, the **Named Insured** shall have satisfied all conditions of this Policy.

At the commencement of any Extended Reporting Period, the entire premium therefore shall be considered earned, and in the event the **Named Insured** terminates the Extended Reporting Period before its term, for any reason, the Company shall not be liable to return to the **Named Insured** any portion of the premium paid for such Extended Reporting Period.

The purchase of the Extended reporting Period prov1s1on shall not serve to increase or reinstate the Aggregate Limit or otherwise increase the Limit of Liability set forth in the Declarations. **D. HOW OTHER INSURANCE APPLIES**

Where other insurance is available to the **Insured** for **Loss** covered under the terms and conditions of this Policy, the Company's obligation to the **Insured** shall be as follows:

With respect to Coverage A.1.:

1. This Policy shall apply as excess insurance over any other valid and collectible insurance be it primary     or excess.     This excess insurance shall in no way be increased or expanded as a result of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend. This also applies to the **Insured** while acting as a self-insured for any coverage.

2. Where this Policy is excess insurance, the Company will pay only its share of the amount of Loss, if any, that exceeds the total amount of all such valid and collectible insurance.

3. The **Insured** shall promptly upon request of the Company provide the Company with copies of all policies potentially applicable against the liability covered by this Policy.

With respect to Coverage A.2:

1. This insurance is primary, and the Company's obligations are not affected unless any of the other insurance is also primary. In that case, the company will share with all such other insurance by the method described in Paragraph 2. Below.

2. If all of the other insurance permits contribution by equal shares, the Company will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid it applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, the Company will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limit of insurance to the total applicable limits of insurance of all insurers.

**I. BANKRUPTCY**

Bankruptcy or insolvency of the **Insured's** estate shall not relieve the Company of any of its obligations under this Policy.

**J. APPLICATION**

The statements in the Application are the Insured's representations and are deemed material. This Policy is issued based upon the truth and accuracy of such representations. Upon the binding of coverage, the Application shall be attached to and become part of this Policy. This Policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this Policy.

**K. AUDIT**

The Company may examine and audit the **Insured's** books and records at any time during the **Policy Period** and within three (3) years after the final termination of this Pol**icy,** as far as they relate to this **Policy.**

**L. ACTION AGAINST THE COMPANY**

No action shall be maintained against the Company by the Insured to recover for any Loss under this Policy, unless:

1. the **Insured** has fully complied with all the terms and conditions of this Policy; and

2. the amount of Loss has been fixed or rendered certain:

    a.  by final judgment against the Insured after trial of the issues;

    b.  the time to appeal such judgment has expired without an appeal being taken;

    c.  if appeal is taken, after the appeal has been determined; or

    d.  the Claim is settled in accordance with the terms and conditions of this Policy.

In no event shall any action brought by anyone be maintained against the Company unless such action is brought within twenty-four (24) months from the time the right to bring action first becomes available.

**M. FALSE OR FRAUDULENT CLAIMS**

If the **Insured** reports any **Claim** knowing such **Claim** to be false or fraudulent, this Policy shall become void and all insurance coverage hereunder shall be forfeited.

**N. SERVICE OF SUIT**

It is agreed that in the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703, and that in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in

any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**O.  INSPECTION**

The Company shall be permitted but not obligated to inspect, sample, and monitor on a continuing basis the **Insured's** property or operations, at any time. Neither the Company's right to make inspections, sample, and monitor, nor the actual undertaking thereof nor any report thereon, shall constitute an undertaking, on behalf of the **Insured** or others, to determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practice or are in compliance with any law, rule, or regulation.

**P.  SOLE AGENT**

The **Named Insured** first listed in Item 1 of the Declarations shall act on behalf of all other **Insureds**, if any, for the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy, and giving and receiving notice of cancellation or nonrenewal.

**Q.  ASSIGNMENT**

This Policy shall not be assigned without the prior written consent of the Company. Assignment o f interest under this Policy shall not bind the Company until its consent is endorsed onto this Policy.

**R.  SUBROGATION**

If there is a payment made by the Company, the Company shall be subrogated to all the Insured's rights of recovery against any person or organization. The **Insured** shall cooperate with the Company and do whatever is necessary to secure these rights. The **Insured** shall do nothing after a claim to waive or prejudice such rights. The Company agrees to waive this right of subrogation against the client of the Insured or other entities to the extent that the **Insured** had, prior to **Claim**, a written agreement to waive such rights.

All recoveries obtained through subrogation will be applied towards the **Named Insured's** Self-Insured Retention first with the remaining balance payable to the Company.

**S.  CHANGES**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or stop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy.

**T.  CANCELLATION**

This Policy can be canceled by the **Named Insured** by returning this Policy to the Company or its authorized representatives. The **Named Insured** can also cancel the Policy by written notice to the Company stating at what future date cancellation is to be effective. If the **Named Insured** cancels, earned premium shall be computed using the customary short rate table, or pro-rata of the Minimum Annual Policy Premium, whichever is greater.

This Policy can be canceled by the Company by written notice to the **Named Insured**, at the address last known to the Company. The Company shall provide written notice at least ninety (90) days before cancellation is to be effective.

There are exceptions to the length of the notice that shall be provided to the **Named Insured**. The **Named Insured** shall only be entitled to ten (10) days' notice if the Company cancels because:

1.  The **Insured** has failed to pay a premium when due; or

2.  The **Insured** has failed to pay the applicable Self-Insured Retention amounts due.

If the Company cancels, earned premium shall be computed pro-rata, except that if the Company cancels for the reason specified in 1. or 2. above, earned premium shall be computed in the same manner provided above when the **Named Insured** cancels.

Proof of mailing of any notice of cancellation shall be sufficient proof of notice. The effective date of cancellation terminates the **Policy Period**. Return of unearned premium is not a condition of cancellation. Unearned premium shall be returned by the Company as soon as practicable.

**V. DEFINITIONS**

A. **Bodily Injury** means:

    1. physical injury, sickness or disease sustained by any person, including death resulting therefrom and solely with respect to this item A.1 **,** any accompanying medical monitoring; or

    2. mental anguish or emotional distress.

B **Breach of Professional Duty** means an error, omission or other act that causes liability in the performance or nonperformance of **Professional Services** rendered to others by the **Insured**, or for which the **Insured** is legally liable as a result of the performance or non-performance of others.

C. **Claim** means a demand received by an **Insured** seeking a remedy and alleging liability or responsibility on the part of the **Named Insured** for **loss**.

D. **Claim Expenses** means:

    1. Fees charged by any lawyer designated by the Company; and

    2. All other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, if authorized by the Company.

E. **Claim Expenses** shall not include:

    1. The salaries of any employee of the Company; and

    2. Costs, charges or other expenses incurred by the **Insured** for goods supplied or services performed by or on behalf of the staff or salaried employees of the **Insured**, or its parent, subsidiary or affiliate, unless such costs, charges or other expenses are incurred with the prior written approval of the Company at its sole discretion.

F. **Clean-Up Costs** means reasonable and necessary expenses, including legal expenses incurred with the Company's written consent, which shall not be unreasonable withheld or delayed, incurred in the investigation, removal, remediation including the associated monitoring, or disposal of soil, surface water, groundwater or other contamination:

    1. To the extent required by **Environmental laws**, or specifically mandated by court order, the government or any political subdivision of the United States of America or any state or any municipality thereof, or Canada or any province thereof; or

    2. Which have been actually incurred by the government or any political subdivision of the United States of America or any state thereof, or Canada or any province thereof, or by third parties.

    **Clean-Up Costs** also includes **Restoration Costs**.

G. **Covered Operations** means those operations and activities performed by or on behalf of the **Insured**.

H. **Damages** means, any amount which an **Insured** is legally obligated to pay for any **Claim** to which this insurance applies; and shall include judgments, settlements, and interest on judgments, provided always that **Damages** shall not include the return or withdrawal of professional fees, sanctions, fines or penalties imposed by law, or other matters that may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

I. **Discrimination** means termination of an employment relationship or a demotion or a failure or refusal to hire or promote any individual because of race, color, religion, age, sex, disability, pregnancy, national origin or sexual orientation.

J. **Insured** means:

1. The **Named Insured**;

2. Any person who is or was a director, officer, principal, partner, or employee of the **Named Insured** while acting within the scope of his/her duties as such;

3. The heirs, executors, administrators, and legal representatives of each **Insured** as defined in 1. and 2. above in the event of death, incapacity or bankruptcy but only with respect to liability arising out of **Professional Services** or **Covered Operations** rendered on behalf of the **Named Insured** prior to such **Insured's** death, incapacity or bankruptcy;

4. Solely with respect to Coverage A.2, the client or other entity for whom the Named Insured performs or performed Covered Operations, provided that a written contract or agreement exists between the Named Insured and such written contract or agreement requires the client or another entity to be insured under the Named Insured's contractor's pollution liability policy. However, such clients or other entities are covered under this Policy solely with respect to Loss arising from Covered Operations performed by the Named Insured for others causing Bodily Injury, Property Damage, or Clean Up Costs caused by Pollution Conditions, and are not covered for any Loss arising from the client's or other entities' sole liability.

5. contract or leased personnel rendering professional services on behalf of the Named Insured and for contractor's pollution liability caused by pollution conditions arising out of covered operations which are performed for others by the Insured or any entity for whom the Insured is legally liable;

6. joint ventures, limited liability companies or partnerships in which the Insured has a 50% or less ownership and in which the Insured is named as a co-venturer or member; but only as respects the Insured's legal liability arising out of the Insured's participation in such joint venture, limited liability company or partnership.

7. Any former retired principal, partner, officer, director or employee of the **Named Insured** but only while acting within the capacity as a provider of **Professional Services** on behalf of the **Named Insured**.

8. Any spouse of a person insured under this policy to the extent that the spouse may be legally liable for any debt or liability arising from matters covered in this policy.

9. such subsidiary or owned or controlled companies of the Named Insured as are in existence at the inception date of this policy;

**K.** **Insured Contract** means:

1. an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

2. that part of any other contract or agreement pertaining to the **Named Insureds** business (including an indemnification of a municipality in connection with work performed for a municipality) under which the **Named Insured** assume the tort liability of another party to pay for **Bodily Injury, Property Damage** or **Clean-up Costs** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**L.** **Loading or Unloading** means the handling of property at the job site where **Covered Operations** are being performed:

1. after the property is moved from the place where it is accepted for movement into or onto a watercraft, aircraft, **Motor Vehicle**, or rolling stock of any kind;

2. while the property is in or on a watercraft, aircraft, **Motor Vehicle**, or rolling stock of any kind; or

3. while the property is being moved from a watercraft, aircraft, **Motor Vehicle**, or rolling stock of any kind to the place where it is finally delivered;

but **Loading or Unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the watercraft, aircraft, **Motor Vehicle**, or rolling stock of any kind.

**M.** **Loss** means:

1.  monetary awards or settlements of compensatory **Damages** and where insurable by law, punitive, exemplary or multiplied Damages because of:

    (a)  Claims arising out of **Breach of Professional Duty** in the performance of **Professional Services** under Coverage A.1 or

    (b)  **Bodily Injury, Property Damages** or **Clean-up Costs** under Coverage A.2; and

2.  **Claim Expenses**; and

3.  **Emergency Response Costs**.

**N.**  **Mediation** means the non-binding intervention of a neutral third-party to effect settlement of a **Claim**.

**O.**  **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1.  Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.  Vehicles maintained for use solely on premises owned or rented by the **Named Insured**;

3.  Vehicles that travel on crawler treads;

4.  Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mount:

    a.  Power cranes, shovels, loaders or drills; or

    b.  Road construction or resurfacing equipment such as graders, scrapers or rollers.

5.  Vehicles not described in 1, 2, 3, or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment, or

    b.  Cherry pickers and similar devices used to raise or lower workers.

6.  Vehicles not described in 1, 2, 3, 4, or 5 above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment** but will be considered **Motor Vehicles**:

    a.  Equipment designed primarily for:

        i.  Snow removal;

        ii.  Road maintenance, but not construction or resurfacing; or

        iii.  Street cleaning.

    b.  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers, and

    c.  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**P.**  **Motor Vehicle** means an automobile, van, truck, trailer or semi-trailer designed to travel on public roads, but does not include **Mobile Equipment**.

**Q. Named Insured** means the person or entity designated as such in Item 1 of the Declarations.

**R.  Named Insured's Product** means goods, products, or pieces of equipment, including component parts thereof and including other products in which such goods, products or pieces of equipment are incorporated, which are manufactured, sold, furnished, or supplied by the **Named Insured**, any subsidiary of the **Named Insured**, any entity which wholly or partly owns, operates or manages the **Named Insure**d or any subsidiary of such entity, or any person under license from the **Named Insured**.

**S.  Nuclear Facility** means the site at which a nuclear reactor is located or where nuclear waste or material is disposed of or stored.

**T.  Personal Injury** means injury, other than **Bodily Injury**, arising out of one or more of the following offenses:

1.  false arrest, detention or imprisonment;

2.  malicious prosecution;

3.  wrongful entry into, or eviction of a person from a room, dwelling, or premises that the person occupies;

4.  oral or written publication of material that slanders or libels a person or organization or disparages a people or organization's goods, products or services;

5.  oral or written publication of material that violates a person's right of privacy; and

6.  humiliation.

**U.  Policy Period** means the period set forth in Item 2 of the Declarations, or any shorter period arising as a result of cancellation of this Policy.

**V.  Pollution Conditions** means the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, provided such conditions are not naturally present in the environment.

**W.  Professional Services** means:

a.  architectural, engineering, land surveying, landscape architectural, or construction management services; or

b.  other services as specifically stated in the application to this policy, that the Insured or anyone for whom the Insured is legally liable performs for others for a fee.

**X    Property Damage** means:

1.  Physical injury to or destruction of tangible property of parties other than the Insured including the resulting loss of use and diminution in value thereof;

2.  Loss of use, but not diminution in value, of tangible property of parties other than the Insured that has not been physically injured or destroyed; or

3.  **Natural Resource Damage**.

   **Property Damage** does not include **Clean-Up Costs**.

**Y.  Sexual Harassment** means unwelcome sexual advances and/or requests for sexual favors and/or other verbal or physical conduct of a sexual nature that (1) are made a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance.

**Z.  Wrongful Termination** means termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment.

**AA.  Restoration Costs** means reasonable and necessary costs incurred by the **Insured** with the company's written consent, which consent shall not be unreasonably withheld or delayed, to repair, replace or restore real or personal property to substantially the same condition it was in prior to being damaged during work

performed in the course of incurring **Clean-Up Costs**. **Restoration Costs** do not include costs associated with improvements or betterments.

BB. **Natural Resource Damage** means physical injury to or destruction of, including the resulting loss of value of, land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act (16 U.S.C. 1801 et seq.)), any state or local government, any foreign government, any Indian tribe or, if such resources are subject to a trust restriction on alienation, any member of an Indian tribe.

CC. **Environmental Laws** means any federal, state, provincial or local laws (including, but not limited to, statutes, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives) that are applicable to **Pollution Conditions.**

Endorsement # 1

# Acquisitions Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

## ACQUISITIONS ENDORSEMENT

Any entity acquired by the **Named Insured** shall be considered an Insured for a period of 180 days following the acquisition date. A Retroactive Date of the legal acquisition date of the entity by the Named Insured will apply. Acquired entity(s) with annual revenues greater than $75,000,000 shall be endorsed onto the policy within 180 days of the acquisition date subject to underwriting and additional premium.

Any acquired entity providing services similar to those traditionally provided by the **Named Insured** and with annual revenue less than $75,000,000 will be an Insured with a Retroactive Date as of the date of acquisition and will not be subject to an additional premium charge.

Three years following the date of acquisition the Retroactive Date for such acquired entity(ies) shall automatically revert to the policy Retroactive Date for Architects and Engineers Professional Liability and Contractor's Pollution Liability.

In cases where a Retroactive Date prior to the legal acquisition date of the acquired entity is necessary at the date of acquisition, underwriting information as requested by the underwriter must be submitted for the retroactive coverage to be approved. Additional premium may be charged for retroactive coverage.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 2

# Amendment of Named Insured



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is hereby agreed that Section V. Definitions, Paragraph Q., Named Insured is amended to include the following: The Named Insured includes any subsidiary, affiliate, or partnership of which the Named Insured owns more than 50% financial interest including those created, or acquired subsequent to the inception date of the policy.

Any entity acquired by the Named Insured shall be considered a Named Insured for a period of one hundred and eighty (180) days following the acquisition date. A retroactive date of the legal acquisition date of the entity by the Named Insured will apply.

In order to provide coverage for the policy term for the acquired entity, underwriting information as requested must be submitted and approved. Additional premiums may be charged in order to endorse the acquired entity or purchased assets to the policy. The retroactive date may be reconsidered at the time of the acquired entity's amendment to the policy.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 3

# Completed Operations Coverage Retroactive Date Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

This endorsement modifies insurance provided by the policy:

In consideration of the premium charged, it is hereby understood and agreed that the Policy
is amended as follows:

1. Section **I. INSURING AGREEMENTS**, **COVERAGE: CLAIMS-MADE CLAUSE**, Subsection A.2 is deleted in its entirety and replaced with the following:

2. **Contractor's Pollution Liability**

   The Company will pay on behalf of the **Insured** all sums that the **Insured** shall become legally obligated to pay as **Loss** as a result of **Claims** for **Bodily Injury, Property Damage** or **Clean-up Costs** caused by **Pollution Conditions** resulting from **Covered Operations** by the **Insured**; or by any entity for which the **Insured** is legally liable as a result of the performance of others. The **Pollution Conditions** must be unexpected and unintended from the standpoint of the **Insured**. **Claims** for **Bodily Injury, Property Damage** or **Clean-up Costs** must be first made against the **Insured** and reported to the Company during the **Policy Period**.

   For this Policy to apply, all of the following conditions must be satisfied:

   1. The **Covered Operations** which result in a **Claim** must commence on or after the Retroactive Date stated in Item 8 of the Declarations; however, solely with respect to **Completed Operations**, the **Bodily Injury, Property Damage** or environmental damage which result in a **Claim** must commence on or after the **Completed Operations** Retroactive Date stated in Item 8 of the Declarations, as amended by this Endorsement below; and

   2. The **Insured** must report the **Claim** to the Company, in writing, as provided in Section **IV. CONDITIONS, A. INSURED'S DUTIES WHEN THERE IS A CLAIM**, subparagraph 1., of this Policy within the **Policy Period** or within thirty days thereafter.

2. The following is added to Item 8. Retroactive Date of the Declarations:

   01/01/1968 Coverage A.2. Completed Operations

3. The following definition is added to Section **V. DEFINITIONS**:

   **EE. 1. Completed Operations** means **Covered Operations** performed during the policy period other than **Covered Operations, which** have not yet been completed or abandoned. **Covered Operations** will be deemed completed at the earliest of the following times:

   (a) When all of the work called for in the **Named Insured's** contract has been completed.

(b)  When all of the work to be done at a job site has been completed if the **Named Insured's** contract calls for work at more than one job site.

(c)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2.  **Completed Operations** shall not include:

(a)  The existence of tools, uninstalled equipment or abandoned or unused materials; or

(b)  Ownership, entrustment, maintenance, operation or use of any watercraft, aircraft, **Motor Vehicle,** or rolling stock of any kind, which is owned, operated or rented by or loaned to the **Named Insured** other than the **Loading or Unloading** of any watercraft, aircraft, **Motor Vehicle**, or rolling stock of any kind, whether owned, operated or rented by or loaned to the **Named Insured;** or

(c)  Waste or any products or materials transported, shipped, or delivered via **Mobile Equipment, Motor Vehicle,** aircraft, watercraft or rolling stock to a location beyond the boundaries of a site at which the **Covered Operations** are performed.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 4**



# Minimum Earned Premium

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is understood and agreed that in the event of cancellation of this policy by or at the direction of the Insured, the Company shall retain a Minimum Earned Premium of $386,904.

It is further agreed that the provision regarding cancellation by the Insured is amended to read:

"If the Insured cancels this policy, earned premium will be computed in accordance with the Customary short-rate table and procedure, or the Minimum Earned Premium stated herein, whichever is greater".

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 5**

# Amendment of Disposal Site Exclusion Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

1.  It is hereby agreed that Section **II. EXCLUSIONS**, Paragraph **O.**, is deleted in its entirety and replaced with the following:

     **O.**  Any **Claim** based upon or arising out of any waste or products or materials, which have been delivered to a location beyond the boundaries of a site at which the **Insured** is rendering **Professional Services** or performing **Covered Operations**.

     However, this exclusion does not apply to **Loss** based upon or arising out of any waste, products or materials delivered to Non-Owned Disposal Site(s); provided the Non-Owned Disposal Site: (i) is not owned or operated by the **Named Insured**; (ii) is not a known CERCLA NPL site or listed site under any similar state statute or regulation at the time of delivery; and provided such waste, products or materials originated from a site at which the **Named Insured** is rendering **Professional Services** or performed **Covered Operations**.

2.  It is further agreed that the following is added as Non-Owned Disposal Site Sublimit, to Section III.LIMITS OF LIABILTIY AND SELF-INSURED RETENTION:

     Subject to paragraphs A through E above, of this Section III, the most the Company will pay for (1) all **Loss** for each covered **Claim** under Coverage A; or (2) all **Loss** arising out of the same, related or continuous **Pollution Conditions** under Coverage B arising from, associated or in connection with Non-Owned Disposal Site(s) is $ 25,000,000 up to an aggregate amount of $25,000,000 for all **Claims** or **Loss** regardless of the number of **Pollution Conditions**, **Claims** or claimants or **Insureds**. The sublimit shall be included within and not in addition to the limit of liability shown in Item 3 of the Declarations.

3.  Coverage under this Endorsement is excess of the Self-Insured Retention amount stated in Item 5 of the Declarations and is limited to the Disposal Site Liability sub-Limit listed in paragraph 2, above of this Endorsement and shall cease when this limit has been exhausted. Any payments made under this Endorsement shall erode the Each Claim and Aggregate limit of liability set forth in Item 3 of the Declarations.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 6**

# How Other Insurance Applies



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

**OTHER INSURANCE CLAUSE**

**Section IV.D. of the policy is deleted in its entirety and replaced with the following: D.**

Where other insurance is available to the **Insured** for **Loss** covered under the terms and conditions of this Policy, the Company's obligation to the **Insured** shall be as follows:

With respect to Coverage A.1. & A3:

1.    This Policy shall apply as excess insurance over any other valid and collectible insurance be it primary, excess, or contributing. This excess insurance shall in no way be increased or expanded as a result of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend. This also applies to the **Insured** while acting as a self-insured for any coverage.

2.    Where, in accordance with paragraph 1. above, this Policy is excess insurance, the Company will pay only its share of the amount of. **Loss**, if any, that exceeds the total amount of all such valid and collectible insurance, and only for such loss as is covered by the terms and conditions of this policy. The **Insured** shall promptly upon request of the Company provide the Company with copies of all policies potentially applicable against the liability covered by this Policy.

With respect to Coverage A.2:

This policy shall be primary where required by written contract.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 7

# Rating Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is hereby understood and agreed that the policy premium of $1,547,616 for policy year 07/31/18 to 07/31/19 is based on $91,193,122 annual professional fees. It is further agreed that for rating purposes of EMCOR we will use the following: the total of design/professional fees as reported by EMCOR on their revenue matrix under columns (A) + (C) + (D) + (E) + (G) + (H) + (K) + (L); 6.5%of the total Construction Management At-Risk Revenues reported under column (F); and 1.0% of the total revenues reported under Service Work column (I) + (J).

Any premium adjustments for newly acquired/merged entities during the policy year would be calculated by multiplying the rate derived by taking the total policy premium, indicated above, divided by $91,193,122 times that entity's fees which would be reported under the revenue matrix listed above. The rate thus derived per $1,000 of fees equals $14.20.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 8**

# Reduced Retention and Indemnity Agreement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is hereby understood and agreed that if a **claim** is made against the **Insured** by any person, firm or organization to whom an evidence of insurance document has been issued which specifies a Retention amount that is less than the Self-Insured Retention amount specified in Item 4 of the DECLARATION of this policy, then the Self-Insured Retention applicable to such **claim** shall be such lesser amount; provided, however, the **Insured** hereby agrees to indemnify the **Company** for the difference between the lesser Retention amount specified on the evidence of insurance document and the Self-Insured Retention amount specified in Item 4 of the DECLARATIONS, and to promptly reimburse the **Company** for all costs, expenses and attorney's fees which may be incurred by it in enforcing this indemnity agreement.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 9**

# First Named Insured Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

EMCOR Group, Inc. is hereby designated as the First Named Insured in this policy and as the First Named Insured shall act for all Insureds for the following purposes:

1. receipt of notice of cancellation by the Company;

2. as sole payee of premium due the Company and as recipient of any unearned premium that is returned by the Company;

3. to request changes made to the policy and as recipient to the Company's response to any such request;

4. payment of all premiums and all self-insured retention amounts and for keeping records of information the Company needs for premium computation;

5. consent to settlement or compromise of any claim in accordance with the Settlement Provision I.D of the policy;

6. reporting of changes in scope or nature of the project to the Company.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 10**

# Technology Services Endorsement With Additional Exclusions



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is hereby understood and agreed that this endorsement modifies insurance provided by the policy as follows:

1. Paragraph **DD, T**echnology Services is added to Section **V. DEFINITIONS** as follows:

   **DD.**    **Technology Services** means computer or electronic information technology service performed in conjunction with **Professional Services** by the **Insured** or any entity for whom the **Insured** is legally liable and shall include data processing, website creation and maintenance, system integration, technology consulting and training.

2. Section **V. DEFINITIONS**, Paragraph **W**. **Professional Services** is amended to include **Technology Services**.

3. Paragraph **F.** of Section **II. EXCLUSIONS** is deleted in its entirety and replaced with the following:

   **F.**    any claim based upon or arising out of the design or manufacture of any product or piece of equipment sold, supplied or furnished by the **Insured,** any subsidiary of the **Insured** or any entity which wholly or partly owns, operates or manages the **Insured** or any subsidiary of such entity, or by any person under license from the **Insured.** This exclusion does not apply if the **Claim** arises out of an act, error or omission in the performance of design services or contractor's pollution liability caused by **Pollution Conditions** arising out of **Covered Operations** which are performed for others by the **Insured** or any entity for whom the **Insured** is legally liable. This exclusion shall also not apply to software created or modified specifically for a client for whom the **Insured** is rendering **Professional Services,** except for computer system security software of any type;

4. Paragraph **S.** is added to Section **II. EXCLUSIONS** as follows:

   **S**.    any infringement of any patent, copyright, trademark, service mark, trade dress, trade name, trade secret, or other intellectual property right in the providing of **Technology Services.**

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 11**



# Cancellation Clause Amendment Pro Rata Cancellation Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

This endorsement modifies insurance provided by the policy:

The Cancellation Provision, Cancellation Condition, or Cancellation Clause, whichever is applicable, is amended by adding the following paragraph to the end thereof:

Notwithstanding any other terms or conditions of this policy to the contrary, if this policy is canceled by the **First Named Insured** for any reason, then the **Company** shall return the unearned pro rata proportion of the premium as of the effective date of cancellation.

The following definitions apply to this endorsement:

1. **Company** means the insurer as shown in the header on the Declarations page of this policy.

2. **First Named Insured** means the first Named Insured as shown on the Declarations page of this policy.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 12

# Amendment to Watercraft, Aircraft, Motor Vehicle or Rolling stock Exclusion Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

1.  Subject to the sub-limit of liability below, it is hereby agreed that Section **II. EXCLUSIONS,** Paragraph M. is deleted in its entirety and replaced with the following:

    **M.**  Any **Claim** based upon or arising out of the entrustment, maintenance, operation, use,
    of any watercraft, aircraft, **Motor Vehicle,** or rolling stock of any kind, which is owned, operated, rented by or loaned to the **Insured.** With respect to Coverage A.2, only this exclusion does not apply to:

    1)  **loading or Unloading** of any watercraft, aircraft, **Motor Vehicle,** or rolling stock of any kind whether owned, operated or rented by or loaned to the Insured or not; or

    2)  Transportation of materials to or from any job site in the course of the performance of the **Named Insured's Covered Operations.**

2 .  For purposes of coverage under this Endorsement only, the following exclusion is added to Section **II. EXCLUSIONS:**

    Any **Claim** for **Bodily Injury, Property Damage or Clean-up Costs, which** occurs subsequent to the time the transported material reaches its final destination or while it is in storage off-loaded from the conveyance, which was transporting it for a period of more than 72 hours.

3.  Coverage under this Endorsement is subject to a sub-limit of liability as follows:

    Transportation Liability Sub-Limit:     $25,000,000 Per Claim
                                            $25,000,000 Aggregate

4.  Coverage under this Endorsement is excess of the Self-Insured Retention amount stated in Item 4 of the Declarations and is limited to the Transportation Liability Sub-Limit listed above and shall cease when this limit has been exhausted. Any payments made under this Endorsement erode the Each Claim limit of liability set forth in Item 3 of the Declarations.

5.  Solely with respect to coverage afforded under this endorsement, Item 8. Retroactive Date, Coverage A.2. Contactor's Pollution Liability of the Declarations Page is amended to read as follows:
    01/01/1968

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 13**

# Amendment of the Definition of Pollution Conditions Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is hereby agreed that Section **V**. **DEFINITIONS**: Paragraph **V**. **Pollution Conditions** is deleted in its entirety and replaced with the following:

1. Section **V. DEFINITIONS**, Paragraph **V. Pollution Conditions** is deleted in its entirety and replaced with the following:

   **V.   Pollution Conditions** means the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, hazardous substances, low-level radioactive material, electromagnetic fields, medical waste including infectious and pathological waste and waste materials into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment in the concentration or amounts discovered, unless such natural condition(s) are released or dispersed as a result of the performance of **Covered Operations**, and such release or dispersal is unexpected and unintended from the standpoint of the **Insured**. **Pollution Conditions** shall include **Microbial Matter** and Legionella pneumophila in any structure on land and the atmosphere contained within that structure.

   **Pollution Conditions** shall also include the discharge, dispersal, release or escape of silt or sedimentation that originated at and migrated from a job site.

2. Solely with respect to **Pollution Conditions** arising out of or associated with **Microbial Matter**, Section **I. INSURING AGREEMENTS**, **A. COVERAGES**, **3. EMERGENCY RESPONSE COSTS** is deleted in its entirety.

3. The following is added to Section **V. DEFINITIONS**, as Paragraph **DD. Microbial Matter**:

   **Microbial Matter** means fungi or bacterial matter, which reproduces through the release of spores or the splitting of cells, including but not limited to mold, mildew and viruses, whether or not such **Microbial Matter** is living.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 14

# Emergency Response Costs Coverage Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is hereby agreed that the Policy is amended as follows:

1.   The following is added to Section **I. INSURING AGREEMENTS**, **A**. **COVERAGE**:

    3.   **EMERGENCY RESPONSE COSTS**

        The Company will pay **Emergency Response Costs** resulting from **Pollution Conditions** caused by **Covered Operations**. **Emergency Response Costs** must be first incurred by the **Insured** during the **Policy Period**.

For this Coverage to apply, all of the following conditions must be satisfied:

    1.   The **Insured** must report the **Emergency Response Costs** to the Company, in writing, as provided in Section **III. CLAIMS AND NOTICE PROVISIONS, A. INSURED'S DUTIES WHEN THERE IS A CLAIM OR EMERGENCY RESPONSE COSTS**, Subparagraph 1. and Subparagraph 3. of this Policy.

    2.   Such **Pollution Conditions** must be unexpected and unintended from the standpoint of the **Insured**.

2.   The following is added to Section **II**. **EXCLUSIONS**, Paragraph **J.**:

    Solely with respect to **Emergency Responses Costs**, based upon or arising out of liability of other assumed by the **Insured** under any contract or agreement.

3.   Section **IV**. **CONDITIONS**, Paragraph **A**. **INSURED'S DUTIES WHEN THERE IS A CLAIM** subparagraph 1. is deleted in its entirety and replaced with the following:

1.   In the event of a **Claim** or **Emergency Response Costs** to which this Policy applies is made against the **Insured**, the **Insured** must give written notice as soon as practicable, and as otherwise required under this section to:

**Construction Professional Liability Claims Manager**
**Steadfast Insurance Company (or name of insurance company used)**
**P.O. Box 968041**
**Schaumburg, IL 60196**
**Fax number: (866) 255-2962**
**New matters may also be reported via email at:**
**USZ_Zurich_Construction_Professional_Claims@zurichna.com**

Written notice shall include every demand, notice , summons or other process received by the Insured's Vice President of Risk Management or Director of Claims Management.

4.  Section **IV**. **CONDITIONS** Paragraph **A. INSURED'S DUTIES WHEN THERE IS A CLAIM** is amended by the addition of the following:

As a condition precedent to coverage under this Policy, when **Emergency Response Costs** have been incurred, the **Insured** shall forward to the Company within fourteen (14) days of the commencement of **Pollution Conditions** for which the **Emergency Response Costs** have been incurred all information including but not limited to: the cause and location of the **Pollution Conditions,** technical reports, laboratory data, field notes, expert reports, investigations, data collected, invoices, regulatory correspondence or any other documents relating to such **Emergency Response Costs**.

The Company shall have the right but not the duty to clean up or mitigate **Pollution Conditions** upon receiving the notice as provided in the above paragraph.

5.  The following is added to Section **III**. **LIMITS OF LIABILITY AND SELF-INSURED RETENTION**, Paragraph **A. LIMITS OF LIABILITY – EACH CLAIM**:

Solely with respect to coverage for **Emergency Response Costs**, and subject to Paragraph **B. LIMITS OF LIABILITY – AGGREGATE**, the most the Company will pay for all **Loss** arising out of any one **Pollution Condition** or the same, related or continuous **Pollution Conditions** is $25,000,000**.**

6.  Section **III**. **LIMITS OF LIABILITY AND SELF-INSURED RETENTION**, Paragraph **E. SELF-INSURED RETENTION** is deleted in its entirety are replaced with the following:

**E.   SELF-INSURED RETENTION**

The Company's obligation, under the coverages provided by this Policy to pay **Loss**, **Claims Expenses** or **Emergency Response Costs** on behalf of the Insured applies on to the payment of **Loss**, **Claim Expenses** or **Emergency Response Costs** in excess of the **Self-Insured Retention** stated in Item 4. of the Declarations, and subject to the Limits of Liability stated in Item 3. of the Declarations.

The **Self-Insured Retention** shall be applied to the payment of **Loss**, **Claim Expenses** or **Emergency Response Costs**.

The terms of the Policy including those with respect to the Company's rights and duties with respect to defense of **Claims** apply in excess of the **Self-Insured Retention** amount.

7.  The following is added to Item 3. of the Declarations:

Coverage **3**. **Emergency Response Costs**: Each Loss: $25,000,000

8.  The following is added to Section **V**. **DEFINITIONS**:

**Emergency Response Costs** means reasonable and necessary expenses, including legal expenses incurred with the Company's written consent which consent shall not be unreasonably withheld or delayed, incurred in the remediation of soil, surface water, groundwater or other contamination that must be incurred:

i.   in response to **Pollution Conditions** that necessitate immediate action; and

ii.   within seventy-two (72) hours of the commencement of such **Pollution Condition(s)**; or as approved by the Company in writing.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 15**

# War Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.
This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**
This endorsement modifies insurance provided by the policy:

This insurance does not apply to any loss, cost, damage, expense, injury, claim or suit, caused by, arising out of, or resulting directly or indirectly, in whole or in part from war, including but not limited to:

a. War, including undeclared or civil war; or
b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
c. Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

"However, this exclusion does not apply to:

(a) "**professional services**" or "**covered operations**" that are **civilian** employment  or contract activities performed for or on behalf of clients who are defense contractors or for military-related manufacturing activities, branches of the armed forces, departments or branches of the US federal, state, or local government; and

(b) "terrorism "
As used in this exclusion, "terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:
a. A government;
b. The civilian population of a country, state or community; or
c. To disrupt the economy of a country, state or community.

So long as the Terrorism Risk Insurance Act of 2002 (the "Act") is in effect, "terrorism" includes an act of terrorism as defined by Section 102. Definitions of the Act and any revisions or amendments thereto.

It is hereby agreed that Section V. Definitions is amended to include the following:

EE. **Civilian** means (a) a person under international humanitarian law (also known as the laws of war) who is not a member of his or her country's armed forces or other militia and are distinct from combatants or other military combat support  personnel , (b)  a person who is a member of a National Guard ,  Military Reserve , State Defense Forces  or similar unit whose status is "inactive" and is not operating in the capacity as a combatant or combat support personnel at the time that he or she is providing  **professional services** or **covered operations,** or (c) non-combat or related support activities such as the operation, maintenance and repair of a the **Insured's** client's facility utilities, power plant, or HVAC system , trash or waste disposal, pest control or similar services."

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 16**



# CPL Additional Insured and Primary Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

Solely with respect to coverage provided under Section A.2 Contractors Pollution Liability, It is hereby agreed that Section **V. DEFINITIONS,** Paragraph J. **Insured** is amended to include clients or other entities as additional **Insureds** where required by contract but only for **Loss** arising out of **Covered Operations** performed by the **Named Insured** for such additional **Insured**.

This does not apply to **Bodily Injury, Property Damage** or **Cleanup Costs** arising out of the sole negligence or willful misconduct of the additional **Insured**.

As respects, the coverage afforded the additional **Insured** and where required by contract, this insurance is 1) primary; or 2) primary and non-contributory, and our obligations are not affected by any other insurance carried by such additional **Insured** whether primary, excess, contingent, or on any other basis.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 17**



# Amendment of Restoration Costs Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

It is hereby agreed as follows:

1. Section **V. DEFINITIONS**, Paragraph **AA. Restoration Costs** is deleted in its entirety and replaced with the following:

   **AA.** **Restoration Costs** means reasonable and necessary costs incurred by the **Insured** with the Company's written consent, which consent shall not be unreasonably withheld or delayed, to repair, replace or restore real or personal property to substantially the same condition it was in prior to being damaged during work performed in the course of incurring **Clean-Up Costs** arising from **Environmental Damage**.

   **Restoration Costs** shall not include costs associated with improvements or betterments, except to the extent that such improvements or betterments of the damaged property entail the use of materials, which are environmentally preferable to those materials, which comprised the damaged property. Such environmentally preferable material must be certified as such by an applicable independent certifying body, where such certification is available, or, in the absence of such certification, based on the judgment of the Company in its sole discretion.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 18**



# Biological Terrorism Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

Solely with respect to any **Loss** arising directly or indirectly as a result of certified "acts of terrorism" as defined by Section 102(1) of the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2007 (collectively, "TRIA") it is hereby agreed that:

1. Section **V. DEFINITIONS,** Paragraph **V. Pollution Condition** is deleted in its entirety and replaced with the following:

    **V.   Pollution Condition** means the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, hazardous substances, low-level radioactive material, electromagnetic fields, medical waste including infectious and pathological waste and waste materials into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment in the amounts or concentrations discovered unless such natural condition(s) are released or dispersed as a result of the performance of **Covered Operations**, and such release or dispersal is unexpected and unintended from the standpoint of the **Insured**.. Pollution Conditions shall include **Microbial Matter** and Legionella pneumophila in any structure on land and the atmosphere contained within that structure **Pollution Condition** shall also include **Bioterrorism Agents**.

2. The following is added to Section **V. DEFINITIONS**:

    **Bioterrorism Agents** means viruses, bacteria or other agents, as defined by the U.S. Center for Disease Control, whether or not such viruses, bacteria or other agents are living, provided such matter was deliberately released, discharged or dispersed intentionally by a third party.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 19**

# Advice of Cancellation to Entities Other Than The Named Insured Limited To E-Mail Notification



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

This policy is amended as follows:

In the event that the **Insurer** cancels this policy for any reason other than non-payment of premium, and

1.   The cancellation effective date is prior to this policy's expiration date;

2.   The **First Named Insured** is under an existing contractual obligation to notify a certificate holder when this policy is canceled (hereinafter, the "Certificate Holder(s)"); and has provided to the **Insurer**, either directly or through its broker of record, the email address of the contact at such entity, and the **Insurer** received this information after the **First Named Insured** receives notice of cancellation of this policy and prior to this policy's cancellation effective date, via an electronic spreadsheet that is acceptable to the **Insurer**, the **Insurer** will provide advice of cancellation (the "Advice") via e-mail to such Certificate Holders.

Proof of the **Insurer** emailing the Advice, using the information provided by the **First Named Insured**, will serve as proof that the **Insurer** has fully satisfied its obligations under this endorsement.

This endorsement does not affect, in any way, coverage provided under this policy or the cancellation of this policy or the effective date thereof, nor shall this endorsement invest any rights in any entity not insured under this policy.

The following Definitions apply to this endorsement:

1. **First Named Insured** means the Named Insured shown on the Declarations Page of this policy.

2. **Insurer** means the insurance company shown in the header on the Declarations Page of this policy.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 20**

# Economic Sanctions Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

This endorsement modifies insurance provided under the following:

• ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY

• ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY AND CONTRACTORS

• POLLUTION LIABILITY

• CONTRACTORS PROFESSIONAL LIABILITY

• CONTRACTORS PROFESSIONAL LIABILITY AND CONTRACTORS POLLUTION

• LIABILITY INSURANCE

• DESIGNERS & AGENCY CONSTRUCTION MANAGERS PROJECT SPECIFIC - PROTECH

• DESIGNERS & CONSTRUCTORS PROJECT SPECIFIC – PROTECH

The following is added to the **CONDITIONS** section:

The **Company** shall not be deemed to provide cover and the **Company** shall not be liable to pay any **Claim** or provide any benefit hereunder to the extent that the provision of such cover, payment of such **Claim** or provision of such benefit would expose the **Company**, the **Company's** parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 21**

# Amendment Damages Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is hereby agreed as follows:

1.   Section **V. DEFINITIONS,** Paragraph **H. Damages,** is deleted in its entirety and replaced with the following:

> **H.   Damages** means any amount which an **Insured** is legally obligated to pay for any **Claim** to which this insurance applies and shall include judgments, settlements, and interest on judgments, provided always that **Damages** shall not include the return or withdrawal of professional fees, sanctions, uninsurable fines or penalties imposed by law, or other matters that may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 22**

# Professional Liability Crisis Response Coverage Extension Endorsement
**(WITH CRISIS MANAGEMENT LOSS AND CRISIS RESPONSE COSTS)**



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

This endorsement modifies insurance provided by the policy:

**THIS ENDORSEMENT EXTENDS COVERAGE TO PROVIDE FOR "CRISIS RESPONSE COSTS" AND "CRISIS MANAGEMENT LOSS" IN THE EVENT OF A "CRISIS EVENT" AS DEFINED HEREIN. THE LIMITS OF INSURANCE PROVIDED FOR SUCH COVERAGE ARE IN ADDITION TO THE LIMITS OF INSURANCE PROVIDED IN THE DECLARATIONS OF THIS POLICY. IF THIS ENDORSEMENT IS ATTACHED TO A CLAIMS-MADE POLICY, THIS ENDORSEMENT NEVERTHELESS REQUIRES THAT ALL OF THE CRITERIA SET FORTH IN SECTION I., SUBPARAGRAPHS B.1. THROUGH B.4., INCLUSIVE, BE MET.**

## SCHEDULE

| Crisis Response Coverage Extension | Limits of Insurance |
|---|---|
| Crisis Response Aggregate Limit | **$300,000** |
| Each Crisis Response Costs Limit | **$250,000** Each "Crisis Event" |
| Each Crisis Management Loss Limit | **$50,000** Each "Crisis Event" |

Notwithstanding any provisions to the contrary in the policy to which this endorsement is attached, subject to the Limits of Insurance as shown in the above Schedule and in accordance with the terms and conditions set forth in this endorsement, the policy is extended to provide "crisis response costs" and "crisis management loss" resulting from a "crisis event".

**SECTION I. – CRISIS RESPONSE COVERAGE EXTENSION**

**A.**  We will reimburse you or pay on your behalf reasonable and necessary "crisis response costs" and/or "crisis management loss" arising out of: (1) "bodily injury" or "property damage" for which coverage is provided under this policy, or (2) "imminent injury", but only with respect to a "crisis event" to which this insurance applies. The amount we will reimburse you or pay on your behalf for such "crisis response costs" and/or "crisis management loss" is limited as described in SECTION III – CRISIS RESPONSE LIMITS OF INSURANCE. No self-insured retention or deductible shall apply to this coverage extension endorsement.

**B.**  We will reimburse you or pay on your behalf "crisis response costs" and/or "crisis management loss" arising out of a "crisis event" only if:

1.  The "bodily injury" or "property damage" or "imminent injury" takes place in the "coverage territory"; and

2.  The "bodily injury" or "property damage" or "imminent injury" commences to occur during the policy period, and

3.  Such "crisis response costs" and/or "crisis management loss" did not arise out of any fact, circumstance, pre-existing condition, situation, "bodily injury", "property damage", or "imminent injury" that you, prior to the inception date of this policy, knew, or reasonably should have known, could lead to, cause or result in such "crisis response costs" and/or "crisis management loss", and

4.  Such "crisis response costs" and/or "crisis management loss" are incurred within thirty (30) days after the commencement date of the "crisis event". The end of the policy period will not cut short this thirty (30) day period.

## SECTION II. – EXCLUSIONS

The exclusions of the policy apply to this endorsement, including, but not limited to, any exclusion, which applies to workers compensation, or any similar law. However, the following additional exclusions applicable to this endorsement supersede any similar exclusions in the policy.

This coverage extension does not apply to:

**Newly acquired or merged entities**

"Crisis response costs" or "crisis management loss" resulting from "bodily injury" or "property damage" or "imminent injury" that occurred prior to the date you acquired or merged with any other entity.
**Infectious Diseases or Illnesses**

"Crisis response costs" or "crisis management loss" arising out of infectious diseases or illnesses caused by any bacterium, virus, or fungus. However, this exclusion does not include, food-borne illnesses or defective vaccines.

## SECTION III. – CRISIS RESPONSE LIMITS OF INSURANCE

A.  The Schedule above and the rules below establish the most we will reimburse or pay on your behalf for "crisis response costs" and "crisis management loss" regardless of the number of Insureds, "crisis events", or "affected persons".

B.  The Crisis Response Aggregate Limit is the most we will reimburse or pay on your behalf for the sum of all "crisis response costs" and "crisis management loss" under this endorsement.

C.  Subject to Paragraph **B.** above, the Each Crisis Response Costs Limit is the most we will reimburse or pay on your behalf for all "crisis response costs" arising out of any one "crisis event".

D.  Subject to Paragraph **B.** above, the Crisis Management Loss Limit is the most we will reimburse or pay on your behalf for all "crisis management loss" arising out of any one "crisis event".

All "crisis events" or all related or interrelated "crisis events" will be deemed to be one "crisis event".

## SECTION IV – DEFINITIONS

The definitions of the policy apply to this endorsement. However, the following additional definitions applicable to this endorsement supersede any similar definitions in the policy.

You and your refer to the Named Insured and we, us and our refer to the Company providing this insurance. Other words and phrases that appear in quotation marks have special meaning as follows:

A.  "Affected persons" means those individuals who suffer direct "bodily injury" or "property damage", or directly experience "imminent injury", including such individual's immediate family members.

B.  "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

**C.** "Coverage territory" means the United States of America, including its territories and possessions, Puerto Rico and Canada.

If coverage for "crisis response costs" or "crisis management loss" under this endorsement is in violation of any United States of America's economic or trade sanction, including, but not limited to, sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") then coverage for such "crisis response costs" or "crisis management loss" shall be null and void.

**D.** "Crisis event" means:

    **1.** An emergency situation including, but not limited to, a manmade disaster, such as arson, a bombing, the taking of hostages, a mass shooting, terrorism (if covered under the policy only), intentional contamination of food, drink, or pharmaceuticals or the actual or alleged mishandling of a natural disaster, that results in covered "bodily injury", "property damage" or "imminent injury" to any person, and

    **2.** Such emergency situation has been associated with or may reasonably be associated with significant adverse regional or national news media coverage.

**E.** "Crisis management firm" means a public relations firm or crisis management firm, assigned or approved by us in writing that is hired by you to perform services of the type covered under "crisis management loss" in connection with a "crisis event".

**F.** "Crisis management loss" means reasonable and necessary fees and expenses charged by a "crisis management firm" or your employees in providing public relations and media management services for the purpose of maintaining and restoring public confidence in you. These expenses may include printing, advertising, or mailing of materials to manage reputational risk. This does not include the salaries of your employees.

**G.** "Crisis response costs" means:

    **1.** reasonable and necessary "emergency transport expenses", "emergency psychology expenses", funeral expenses, travel expenses, and temporary living expenses incurred by you to provide relief and/or support to "affected persons", and

    **2.** expenses incurred by you to secure the scene of a "crisis event". "Crisis response costs" shall not include "defense costs" or "crisis management loss".

**H.** Defense costs" means legal fees and expenses incurred by you for legal advice or services sought in anticipation of, or upon actual receipt of, a claim alleging liability and seeking damages for "bodily injury", "property damage" or "imminent injury".

**I.** "Emergency transport expenses" means reasonable and necessary emergency transport expenses, occurring within 24-hours after a "crisis event", to transport an "affected person" sustaining "bodily injury" in a "crisis event" to a medical treatment facility.

**J.** "Emergency psychology expenses" means reasonable and necessary expenses for psychology or counseling services provided to "affected persons" and incurred within the first fourteen (14) days after a "crisis event". This does not include the costs or expenses of any medications or hospitalizations. Such psychology or counseling services must be approved by the "crisis management firm".

**K.** "Imminent injury" means the actual and immediate threat of "bodily injury" or "property damage".

**L.** "Property damage" means:

    **1.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **2.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "crisis event" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**SECTION V. – CONDITIONS**

The general and/or common conditions of the policy apply to this endorsement. However, the following conditions applicable to this endorsement supersede any similar conditions in the policy to the contrary.

**A.  Insured's Duties in the Event of a "Crisis Event"**

**1.**  You must see to it that we are notified by within twenty-four (24) hours of a "crisis event" which may result in "crisis response costs" or "crisis management loss".

The call notice must be to:

Construction Professional Liability Claims Manager
Steadfast Insurance Company (or name of insurance company used)
P.O. Box 968041
Schaumburg, IL 60196
Fax number: (866) 255-2962
New matters may also be reported via email at:
USZ_Zurich_Construction_Professional_Claims@zurichna.com

If necessary, we will provide you with an approved "crisis management firm" unless we agree to accept a "crisis management firm" that you have selected.

**2.**  Thereafter you must provide written notice, as soon as practicable. To the extent possible, this written notice should include:

**a.**  How, when and where the "crisis event" took place;

**b.**  The names and addresses of any "affected persons" and witnesses; and

**c.**  The nature and location of any injury or damage arising out of the "crisis event".

**3.**  If reimbursement is sought directly by you, you must submit a claim for reimbursement of "crisis response costs" and "crisis management loss" within ninety (90) days after incurring such "crisis response costs" or "crisis management loss". Such claim(s) must include invoices and/or receipts supporting such "crisis response costs" or "crisis management loss" for each and every expense in excess of fifty (50) dollars.

**4.**  Written notice and claim submission as required in Paragraphs **1.** and **2.** of this section, respectively, shall be submitted to:

Construction Professional Liability Claims Manager
Steadfast Insurance Company (or name of insurance company used)
P.O. Box 968041
Schaumburg, IL 60196
Fax number: (866) 255-2962
New matters may also be reported via email at:
USZ_Zurich_Construction_Professional_Claims@zurichna.com

**B.  Anti-Stacking Provision**

If "crisis response costs" and/or "crisis management loss" provided by this coverage extension endorsement are also provided by any other insurance issued to you by us or any of our affiliated companies (whether or not such costs or loss are referred to using these same terms), the maximum limit of insurance under all insurance available shall not

exceed the highest applicable limit of insurance available under any one policy or endorsement. This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically intended to apply as excess insurance over this coverage extension endorsement.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 23**

# Biodiversity Damage Definition and Property Damage Definition Amendatory Endo



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is hereby agreed that:

1.  The following are added to Section **V. DEFINITIONS**:

    **Biodiversity Damage** means actual physical damage to or destruction of water, land or protected species or natural habitats for which the **Insured** is legally responsible or has been incurred by the **Insured** under European Union Directive 2004/35/CE on environmental liability and/or any equivalent local legislation.

    **Mitigation Expenses** means those expenses resulting from reasonable measures taken at the sole initiative of the **Insured** in good faith, either to avoid **Pollution Conditions, which** may give rise to a **Claim** or to avoid or reduce any consequences thereof, in as much as these measures are urgent.

2.  Section **V. DEFINITIONS**, Paragraph **CC. Environmental Laws** and Paragraph **X. Property Damage** are deleted in their entirety and replaced with the following:

    **CC. Environmental Laws** means any federal, state, provincial or local laws, or the European

    Union Directive 2004/35/CE on environmental liability where it has been enacted into national legislation, (including, but not limited to, statutes, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives) that are applicable to **Pollution Conditions**.

    **X.  Property Damage** means:

    1.  Physical injury to or destruction of tangible property of parties other than the **Insured**, including the resulting loss of use and diminution in value thereof;

    2.  Loss of use, but not diminution in value, of tangible property of parties other than the **Insured** that has not been physically injured or destroyed; or

3.  **Natural Resource Damage** or **Biodiversity Damage**. **Property Damage** does not include **Environmental Damage**.

3.  The following is added to Section **II. EXCLUSIONS**:

**MITIGATION EXPENSES:**

Based upon or arising from **Mitigation Expenses**.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 24



# Definition of Insured Amendatory Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is hereby understood and agreed that this endorsement modifies insurance provided by the policy as follows:

Definition **J**. of Section **V. DEFINITIONS** is deleted in its entirety and replaced with the following:

**J.   Insured** means:

1. the **Named Insured** designated in Item 1 of the Declarations;

2. any person who is or was a partner, officer, member, director, stockholder or employee of the **Named Insured,** but only while acting within the scope of his/her duties as such;

3. the heirs, executors, administrators, and legal representatives of each **Insured** as defined in 1. and 2. above, in the event of death, incapacity or bankruptcy of such **Insured,** but only as respects liability arising out of **Professional Services** or **Covered Operations** rendered by or on behalf of the **Named Insured** prior to such **Insured's** death, incapacity or bankruptcy;

4. solely with respect to Coverage A. 2., the client for whom the **Named Insured** performs or performed **Covered Operations,** provided that a written contract or agreement is in effect between the **Named Insured** and the client requiring the client to be an **Insured** under the **Insured's** contractors pollution liability policy. However, such clients are covered under this policy solely with respect to **Loss** arising from **Covered Operations** performed by the **Named Insured** and are not covered for any **Loss** arising from the client's own liability

5. a former partner, officer, director or employee of the **Named Insured** while rendering **Professional Services** on behalf of the **Named Insured;**

6. contract or leased personnel rendering **Professional Services** or performing **Covered Operations u**nder the supervision and on behalf of the **Named Insured**;

7. a joint venture, partnerships, or limited liability company in which the **Named Insured** is named as a coventurer or member, but only as respects the **Insured's** legal liability arising out of the **Insured's** participation in such joint venture or limited liability company;

8. Joint ventures, limited liability companies and partnerships for which the Insured has 50% or less ownership, and has agreed to provide the co-ventures' Additional Named Insured status under the policy, but at the sole discretion of the First Named Insured;

9. any predecessor in interest.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 25**

# Amendatory Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is hereby understood and agreed that **I. INSURING AGREEMENTS**, **D. SETTLEMENT PROVISIONS,** is deleted in its entirety and replaced with the following:

**D.  SETTLEMENT PROVISIONS:**

For Claims covered under Coverage A.1, Coverage A.2 or under both Coverage A.1 and A.2, the Company will not settle or compromise the **Claim** without the consent of the Director Risk Management. Under all Coverage of this Policy, if the Director Risk Management refuses to consent to a settlement or compromise recommended by the Company and elects to contest such Claim or continue legal proceedings in connection with such **Claim,** then the Company's liability for the **Claim** shall not exceed the amount for which the **Claim** could have been so settled plus **Claim** Expenses incurred up to the date of such refusal subject to the applicable limit of liability under this Policy.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 26**

# Additional Named Insured(s)



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that Item 1. of the DECLARATIONS is amended to include the following:

eTec Fire Protection, LLC
eTec Mechanical Corporation

Retroactive date: 5/3/2018

Southstar Fire Protection Company d/b/a Northstar Fire Protection of Texas, Inc.
Northstar Alarm & Suppression System, L.L.C.

Retroactive Date:  01/04/2017

EMCOR-CCI Holdings, Inc.
CCI Mechanical, Inc.
Contractors Leasing, Inc.
Engineering and Construction Services, Inc.

Retroactive Date: 03/01/2017

| | |
|---|---|
| Cherokee Millwright, Inc. | Retroactive Date:  11/01/2017 |
| Morley Moss, Inc. | Retroactive Date:  10/22/2018 |
| Control Solutions Group, Inc. | Retroactive Date:  11/01/2018 |
| Hill York Service Company LLC | Retroactive Date:  01/04/2019 |
| Baker Electric, Inc. | Retroactive Date:  04/01/2019 |
| Garett Mechanical, Inc. | Retroactive Date:  08/01/2019 |

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement # 27**



# Additional Named Insured Endorsement

**(WITH RETROACTIVE DATES)**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

This endorsement modifies insurance provided by the policy:

1.  The following additional **Named Insureds** are added to the policy. The **First Named Insured** is the appointed and irrevocable agent for all **Insureds**, including for the purpose of receipt of any notice of cancellation, notice of nonrenewal (if applicable), and the payment of any premium or deductible or the return of any premium under this policy.

2.  Notwithstanding the Retroactive Date shown in Item 8. of the Declarations, the Retroactive Date applicable to each **Named Insured** shown in the Schedule of Additional Named Insureds below shall be the Retroactive Date corresponding to such **Named Insured**.

**SCHEDULE OF ADDITIONAL NAMED INSUREDS**

| Named Insured | Retroactive Date |
|---|---|
| Newcomb and Company | 04/01/2016 |

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 28

# ADDITIONAL NAMED INSURED ENDORSEMENT
**(WITH SPECIAL LIMITS AND RETROACTIVE DATES)**



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

This endorsement modifies insurance provided under this Policy as follows:

1.   Item 1. of the Declarations, **Named Insured,** is amended to include the persons or entities shown on the Schedule of Additional Named Insureds below (hereinafter, the **Schedule**).

2.   Notwithstanding the Retroactive Date shown in Item 8. of the Declarations, the Retroactive Date applicable to each **Named Insured** shown in the **Schedule** below shall be the Retroactive Date corresponding to such **Named Insured**.

3.   The Limits of Liability applicable to each **Named Insured** shown in the **Schedule** below is included within and reduces the Annual Aggregate Limit and Per Claim Limit shown in Item 3. of the Declarations. Such Annual Aggregate Limit and Per Claim Limit shown in Item 3. of the Declarations shall not be reinstated, increased or extended as result of this endorsement.

4.    The Self-Insured Retention applicable to each **Named Insured** shown in the **Schedule** below shall be $500,000 Each Claim.

5.   The **Named Insured** first shown in Item 1. of the Declarations is the appointed and irrevocable agent for all **Insureds**, including for the purpose of receipt of any notice of cancellation, notice of nonrenewal (if applicable), and the payment of any premium, deductible or self-insured retention or the return of any premium under this policy.

## SCHEDULE OF ADDITIONAL NAMED INSUREDS

| Named Insured | Limits of Liability | Retroactive Date |
|---|---|---|
| Ardent Services, LLC | $25,000,000 Per Claim Limit<br>$25,000,000 Annual Aggregate Limit | 04/15/2016 |
| Rabalais Constructors, LLC | $25,000,000 Per Claim Limit<br>$25,000,000 Annual Aggregate Limit | 04/15/2016 |

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 29**

# PRE-CLAIMS ASSISTANCE ENDORSEMENT



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is hereby understood and agreed that the following **Section I.I. SUPPLEMENTAL PAYMENTS** shall be added to the policy following Section **I. INSURING AGREEMENT**:

**I.I.  SUPPLEMENTAL PAYMENTS**

All payments made under this section are not subject to the Self Insured Retention and are in addition to the Limits of Liability for each Coverage Part set forth in Item 2 of the Declarations. However, the Company shall not be obligated to make any payments under this Section after the Aggregate Limit of Liability set forth in the Declarations has been exhausted by payments of "Damages" and/or "Professional Liability Claim Expenses" or tendered into court.

A.  Pre-Claims Assistance

If the "Insured" reports a circumstance during the "Policy Period," in accordance with Section **V. CLAIM PROVISIONS**, Item A.2. NOTICE OF CIRCUMSTANCE the Company may, in its sole discretion and at its expense, investigate or monitor such circumstance, and such costs or expenses will not be applied towards the Self Insured Retention or erode the applicable Limit of Liability until a "Claim" is made.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

Endorsement # 30



# RECTIFICATION INDEMNITY COVERAGE

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is agreed that the following COVERAGE PART is added to the Policy, and that Sections II. DEFINITIONS, III. EXCLUSIONS, IV. LIMITS OF LIABILITY, V. CLAIM PROVISIONS, VI. EXTENDED REPORTING PERIOD, and VII. CONDITIONS shall also apply to coverage provided under this Endorsement.

**COVERAGE PART – RECTIFICATION INDEMNITY COVERAGE**

**I.    INSURING AGREEMENT**

    **A.   COVERAGE**

We shall indemnify the "Named Insured" for the "Named Insured's" "Actual and Necessary Costs and Expenses "incurred in rectifying a "Design Defect" in any part of the construction works or engineering works for any project, provided that:

1.   The "Named Insured" reports "Actual and Necessary Costs and Expenses" for a "Design Defect" as soon as practicable after discovery of such "Design Defect" but in no event after any certificate of substantial completion has been issued;

2.   The "Named Insured" demonstrates to us that the "Actual and Necessary Cost and Expenses" arise out of the "Named Insured's" rendering of "Professional Services" which resulted in a "Design Defect" for which a third party could otherwise make a "Claim" against the "Named Insured".

If we make any payment under this Rectification Indemnity Coverage, we shall be subrogated to all your rights against any person or organization, including the right to participate with the "Insured" in the exercise of all the "Insured's" rights of recovery. In the event an "Insured" either concurrently or subsequently files a "Protective Indemnity Claim" under this policy or a subsequent renewal for the same "Design Defect" for which the insured is undertaking or has previously undertaken rectification efforts, then any proceeds the "Insured" may receive from the "Design Professional's Insurance" shall be used to reimburse us for any payments under the Rectification Indemnity Coverage afforded under this coverage part. If the proceeds received from the "Design Professional's Insurance" are less than the amount paid by us under this Rectification Indemnity Coverage, then difference between the amount paid by us under this Rectification Indemnity Coverage and the proceeds received from the "Design Professional's Insurance" shall erode the limits of liability available under the Contractor's Protective Liability Coverage Part.

In the event that a "Professional Liability Claim" arises out of the same "Design Defect" for which the insured is undertaking or has previously undertaken rectification efforts under the Rectification Indemnity Coverage under this coverage part, then the "Insured's" self-insured retention obligation under the Contractor's Professional Liability Coverage Part shall be offset to the extent of the costs incurred by the "Insured" under their self-insured retention obligations under the Rectification Indemnity Coverage afforded under this coverage part. payments made under this Rectification

Indemnity Coverage part shall erode the limits of liability available under the Contractor's Professional Liability Coverage Part.

## B.  ARBITRATION

In the event that the "Named Insured" and we do not agree that "Actual and Necessary Costs and Expenses" presented by the "Named Insured" under this Coverage Part arises out of rectifying a "Design Defect," we mutually agree, the dispute, as to that sole issue only, shall be referred to the American Arbitration Association before a three member panel and pursuant to their then existing Construction Industry Rules for an opinion as to whether the breach was or was not the result of a "Design Defect". The panel shall be composed of one licensed attorney, one licensed "Design Professional" and one licensed contractor. The "Named Insured" and we agree to accept the opinion of a majority of the panel as final and binding upon each of us as to that issue only.

## II.  DEFINITIONS

In addition to Section II. DEFINITIONS of this policy, and solely as respects the coverage provided under Rectification Indemnity Coverage, the following Definitions shall apply:

A.  "Actual and Necessary Costs and Expenses" means those sums actually incurred by the "Named Insured" which are reasonably related to the efforts needed to remedy a "Design Defect" covered by this endorsement, less any overhead, profit and mark-up of the "Named Insured".

B.  "Design Defect" means an error, omission or negligent act in the preparation of engineering or architectural designs, plans, drawings, specifications, calculations, surveys, and studies and shall not include any actual or alleged negligence in the issuance of change orders, or observation of construction review of the contractor's requests for payment

C.  "Temporary Works" means formwork, structures, or mechanical plant designed and constructed for use as construction aids for a specific project.

## III.  EXCLUSIONS

In addition to Section III. EXCLUSIONS of this policy, and solely as respects the coverage provided under this Rectification Indemnity Coverage Endorsement, this insurance does not apply to:

A.  the failure of any "Temporary Works" to perform their intended function;

B.  loss of or damage to property other than property which forms the subject of the contract to which the "Professional Service" relates;

C.  any cost estimate being exceeded.

## IV. REPORTING OF ACTUAL AND NECESSARY COSTS AND EXPENSES

Solely with respect to the coverage provided by this endorsement, the "Named Insured" must report the "Actual and Necessary Costs and Expenses" for a "Design Defect" to us during the policy period or any applicable Automatic Extended Reporting Period or Optional Extended Reporting Period.

## V. SUB-LIMIT OF LIABILITY/SELF INSURED RETENTION/RETROACTIVE DATE

The following Sub-Limit of Liability and Self-Insured Retention shall apply to RECTIFICATION INDEMNITY COVERAGE:

| | | |
|---|---|---|
| Sub-Limit of Liability | $25,000,000 | Each Claim |
| | $25,000,000 | Total for All Claims |
| Self-Insured Retention | $500,000 | Each Claim |

A retroactive date of 1/1/1968 shall apply to coverage provided under this endorsement.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 31**

# Headquarters Address Change



| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. | |
|---|---|
| Policy No. EOC 9817132 03 | Effective Date: 07/31/2019 |

**This Endorsement Changes the Insurance Policy. Please Read It Carefully.**

As of August 1, 2016, any and all references to the Headquarters Address 1400 American Lane, Schaumburg, IL 60196 are changed to 1299 Zurich Way, Schaumburg, IL 60196.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 32**

# Sanctions Exclusion Endorsement



**Policyholder:** EMCOR Group, Inc.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided. Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**Endorsement # 33**

# NUCLEAR ENERGY LIABILITY EXCLUSION – BROAD FORM



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided under the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that this policy does not apply:

A.   Under any liability coverage, to "bodily injury" or "property damage";

    1.   With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

    2.   Resulting from the "hazardous properties" of "nuclear material" and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, with any person or organization.

B.   Under any medical payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C.   Under any liability coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material" if:

    1.   The "nuclear material" (i) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (ii) has been discharged or dispersed there from;

    2.   The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    3.   The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility" but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such a "nuclear facility" and any property thereat.

D.   As used in this endorsement:

    "Hazardous properties" include radioactive, toxic or explosive properties;

    "Nuclear material" means "source material", "special nuclear material" or "by-product material";

    "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used of exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (1) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (2) resulting from the operation by any person or organization of any "nuclear facility" included under paragraphs (1) and (2) of the definition of "nuclear facility".

"Nuclear facility" means:

1.   Any "nuclear reactor";

2.   Any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing "spent fuel" or (iii) handling, processing or packaging "waste";

3.   Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

4.   Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement # 34**

# Additional Insured and Primary Coverage Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of premium already paid, it is hereby understood and agreed that Endorsement No. 16 is deleted in its entirety and replaced as follows:

Solely with respect to coverage provided under Section A.2 Contractors Pollution Liability, It is hereby agreed that Section **V. DEFINITIONS,** Paragraph J. **Insured** is amended to include clients or other entities as additional  **Insureds** where required by contract but only for **Loss** arising out of **Covered Operations** performed by or on behalf of the **Named Insured** for such additional **Insured**.

This does not apply to **Bodily Injury, Property Damage** or **Cleanup Costs** arising out of the sole negligence or willful misconduct of the additional **Insured**.

As respects, the coverage afforded the additional **Insured** and where required by contract, this insurance is 1) primary; or 2) primary and non-contributory, and our obligations are not affected by any other insurance carried by such additional **Insured** whether primary, excess, contingent, or on any other basis.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 35**

# ADA, FHA, OSHA, State Licensing and Regulatory Board Legal Expense Reimbursement Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided under the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

The following **Section I.I.  SUPPLEMENTAL PAYMENTS** shall be added to the policy following Section **I.  INSURING AGREEMENT**:

**I.I.  SUPPLEMENTAL PAYMENTS**

All payments made under this section are not subject to the Self-Insured Retention and are in addition to the Limits of Liability for each Coverage Part set forth in Item 2 of the Declarations.  However, the Company shall not be obligated to make any payments under this Section after the Aggregate Limit of Liability set forth in the Declarations has been exhausted by payments of "Damages" and/or "Professional Liability Claim Expenses" or tendered into court.

A.  ADA, FHA, OSHA, State Licensing and Regulatory Board Legal Expense Reimbursement

The Company will reimburse the "Insured" for reasonable and necessary "Legal Expenses" incurred in responding to a proceeding initiated directly against the "Insured" by a:

1.  governmental, quasi-governmental or administrative agency under the Americans with Disabilities Act of 1990 (ADA) as amended 42 USC §§ 12101-12213 (2005), the Fair Housing Act (FHA) as amended 42 USC §§ 3601-3631 (2003), or the Occupational Safety and Health Act (OSHA) as amended 29 USC §§ 651-678 (1999); or

2.  by a state licensing or regulatory board;

up to a maximum of twenty-five thousand dollars ($25,000) per proceeding subject to a maximum of fifty thousand dollars ($50,000) per "Policy Period";

Provided always that any such proceeding results from "Professional Services" and is:

a.  first commenced against the "Insured" during the "Policy Period"; and

b.  reported to the Company in writing during the "Policy Period" and before any legal expenses have been incurred; and

c.  the "Professional Services" occurred on or after any applicable "Retroactive Date."

B.  For purposes of this Insuring Agreement, the following definition is added to Section **II. DEFINITIONS**:

U.  "Legal Expense" means the reasonable costs, charges, fees and expenses charged by an attorney appointed by us, (other than compensation of any "Insured") and incurred by the "Insured" solely in connection with such proceeding.

**All other terms and conditions of this policy remain unchanged.**

**Endorsement # 36**

# Contractor's Protective Professional Indemnity Coverage



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3ʳᵈ Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided under the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

> *THIS  POLICY PROVIDES CLAIMS MADE COVERAGE.  CLAIMS UNDER THIS COVERAGE MUST FIRST BE MADE BY YOU AGAINST THE **DESIGN PROFESSIONAL** AND REPORTED IN WRITING BY YOU TO US DURING THE **POLICY PERIOD** OR THE EXTENDED REPORTING PERIOD, IF APPLICABLE.*

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine your rights, duties and what is and is not covered. Throughout this policy the words "you" and "your" refer to the **Named Insured** shown in the Declarations. The words "we", "us", and "our" refer to the Company providing this insurance.

**The existing Contractor's Professional Liability Insurance Policy – A. Coverage: Claims-Made Clause is COVERAGE PART A.**

Refer to the DEFINITIONS sections of this policy for the special meaning of words and phrases that appear in bold.

In consideration of the  payment of the premium and Self-Insured Retention by the  Named Insured and in reliance upon the statements in the **Insured's** Application incorporated herein  by reference, the Company agrees with the **Insured** subject to all of the  terms, exclusions and conditions of this Policy, as follows:

**CONTRACTOR'S PROTECTIVE PROFESSIONAL INDEMNITY** is hereby added to this policy with the following:

**I. INSURING AGREEMENTS**

**A. 3.  Contractor's Protective Professional Indemnity**

We shall indemnify you for **Protective Losses** in excess of the **Design Professional's Insurance,** subject to the provisions of the Self-Insured Retention and Limit of Liability designated in the Declarations, provided that:

1. a **Protective Indemnity Claim** is first made by you against the **Design Professional** and reported in writing by you to us during the **Policy Period** or if exercised, the Optional Extended Reporting Period;

2. such **Protective Indemnity Claim** arises out of a negligent act, error or omission of the **Design Professional** in the rendering or failure to render **Professional Services** on or after the Retroactive Date; and

3. Prior to the date Steadfast Insurance Company first wrote this coverage, the Director Risk Management of  EMCOR Group, Inc. had no  knowledge of circumstances which would give rise to a **Protective Indemnity Claim** as covered herein.

B.   **TERRITORY:**

The insurance afforded by this Policy applies to:

(a)   A **Protective Indemnity Claim**

(1)   the United States of America, its territories or possessions or Puerto Rico; and
(2)   Elsewhere in the world.

C.   **DEFENSE PROVISIONS:**
We shall not defend any **Design Professional,** even if the **Design Professional's Insurance** has been reduced, exhausted, or for any reason is unavailable.

## II. EXCLUSIONS

The following EXCLUSIONS are added to Section II. EXCLUSIONS of this policy:

any **Protective Indemnity Claim** by you against a **Design Professional** based on any workmanship which is not in accordance with the drawings and specifications with respect to any construction, erection, fabrication, installation, assembly or manufacturing process. This exclusion shall not apply to those **Damages** or **Protective Losses** which result from a negligent act, error or omission in the rendering of or failure to render **Professional Services** by others for whom the **Insured** is legally responsible;

attorney fees and related expenses incurred by you resulting from the investigation, adjustment, appeal or making of a **Protective Indemnity Claim** against a **Design Professional**;

with respect to a **Protective Indemnity Claim** only, any amount awarded by default judgment or other proceeding in which any **Design Professional** has failed to answer, plead and otherwise defend itself or indemnify you. However, this exclusion shall not apply if the **Insured** cooperates with us to determine what the **Protective Loss** would have been in the absence of such default judgment or other proceeding in which any **Design Professional** failed to answer, plead or otherwise defend itself;

a settlement which has been reached with the **Design Professional** without our express written consent.

## III. LIMITS OF LIABILITY AND SELF-INSURED RETENTION

**III. Limits of Liability and Self-Insured Retention**, in the policy, are replaced with:

A. LIMIT OF LIABILITY-EACH A.1 **CLAIM,** A.2 **CLAIM** OR **PROTECTIVE INDEMNTIY CLAIM**:

The Limit of Liability shall apply in excess of the Self-Insured Retention. The liability of the Company for each covered A.1 **Claim,** A.2 **Claim** or **Protective Indemnity Claim** shall not exceed the amount stated in the Declarations for Each A.1 **Claim,** A.2 **Claim** or **Protective Indemnity Claim.** This limit is the maximum amount of **Claim Expenses, Loss, Protective Loss** or any payment that the Company will pay on each covered A.1 **Claim,** A.2 **Claim** or **Protective Claim.**

Payment reimbursable under this Paragraph E. which was made prior to the Mediation, as soon as practicable after the conclusion of the Mediation.

## IV.  CONDITIONS

**IV. CONDITIONS**, in the policy, is replaced with:

**A. INSURED'S DUTIES WHEN THERE IS A** A.1 **Claim,** A.2 **Claim** or **PROFESSIONAL INDEMNITY CLAIM**:

As a condition precedent to the right of coverage under this Policy the **Insured** must do the following:

1.   if a **Protective Indemnity Claim** is first made by you against the **Design Professional** or a A.1 **Claim,** A.2 **Claim** or to which this Policy applies is made against the **Insured,** the **First Named Insured** must give written notice, as soon as practicable, and as otherwise required by this Policy, to:

**Construction Professional Liability Claims Manager**
**Steadfast Insurance Company (or name of insurance company used)**
**P.O. Box 968041**
**Schaumburg, IL 60196**

**Fax number: (866) 255-2962**
**New matters may also be reported via email at:**
**USZ_Zurich_Construction_Professional_Claims@zurichna.com**

Written notice shall include every demand, notice, summons or other process received by the **Insured's** Director Risk Management.

2.  The **Insured** must cooperate with the Company. The Company may require that the **Insured** submit to examination under oath, if required, produce and make available all records, documents and other materials, which the Company deems relevant to the Claim. With respect to any **Claim** as described in subparagraph 1) of I. Insuring Agreements C., Defense Provisions of this Policy. The **Insured** must also, at the Company's request, attend hearings, depositions and trials. In the course of investigation or defense, provide the Company with written statements as requested by the Company or the Insured's attendance at meetings with the Company; and the Insured must assist the Company in effecting settlement, securing and providing evidence and obtaining the attendance.

3.  The **Insured** must do whatever is necessary to secure and affect any rights of indemnity, contribution or apportionment that the **Insured** may have.

4.  The **Insured** shall refrain from discussing the facts and circumstances of any A.1 **Claim,** A.2 **Claim** or **Professional Indemnity Claim** with anyone other than legal counsel or representatives of the Company.

## B. PROTECTIVE INDEMNITY CLAIM PROVISION

### 1. NOTICE OF PROTECTIVE INDEMNITY CLAIM

A.  As a condition precedent to Coverage A.3, of this policy, you shall provide us with notice in writing of a **Protective Indemnity Claim** at the same time that you make such **Protective Indemnity Claim** against a **Design Professional**.

B.  We have the right but not the duty to participate in the investigation or settlement of a **Protective Indemnity Claim** covered under Coverage Part A.3 of this policy. Whether or not we choose to participate in the settlement of a **Protective Indemnity Claim**, the **Insured** shall make every effort, within reason, to obtain from the **Design Professional(s)** party to such settlement an assignment of any rights said **Design Professional(s)** has against any other **Design Professional(s)** to pursue claims that are related to or arising from the negligent act(s), error(s) or omission(s) included in the **Professional Indemnity Claim** and settlement.

C.  You shall not enter negotiations or settlement of a **Protective Indemnity Claim** with the **Design Professional** or its representative involving any part of the Limit of Liability of this policy without our knowledge and consent to such negotiation and settlement. However, we may, in writing, and at our election, waive our participation and consent to such negotiation and settlement.

D.  If we elect to participate in the negotiation and settlement of a **Protective Indemnity Claim**, you shall fully cooperate with our requests for information. Your duty to cooperate with us is a condition precedent to coverage under this policy and your failure to cooperate shall relieve us of our obligations and liability under this policy.

### 2. NOTICE OF CIRCUMSTANCE

Circumstance reporting is not afforded under this coverage part.

## C.  REPORTING OF A POSSIBLE CLAIM:

If the **Insured's Director Risk Management** first becomes aware during the **Policy Period or Extended Reporting Period** of this Policy of:

1.  a **Breach of Professional Duty** or circumstance arising out of **Professional Services** with respect to Coverage A.1; or

2.  a **Pollution Condition** arising out of **Covered Operations** with respect to Coverage A.2; or

3.  a **Protective Indemnity Claim** by you against a **Design Professional**

which is reasonably expected to result in a A.1 **Claim,** A.2 **Claim,** or **Protective Indemnity Claim**, then the **Insured** may provide written notice to the Company containing the information itemized below. If such written notice is received by the Company prior to the effective date of cancellation or nonrenewal of this Policy or the end of the Extended Reporting Period (whichever is applicable), then any A.1 **Claim,** A.2 **Claim,** or **Protective Indemnity Claim** subsequently first made against the **Insured** arising out of such conduct, shall be deemed for the purpose of this Policy to have been made on the date on which, such written notice is received by the Company. The **Insured** shall cooperate fully with the Company, and any investigation conducted by the Company or its authorized

representatives shall be subject to the terms set forth in Section IV. A. above as applicable to a A.1 **Claim,** A.2 **Claim,** or **Protective Indemnity Claim.**

### D. LIMIT OF LIABILITY-AGGREGATE:

Subject to Limit of Liability - Each A.1 **Claim,** A.2 **Claim,** or **Protective Indemnity Claim,** the liability of the Company shall in no event exceed the amount stated in the Declarations as aggregate as a result of all covered A.1 **Claim,** A.2 **Claim,** or **Protective Indemnity Claim.** This limit is the total amount of **Claim Expenses, Loss** or **Protective Loss** that the Company will pay under this policy for all covered A.1 **Claim,** A.2 **Claim,** or **Protective Indemnity Claims** including those reported as provided for in Condition C., Extended Reporting Period below.
Once the Limits of Liability have been exhausted, the Company will not defend, pay **Loss**, **Claim Expenses** or **Protective Loss** for any A.1 **Claim,** A.2 **Claim,** or **Protective Indemnity Claim.**

### E. MULTIPLE INSUREDS:

The number of Insureds covered by this policy shall not operate to increase the Limits of Liability as specified above.

### F. MULTIPLE CLAIMS

1.  Regardless of the number of A1.**Claims,** A2.**Claims,** or **Protective Indemnity Claims,** claimants or Insureds, the total liability of the Company for all A1.**Claims,** A2.**Claims,** or **Protective Indemnity Claims** that are made and reported during one or more the **Policy Periods** and arise out of the same, interrelated, associated, repeated or continuous **(a) Breach of Professional Duty, (b) Pollution Conditions** or **(c) Protective Loss** shall be considered a single **Claim,** subject to the Each Claim Limit of Liability shown in the Declarations of the Policy in effect when the first **Claim** was made and reported to the Company, and shall be deemed first reported to the Company during the **Policy Period** in which the initial **Claim** was first reported to the Company.

2.  When the same, interrelated, associated, repeated or continual **Breach of Professional Duty,** the same, interrelated, associated, repeated or continuous **Pollution Conditions** and the same, interrelated, associated, repeated or continuous **Protective Loss** result in a **Claim** for **Loss** covered under both Coverage A.1, Coverage A.2, or A.3 of this Policy, only one Each Claim Limit of Liability shall apply collectively to such **Claim,** even if **Claims** are made and reported in different Policy Periods, and these **Claims** shall be considered a single **Claim** subject to one Each Claim Limit of Liability. The applicable Limit of Liability shall be the Each Claim limit shown in the declarations of the Policy in effect when the first **Claim** was made and reported.

### G. SELF-INSURED RETENTION - EACH CLAIM:

1.  The Company's obligation, under the coverages provided by this Policy to pay **Loss** or **Claim Expenses** or both on behalf of the Insured, applies only to the payment of **Loss** or **Claim Expenses** in excess of the Self-Insured Retention stated in Item 4 of the Declarations, and subject to the Limits of Liability stated in Item 3 of the Declarations.
    The Self-Insured Retention shall be applied to the payment of Loss or Claim Expenses or both. The terms of the Policy including those with respect to the Company's rights and duties with respect to the defense of Claims applies in excess of the Self-Insured Retention amount.

2.  Our liability and obligation to indemnify you for **Protective Loss** under Coverage Part A. 3 attaches upon full payment of the amount(s) of the **Design Professional's Insurance.** In the event the **Design Professional's Insurance** is unavailable through either exhaustion of its limits or through the applicability of a valid exclusion under the **Design Professional's Insurance** then our liability and obligation to indemnify you shall attach excess of the Self-Insured Retention - Coverage A.3 stated in the Declarations. The Self-Insured Retention shall apply to each **Protective Indemnity Claim.**

### H. MEDIATION:

If the **Insured** and the Company jointly agree to utilize **Mediation** as a means to resolve a **Claim** made against the **Insured,** and if such **Claim** is resolved through the use of **Mediation,** then the **Insured's** Self-Insured Retention obligation shall be reduced by 50% subject to a maximum reduction of $20,000. The Company shall reimburse the **Insured** for any Self-Insured Retention

It is a condition precedent to the coverage afforded by this Section that written notice shall be given to the Company containing as much of the following information reasonably available to the **Insured** at the time the **Insured** first becomes aware of a **Breach of Professional Duty** or a **Pollution Condition** arising out of **Covered Operations:**
1.  The actual or alleged **Breach of Professional Duty** or circumstance or **Pollution Condition** which is the subject of a possible **Claim;**

2.  The **Professional Services** rendered, or **Covered Operations** performed by the **Insured,** which gave rise to 1 above;

3.  The date(s) of such conduct;

4.  The injury or damage which has or may result from such conduct;

5.  The identity(ies) of the **Insured**(s) who may be subject of the **Claim**;

6.  The identity(ies) of any potential claimant(s);

7.  The anticipated location(s) of any such **Claim**; and

8.  The circumstances by which the **Insured** first became aware of the potential **Claim**.

If the submitted information in the reasonable judgment of the Company is deemed inadequate, the Company shall inform the **Insured** that the report is inadequate, and the **Insured** shall have 60 days to respond to the Company to the extent possible. If the **Insured** does not respond to the Company within the 60-day period, such **Claim** will not be considered as covered under this policy, but the Insured may resubmit notice at such time the supplemental information is obtained.

Any **Claim** that may subsequently be made against the **Insured** arising out of such possible **Claim** as described above shall be considered a **Claim** first made against the **Insured** during the **Policy Period** of this policy and shall be subject to all terms and conditions of this policy.

The **Insured** shall comply with all subparagraphs in Condition V., A. Insured's Duties When There is a **Claim**. Until the actual **Claim** is made against the Insured, any **Claims Expenses**, including any expenses pertaining to pre-claims services rendered to the Insured by the Company or its designee to investigate or monitor such possible **Claim** shall not be considered an obligation under III. E **Self Insured Retention**.

## I. EXTENDED REPORTING PERIOD

If the Company cancels for any reason other than non-payment of premium or failure to pay Self-Insured Retention amounts due the Company or refuses to renew this Policy the **Named Insured** shall have the right to purchase for an additional premium as set forth in the Declarations of this Policy an Extended Reporting Period. Any A.1 **Claim,** A.2 **Claim,** or **Protective Indemnity Claim** made against the **Insured** during the Extended Reporting Period must arise:

1. out of a **Breach of Professional Duty** first committed prior to the cancellation or expiration date and on or after the Retroactive Date stated in the Declarations as respects Coverage A.1;

2. from **Covered Operations** performed prior to the cancellation or expiration date and on or after the Retroactive Date stated in the Declarations as respects Coverage A.2.; or

3. From a **Protective Indemnity Claim** can be brought by you against a **Design Professional** and reported to us.

To exercise this right the **Named Insured** must send a request for the Extended Reporting Period in writing to the Company not later than sixty (60) days after the cancellation or expiration date. Failure by the **Named Insured** to give such notice within sixty (60) days waives the right to the Extended Reporting Period.

The entire additional premium due must be paid at the time such request is made. Mailing by the **Named Insured** by registered mail of such notice to the Company at its address stated in the Declarations shall be sufficient proof of notice.

The quotation of a different premium or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

As a condition precedent to the **Named Insured's** right to purchase the Extended Reporting Period, the **Named Insured** shall have satisfied all conditions of this Policy.

At the commencement of any Extended Reporting Period, the entire premium therefore shall be considered earned, and in the event the **Named Insured** terminates the Extended Reporting Period before its term, for any reason, the Company shall not be liable to return to the Named **Insured** any portion of the premium paid for such Extended Reporting Period.

The purchase of the Extended Reporting Period provision shall not serve to increase or reinstate the Aggregate Limit or otherwise increase the Limit of Liability set forth in the Declarations. **D.   HOW OTHER INSURANCE APPLIES**

Where other insurance is available to the **Insured** for **Loss, Protective Loss** or covered u n d e r the terms and conditions of this policy, the Company's obligation to the **Insured** shall be as follows:

With respect to Coverage A.1 and A.3

This Policy shall apply as excess insurance over any other valid and collectible insurance be it primary or excess.  This excess insurance shall in no way be increased or expanded as a result  of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend.   This also applies to the **Insured** while acting as a self-insured for any coverage.

1.   Where this Policy is excess insurance, the Company will pay only its share of the amount of **Loss** or **Professional Loss**, if any, that exceeds the total amount of all such valid and collectible insurance.

2.   The **Insured** shall promptly upon request of the Company  provide the Company with copies of all policies potentially applicable against the liability covered by this Policy.

With respect to Coverage A.2:

1 .   This i n s u r a n c e  is primary, and the C o m p a n y ' s obligations  are  not a f f e c t e d  unless any of the o t h e r insurance is also primary. In that c a s e , the company  will share with a l l  such other  insurance b y  the method described in  Paragraph 2. Below.

2 .   If all of the other insurance permits contribution by equal shares, the Company will follow this method also.   Under this approach, each insurer contributes equal amounts until it has paid it applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, the Company will contribute by limits.   Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limit of insurance to the total applicable limits of insurance of all insurers.

## J. BANKRUPTCY

Bankruptcy or insolvency of the **Insured's** estate shall not relieve the Company of any of its obligations under this Policy.

## K. APPLICATION

The statements in the Application are the Insured's representations and are deemed material. This Policy is issued based upon the truth and accuracy of such representations. Upon the binding of coverage, the Application shall be attached to and become part of this Policy. This Policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this Policy.

## L. AUDIT

The Company may examine and audit the **Insured's** books and records at any time during the **Policy Period** and within three (3) years after the final termination of this Policy, as far as they relate to this **Policy.**

## M. ACTION AGAINST THE COMPANY

No action shall be maintained against the Company by the Insured to recover for any Loss under this Policy, unless:

1. the **Insured** has fully complied with all the terms and conditions of this Policy; and

2. the amount of Loss has been fixed or rendered certain:
        a. by final judgment against the Insured after trial of the issues;
        b. the time to appeal such judgment has expired without an appeal being taken;
        c. if appeal is taken, after the appeal has been determined; or
        d. the Claim is settled in accordance with the terms and conditions of this Policy.

In no event shall any action brought by anyone be maintained against the Company unless such action is brought within twenty-four (24) months from the time the right to bring action first becomes available.

As to I.A.3, no legal action may be brought against the Company until there has been full compliance with all the terms and conditions of this policy and both the **Design Professional's** liability and the amount of the **Design Professional's** obligations to pay have been finally determined either by judgment against the **Design Professional** after an actual trial, adjudication or arbitration or by your written agreement with the **Design Professional** with our prior approval.

No person or organization has a right under this policy to bring us into any action to determine our liability or the **Design Professional's** liability.

## N. FALSE OR FRAUDULENT CLAIMS

If the **Insured** reports any A. 1 **Claim,** A.2 **Claim** or **Protective Indemnity Claim** knowing such **Claim** or **Protective Indemnity Claim** to be false or fraudulent, this Policy shall become void and all insurance coverage hereunder shall be forfeited.

## O. SERVICE OF SUIT

It is agreed that in the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703, and that in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## P. INSPECTION

The Company shall be permitted but not obligated to inspect, sample, and monitor on a continuing basis the **Insured's** property or operations, at any time. Neither the Company's right to make inspections, sample, and monitor, nor the actual undertaking thereof nor any report thereon, shall constitute an undertaking, on behalf of the **Insured** or others, to determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practice or are in compliance with any law, rule, or regulation.

## Q. SOLE AGENT

The **Named Insured** first listed in Item 1 of the Declarations shall act on behalf of all other **Insureds**, if any, for the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy and giving and receiving notice of cancellation or nonrenewal.

## R. ASSIGNMENT

This Policy shall not be assigned without the prior written consent of the Company. Assignment of interest under this Policy shall not bind the Company until its consent is endorsed onto this Policy.

## S. SUBROGATION

If there is a payment made by the Company, the Company shall be subrogated to all the Insured's rights of recovery against any person or organization. The **Insured** shall cooperate with the Company and do whatever is necessary to secure these rights. The **Insured** shall do nothing after a claim to waive or prejudice such rights. The Company agrees to waive this right of subrogation against the client of the Insured or other entities to the extent that the **Insured** had, prior to **Claim**, a written agreement to waive such rights.

All recoveries obtained through subrogation will be applied towards the **Named Insured's** Self-Insured Retention first with the remaining balance payable to the Company.

With respect to a **Protective Indemnity Claim**, this includes a written transfer to us of any assignment(s) of rights obtained under section IV. CONDTITIONS. AI. NOTICE OF PROTECTIVE INDEMNITY CLAIM, paragraph 1.B. above, if the **Insured** has elected not to pursue same in furtherance of its **Protective Indemnity Claim**. An **Insured** shall do nothing to prejudice such rights as described in this paragraph.

## T. CHANGES

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or stop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy.

## U. CANCELLATION

This Policy can be canceled by the **Named Insured** by returning this Policy to the Company or its authorized representatives. The **Named Insured** can also cancel the Policy by written notice to the Company stating at what future date cancellation is to be effective. If the **Named Insured** cancels, earned premium shall be computed using the customary short rate table, or pro-rata of the Minimum Annual Policy Premium, whichever is greater.

This Policy can be canceled by the Company by written notice to the **Named Insured**, at the address last known to the Company. The Company shall provide written notice at least ninety (90) days before cancellation is to be effective.

There are exceptions to the length of the notice that shall be provided to the **Named Insured**. The **Named Insured** shall only be entitled to ten (10) days' notice if the Company cancels because:

1. The **Insured** has failed to pay a premium when due; or

2. The **Insured** has failed to pay the applicable Self-Insured Retention amounts due.

If the Company cancels, earned premium shall be computed pro-rata, except that if the Company cancels for the reason specified in 1. or 2. above, earned premium shall be computed in the same manner provided above when the **Named Insured** cancels.

Proof of mailing of any notice of cancellation shall be sufficient proof of notice. The effective date of cancellation terminates the **Policy Period**. Return of unearned premium is not a condition of cancellation. Unearned premium shall be returned by the Company as soon as practicable.


## V. DESIGN PROFFESSIONAL INSURANCE

You shall require that each Design Professional with whom you have a written contract initially evidence professional liability insurance.

## W. LIMITATION OF LIABILITY

As respects Coverage Part A. 3, the Insured shall not, without our express written authorization, accept any limitation of clause in a contract between the **Insured** and a **Design Professional** other than to limit the Design Professional's liability to the amount of the insurance specified by contract.

## V. DEFINITIONS

A. Section V. DEFINITIONS is amended as follows:

C. **Claim** means a demand received by an **Insured** seeking a remedy and alleging liability or responsibility on the part of the **Named Insured** for **loss**. **Claim** also means a **Protective Indemnity Claim**.

**Loss** means:

1. monetary awards or settlements of compensatory **Damages** and where insurable by law, punitive, exemplary or multiplied Damages because of:

(a) Claims arising out of **Breach of Professional Duty** in the performance of **Professional Services** under Coverage A.1 or

(b) **Bodily Injury, Property Damages** or **Clean-up Costs** under Coverage A.2; and

2. **Claim Expenses**; and

3. **Emergency Response Costs**; and

4. **Protective Loss.**


B. The following DEFINITIONS are added:


**Design Professional** means those persons or entities or successors professionally qualified to perform **Professional Services** either itself or through the services of a subcontractor or subconsultants at any tier.

**Design Professional's Insurance** means all policies of insurance in which the **Design Professional** is an insured for professional liability.

**Minimum Insurance Requirement** means the minimum amount of Professional Liability Insurance that we require you to obtain and to require your **Design Professional** initially to evidence as specified in the Declarations.

**Professional Services** for purposes of Coverage Part A.3  means those services a **Design Professional** under contract to you or an entity providing services under contract to the **Design Professional** at any tier is qualified to perform in its capacity as architect, engineer, landscape architect, land surveyor or planner, construction manager, interior designer/space planner, LEED accredited professional, consultant, design-builder, materials tester, provider of maintenance or inspection-related services or as specifically described by endorsement to this policy.  **Professional Services** includes **Technology Services** to the extent provided in conjunction with the aforementioned capabilities.

**Protective Indemnity Claim** means a written demand by you against a **Design Professional(s)** under contract with you seeking a remedy from or alleging liability or responsibility on the part of such **Design Professional(s)** for **Protective Loss** arising out of the **Design Professional's** rendering of or failure to render **Professional Services.**

**Protective Loss** means the amount you are legally entitled to recover from each **Design Professional** either by adjudication by a court of competent jurisdiction, settlement, arbitration or any other method of dispute resolution to which we agree in writing. Such **Protective Loss** must be the result of a negligent act, error or omission on the part of the **Design Professional.**

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

**Endorsement # 37**

# Nuclear Exclusion Manuscript



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 07/31/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided under the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

1.  It is hereby agreed that Section **II. EXCLUSIONS**, **Q.**, is deleted in its entirety and replaced with the following:

    Q.  Any **Claim** for **Damages** resulting from the radioactive, toxic or explosive properties of Nuclear Material**,** and for which any government authority, agency, legislative, executive or administrative authority has indemnified the **Named  Insured**, or for which any other financial protection is afforded protection for the **Named Insured** including the Atomic Energy Act of 1954 or any amendment thereof or to which the **Named Insured** is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

# Important Notice
**Service of Suit and In Witness Clause**



**Service of Suit**

In the event an action or proceeding arises under the contract, it is agreed that the Company, at your request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver or limitation of the right to arbitration as set forth herein or to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is further agreed that service of process in such suit may be made upon Illinois Corporation Service Company,  801 Adlai Stevenson Drive, Springfield, IL 62703.  In any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured of any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Illinois Corporation Service Company as the entity to whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

President                                                      Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?**  Your agent or broker is best equipped to provide information about your insurance.  Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois  60196-1056
**1-800-382-2150** (Business Hours:  8am - 4pm [CT])
**Email**: info.source@zurichna.com

Endorsement #  38

# Additional Named Insured(s)



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132-03 | 07/31/2019 | 07/31/2020 | 01/02/2020 | 60197000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

EMCOR GROUP, INC.
301 MERRITT SEVEN, 6TH FLOOR
NORWALK, CT  06851-5914

**Producer:**

ARTHUR J GALLAGHER RISK MNGT SERV INC
2 WESTCHESTER PARK DR FL 3
WHITE PLAINS, NY  10604-3427

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that Item 1. of the DECLARATIONS is amended to include the following:

Logical Control Solutions, Inc.
Retro date: 1/2/2020

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement # 39**



# Additional Named Insured(s)

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 08/01/2019 | 60197000 | ----- | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that Item 1. of the DECLARATIONS is amended to include the following:

Garrett Mechanical, Inc.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Endorsement # 40

# Additional Named Insured(s)



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132 03 | 07/31/2019 | 07/31/2020 | 11/01/2019 | 60197000 | $110,760 | ----- |

**Named Insured and Mailing Address:**

EMCOR Group, Inc.
301 Merritt Seven
Norwalk, Connecticut 06851

**Producer:**

Arthur J. Gallagher Risk Management Services, Inc.
2 Westchester Park Drive, 3rd Floor
White Plains, New York 10604

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that Item 1. of the DECLARATIONS is amended to include the following:

Bachelor & Kimball, Inc.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement #**  41

# Amendment of Policy Period



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132-03 | 07/31/2019 | 10/31/2020 | 07/31/2020 | 60197000 | $390,076.00 | ---------- |

**Named Insured and Mailing Address:**

EMCOR GROUP, INC.
301 MERRITT SEVEN, 6TH FLOOR
NORWALK, CT  06851-5914

**Producer:**

ARTHUR J GALLAGHER RISK MNGT SERV INC
2 WESTCHESTER PARK DR FL 3
WHITE PLAINS, NY  10604-3427

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is hereby understood and agreed that, subject to all the terms, exclusions and conditions of the policy that **Item 3. "Policy Period"** of the policy Declarations is deleted and replaced with the following:

**Item 3. "Policy Period":**    Inception Date: 07/31/2019    Expiration Date:  10/31/2020
*(12:01 A.M. Standard  time at the address shown above)*

The fact that the "Policy Period" is amended per above shall in no way increase the Limits of Liability of this policy.

All other terms and conditions remain unchanged.

**Endorsement #**  42

# Additional Named Insured(s)



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9817132-03 | 07/31/2019 | 10/31/2020 | 08/03/2020 | 60197000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

EMCOR GROUP, INC.
301 MERRITT SEVEN, 6TH FLOOR
NORWALK, CT  06851-5914

**Producer:**

ARTHUR J GALLAGHER RISK MNGT SERV INC
2 WESTCHESTER PARK DR FL 3
WHITE PLAINS, NY  10604-3427

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that Item 1. of the DECLARATIONS is amended to include the following:

R&R Mechanical

Retro date: 8/3/2020

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

## **Verification of Policy Records**

The attached record constitutes documents relative to the contents of policy __EOC 9817132 03__; (date) as of ___07/31/2019___ generated from computer data maintained by the issuing company. Cosmetic changes not affecting coverage may have occurred to the format of the policy over time.


_(signature)_
_____
Name

Melissa Pelletier_____
Printed Name

June 28, 2022_____
Date

# EXHIBIT 2



Date:    07/25/2018

Christine Tramontelli
ARTHUR J GALLAGHER RISK MNGT SERV INC
2 WESTCHESTER PARK DR FL 3
WHITE PLAINS, NY  10604-3427

**Re:    EMCOR GROUP, INC.**

**Coverage:    Contractor's Protective Professional Indemnity and Liability Insurance**
**Policy Number:   EOC 9817132-02**

Zurich
Construction East Region
4 World Trade Center, 150
Greenwich St
New York, NY 10007

james.byrnes@zurichna.com
www.zurichna.com

Phone: 212-553-5765

Dear Christine Tramontelli,

In accordance with your instructions and reliance upon the statements made in your application, we are pleased to provide the attached binder for the above captioned insured on behalf of Steadfast Insurance Company, a non-admitted company.

Steadfast Insurance Company is a qualified surplus lines insurer.  It is your responsibility to follow the applicable state requirements governing the placement of surplus lines insurance.  Please refer to the attached Surplus Lines Information Letter for additional information.

The attached binder confirms the limits and coverages mutually agreed to by the insured and the insurance carrier.  It further confirms that any other options that may have been offered in the proposal have been declined by the insured.

We trust you will find everything to be in order and issued according to the binding instructions.

If you have any questions please do not hesitate to call me.

*James Byrnes*

James Byrnes
Market Facing Underwriter
james.byrnes@zurichna.com

Attachments:
- Binder
- Binder Subjectivities
- Construction Value Proposition Statements



# Binder

Re:  EMCOR GROUP, INC.

Coverage:  Contractor's Protective Professional Indemnity and Liability Insurance

Policy Number:  EOC 9817132-02

| 1. | **Insurer:** | Steadfast Insurance Company |
|---|---|---|
| 2. | **Named Insured:** | EMCOR GROUP, INC. |
| 3. | **Insured Address:** | 301 Merritt Seven, 6th Floor<br>Hamden, CT  06518<br>USA |
| 4. | **Policy Period:** | 07/31/2018 to 07/31/2019 12:01 a.m. Standard Time at the address stated above |
| 5. | **Binder Effective:** | 07/31/2018 |

• This binder will be terminated and superseded upon delivery of the formal policy(ies) or certificate(s) issued to replace it.

6.  **Schedule of Insurance:**

| **Policy:** | $ | 40,000,000 | Aggregate Limit of Liability |
|---|---|---|---|
| **Coverage Description:** | **A. Contractor's Professional Liability** | | |
| **Coverage Type:** | Primary - Claims Made | | |
| **Retroactive Date:** | 01/01/1968 | | |
| **Limits of Liability:** | $ | 40,000,000 | Each Claim |
| | $ | 40,000,000 | Aggregate Limit of Liability |
| **SIR:** | $ | 500,000 | Each Claim |
| **Coverage Description:** | **C. Contractor's Pollution Liability** | | |
| **Coverage Type:** | Primary - Claims Made | | |
| **Retroactive Date:** | 01/01/1968 | | |
| **Limits of Liability:** | $ | 40,000,000 | Each Claim |
| | $ | 40,000,000 | Aggregate Limit of Liability |
| **SIR:** | $ | 500,000 | Each Claim |
| | **C. Microbial Events** | | |
| **Coverage Type:** | Primary - Claims Made | | |
| **Retroactive Date:** | 01/01/1968 | | |
| | $ | 40,000,000 | Each Microbial Event Claim |
| | $ | 40,000,000 | Total all Microbial Event Claims |
| **SIR:** | $ | 500,000 | Each Microbial Event Claim |



# Binder

**Re:  EMCOR GROUP, INC.**

**Coverage:  Contractor's Protective Professional Indemnity and Liability Insurance**

**Policy Number:  EOC 9817132-02**

| | | | | |
|---|---|---|---|---|
| 7. | **Policy Premium** | $ | 1,194,866.00 | Minimum and Deposit Premium |
| | **Terrorism Premium:** | $ | 29,871.00 | |
| | **Total Due:** | $ | **1,224,737.00** | |

8.  **Minimum Earned Premium:**   • The policy will be subject to a minimum earned premium of 25.00% of the Total Due.
• The insurance under this binder cannot be cancelled flat.
• Earned premium must be paid for the time insurance has been in force.

If  the policy period exceeds 12 months, 100% minimum earned at 12 months past policy inception.

9.  **Rate of Adjustment:**   No audit for premium adjustment will be conducted.  This premium is flat.

10. **Premium Due:**   Premium in the amount of $1,224,737.00 is due and payable within 30 days of the effective date of this binder.  The invoice will be mailed separately.

11. **Terms and Conditions:**

Refer to the attached Schedule of Forms and Endorsements

• Applicable forms are subject in all respects to the terms, conditions, exclusions and limitations of the policy(ies) or certificate(s) in current use by the Company, unless otherwise specified.

• This indication, quote, or any binder, application, policy form and any materials forming part of this proposal are proprietary information.  Disclosure of this information to any other competitor is a violation of an expressed confidentiality agreement, attorney client privileges, copyright and other proprietary laws as applicable

• Policy Premium does not include surplus lines taxes and surcharges which are the responsibility of the Surplus Lines broker.

12. **Subject To:**   • Refer to the attached Binder Subjectivities.

13. **Producer:**   ARTHUR J GALLAGHER RISK MNGT SERV INC
2 WESTCHESTER PARK DR FL 3
WHITE PLAINS, NY  10604-3427

14. **Commission:**   16.00%

15. **Date of Binder:**   07/25/2018

16. **Authorized Representative:**

*James Byrnes*

James Byrnes



# Binder Subjectivities

**Re:  EMCOR GROUP, INC.**

**Coverage:  Contractor's Protective Professional Indemnity and Liability Insurance**

**Policy Number:    EOC 9817132-02**

This binder is subject to the Underwriter's receipt, review and acceptance of the following information.

- ALL SUBJECTIVITIES ARE MET.

# Schedule of Forms and Endorsements



**Re:  EMCOR GROUP, INC.**


**Coverage:  Contractor's Protective Professional Indemnity and Liability Insurance**

**Policy Number:  EOC 9817132-02**


The following schedule contains a general description of the coverages provided.  For a detailed description of the terms conditions, exclusions and limitations of this insurance you must refer to the applicable policy forms and endorsements identified.

|  | Title * | Form Number |
|---|---|---|
| Policy Form: | Contractor's Protective Professional Indemnity and Liability Insurance | STF-CPP-100-B CW (11/09) |
| Endorsement: | Contractor's Protective Professional Indemnity and Liability Insurance Policy Jacket | STF-CPP-128-A CW (05/09) |
|  | Service of Suit and In Witness Clause | STF-GU-199-B (01/09) |
|  | Connecticut Notification of Surplus Lines Policy | STF-GU-637-A (07/08) |
|  | Deletion Coverage Part B | STF-CPP-111-A CW (05/09) |
|  | Nuclear Energy Liability Exclusion - Broad Form | STF-CPP-119-B CW (02/12) |
|  | Sanctions Exclusion Endorsement | U-GU-1191-A CW (03/15) |

   * The titles of the endorsements are provided for convenience only.  Coverage provided pursuant to these
   endorsements shall be interpreted and applied without regard to such titles.

# Construction Value Proposition Statements



*Zurich's unique construction industry insight, innovative insurance solutions and superior service capabilities helps our customers save lives, reduce their total cost of risk and become better contractors.  Our products and services help provide a sustainable competitive advantage in the construction marketplace.*

**Industry Awards and Recognition**

- *National Underwriter* magazine named Zurich the top-rated construction insurer in its 2011 "Risk Manager Choice Awards"

- *FORTUNE* magazine ranked Zurich as the second most admired company in the property and casualty insurance industry for the third consecutive year in their list of World's Most Admired Companies

**Industry Commitment**

- Over 125 risk engineers* dedicated to construction, averaging more than 22 years of industry experience

- Zurich has more than 125 claim professionals dedicated to construction defect and professional liability claims

- Ninety (90) of the 2010 *Engineering News-Record (ENR)* Top 100 Contractors are Zurich customers

**Thought Leadership**

- We have authored more than 40 articles in 2011 and published newsletters to an audience of nearly 10,000 construction industry professionals; visit www.zurichna.com/construction for more information

**Service Delivery**

- Through the commitment of our in-house Claims Care Center, we have been able to respond to 96% of all claims within two hours

**Global**

- Zurich's Multi-National Insurance Proposition (MIP), which includes Professional Liability, combines the benefits of global insurance program structures with local servicing capabilities to issue insurance certificates and policies in more than 170 countries, providing customers with the service and documentation necessary to ensure compliance with local tax and insurance regulations

**Financial Stability**

- Industry financial ratings remain among the strongest:  A.M. Best A+/stable; Standard & Poor's AA-/stable

  - As of March 21, 2011; for information about the ratings of Zurich American Insurance Company, access the ratings section on www.zurichna.com.  For more complete financial information about the Zurich Insurance Group and ratings for Zurich Insurance Company, access www.zurich.com.

- Project-specific professional liability placement capability available to our construction customers

\* Risk engineering and claims services are provided by Zurich Services Corporation.

This is intended as a general description of certain types of insurance and services available to qualified customers through the companies of Zurich in North America. Your policy is the contract that specifically and fully describes your coverage. The description of the policy provisions gives a broad overview of coverage's and does not revise or amend the policy.

Insurance coverage underwritten by member companies of Zurich North America, including Zurich American Insurance Company. In certain cases coverage is not available in all states. Some coverage may be written on a non-admitted basis through licensed surplus lines brokers.

# EXHIBIT 3

| | |
|---|---|
| **From:** | Melissa Pelletier |
| **Sent:** | Tuesday, July 23, 2019 3:31 PM |
| **To:** | Christine Tramontelli |
| **Cc:** | John Perkins; Ron D'Ambrosi; Carl Varteresian; Milagros Quintana; Michael Davis |
| **Subject:** | RE: EMCOR Group, Inc. - Professional Liability/Contractor's Pollution Liability & Professional Protection Coverage - Binding Confirmation - Policy Period: 7/31/19 to 7/31/20 |

Hi Christine,

Thank you so much for the bind order and all the efforts of the AJG team. Please have this email serve as our confirmation of coverage, the new policy numbers going forward will be EOC 9817132-03 for the primary $25M, and the excess $25M is EOC 9817133-02.

We will be working up the binder and be sending it over shortly.

Thanks,



**MELISSA PELLETIER**
*Senior Account Executive*
***Construction Special Risks- Professional Liability***
Zurich North America
100 High St, Suite 1400
Boston, MA 02110

**Office:** (617) 570-8807
**Mobile:** (774) 276-1565
melissa.pelletier@zurichna.com

---

**From:** Christine Tramontelli [mailto:Chris_Tramontelli@ajg.com]
**Sent:** Tuesday, July 23, 2019 8:26 AM
**To:** Melissa Pelletier
**Cc:** John Perkins; Ron D'Ambrosi; Carl Varteresian
**Subject:** [EXTERNAL] EMCOR Group, Inc. - Professional Liability/Contractor's Pollution Liability & Professional Protection Coverage - Binding Confirmation - Policy Period: 7/31/19 to 7/31/20

Melissa,

This email will serve as formal authorization for you to bind coverage for the captioned Insured, effective 7/31/19, per the following:

Primary Professional Liability/Contractor's Pollution Liability:
Limit of Liability:      $25,000,000
Retention:             $500,000
Annual Premium:     $1,294,944

Excess Professional Liability/Contractor's Pollution Liability:
Limit of Liability:        $25,000,000
Annual Premium:        $614,968

Professional Protective Liability:
Limit of Liability:        $25,000,000
Annual Premium:        $252,672

Please forward your binder confirmation and premium invoice to my attention as soon as possible, since I need to process numerous certificated of insurance.  If you cannot issue the binder today, please provide the policy number.

Best regards,

Christine

**Christine Tramontelli      Client Service Manager Senior**



Insurance | Risk Management | Consulting

Direct: 914.697.6045 | Fax: 914.323.4545
chris_tramontelli@ajg.com
www.ajg.com

2 Westchester Park Drive | White Plains, NY 10604-3404

A licensed Gallagher representative must provide the appropriate insurance carrier with written instructions in order to bind coverage. Therefore, client instructions via e-mail are not sufficient to bind coverage unless explicitly acknowledged by your Gallagher representative.

We would like to emphasize that the comments set forth above are only from an insurance/risk management perspective and are NOT legal advice. We do not provide legal advice, as we are not qualified to do so. We highly recommend that you seek the advice of legal counsel in order to become fully apprised of the legal implications related to these issues.

If you have received this message in error, please return to sender and disregard

******************* PLEASE NOTE *******************
This message, along with any attachments, is for the designated recipient(s) only and may contain privileged, proprietary, or otherwise confidential information. If this message has reached you in error, kindly destroy it without review and notify the sender immediately. Any other use of such misdirected e-mail by you is prohibited. Where allowed by local law, electronic communications with Zurich and its affiliates, including e-mail and instant messaging (including content), may be scanned for the purposes of information security and assessment of internal compliance with company policy.

# EXHIBIT 4



Date:    07/26/2019

Christine Tramontelli
ARTHUR J GALLAGHER RISK MNGT SERV INC
2 WESTCHESTER PARK DR FL 3
WHITE PLAINS, NY  10604-3427

**Re:    EMCOR GROUP, INC.**

**Coverage:    Contractor's Protective Professional Indemnity and Liability Insurance**
**Policy Number:   EOC 9817132-03**

Dear Christine Tramontelli,

In accordance with your instructions and reliance upon the statements made in your application, we are pleased to provide the attached binder for the above captioned insured on behalf of Steadfast Insurance Company, a non-admitted company.

Steadfast Insurance Company is a qualified surplus lines insurer.  It is your responsibility to follow the applicable state requirements governing the placement of surplus lines insurance.  Please refer to the attached Surplus Lines Information Letter for additional information.

The attached binder confirms the limits and coverages mutually agreed to by the insured and the insurance carrier.  It further confirms that any other options that may have been offered in the proposal have been declined by the insured.

We trust you will find everything to be in order and issued according to the binding instructions.

If you have any questions please do not hesitate to call me.

Melissa Pelletier
Account Executive
melissa.pelletier@zurichna.com

Attachments:
- Binder
- Binder Subjectivities
- Construction Value Proposition Statements

Zurich

100 High St., Suite 1300
Boston, MA 02110

melissa.pelletier@zurichna.com
www.zurichna.com

Phone: 617-570-8807



# Binder

**Re:  EMCOR GROUP, INC.**

**Coverage:  Contractor's Protective Professional Indemnity and Liability Insurance**

**Policy Number:  EOC 9817132-03**

| | | |
|---|---|---|
| 1.  **Insurer:** | Steadfast Insurance Company | |
| 2.  **Named Insured:** | EMCOR GROUP, INC. | |
| 3.  **Insured Address:** | 301 MERRITT SEVEN, 6TH FLOOR<br>NORWALK, CT  06851-5914<br>USA | |
| 4.  **Policy Period:** | 07/31/2019 to 07/31/2020 12:01 a.m. Standard Time at the address stated above | |
| 5.  **Binder Effective:** | 07/31/2019 | |

• This binder will be terminated and superseded upon delivery of the formal policy(ies) or certificate(s) issued to replace it.

6.  **Schedule of Insurance:**

| | | | |
|---|---|---|---|
| **Policy:** | $ | 25,000,000 | Aggregate Limit of Liability |
| **Coverage Description:** | **A. Contractor's Professional Liability** | | |
| **Coverage Type:** | Primary - Claims Made | | |
| **Retroactive Date:** | 01/01/1968 | | |
| **Limits of Liability:** | $ | 25,000,000 | Each Claim |
| | $ | 25,000,000 | Aggregate Limit of Liability |
| **SIR:** | $ | 500,000 | Each Claim |
| **Coverage Description:** | **B. Contractor's Protective Professional Liability** | | |
| **Coverage Type:** | Primary - Claims Made | | |
| **Retroactive Date:** | 01/01/1968 | | |
| **Limits of Liability:** | $ | 25,000,000 | Each Claim |
| | $ | 25,000,000 | Aggregate Limit of Liability |
| **SIR:** | $ | 500,000 | Each Claim |

Coverage Part B SIR applies through either exhaustion of "Design Professional's Insurance" limits or through the applicability of a valid exclusion under the "Design Professional's Insurance"



# Binder

**Re:  EMCOR GROUP, INC.**

**Coverage:  Contractor's Protective Professional Indemnity and Liability Insurance**

**Policy Number:  EOC 9817132-03**

| | | |
|---|---|---|
| **Coverage Description:** | **C. Contractor's Pollution Liability** | |
| Coverage Type: | Primary - Claims Made | |
| Retroactive Date: | 01/01/1968 | |
| Limits of Liability: | $          25,000,000 | Each Claim |
| | $          25,000,000 | Aggregate Limit of Liability |
| SIR: | $               500,000 | Each Claim |
| | **C. Microbial Events** | |
| Coverage Type: | Primary - Claims Made | |
| Retroactive Date: | 01/01/1968 | |
| | $          25,000,000 | Each Microbial Event Claim |
| | $          25,000,000 | Total all Microbial Event Claims |
| SIR: | $               500,000 | Each Microbial Event Claim |

**7.  Policy Premium**          $          1,509,869.00   Minimum and Deposit Premium

    **Terrorism Premium:**     $               37,747.00

    **Total Due:**                     $          **1,547,616.00**

**8.  Minimum Earned Premium:**
- The policy will be subject to a minimum earned premium of 25.00% of the Total Due.
- The insurance under this binder cannot be cancelled flat.
- Earned premium must be paid for the time insurance has been in force.

If  the policy period exceeds 12 months, 100% minimum earned at 12 months past policy inception.

**9.  Rate of Adjustment:**     No audit for premium adjustment will be conducted.  This premium is flat.

**10. Premium Due:**     Premium in the amount of $1,547,616.00 is due and payable within 30 days of the effective date of this binder.  The invoice will be mailed separately.

**11. Terms and Conditions:**

Refer to the attached Schedule of Forms and Endorsements

- Applicable forms are subject in all respects to the terms, conditions, exclusions and limitations of the policy(ies) or certificate(s) in current use by the Company, unless otherwise specified.

- This indication, quote, or any binder, application, policy form and any materials forming part of this proposal are proprietary information.  Disclosure of this information to any other competitor is a violation of an expressed confidentiality agreement, attorney client privileges, copyright and other proprietary laws as applicable



# Binder

**Re:  EMCOR GROUP, INC.**

**Coverage:  Contractor's Protective Professional Indemnity and Liability Insurance**

**Policy Number:  EOC 9817132-03**

**11.  Terms and Conditions:**

- The Company does not warrant the availability of the Design Professional's Insurance, nor will it pay until their insurance first indemnifies the Insured or has been exhausted due to payment of claims. No design firm(s) will be added to this policy as an additional insured and as such no insurance is provided to any design firm(s) for their professional liability and no limitation of liability is to be provided to them by the Insured unless specifically approved by the Company.

- Policy Premium does not include surplus lines taxes and surcharges which are the responsibility of the Surplus Lines broker.

**12.  Subject To:**
- Refer to the attached Binder Subjectivities.

**13.  Producer:**
ARTHUR J GALLAGHER RISK MNGT SERV INC
2 WESTCHESTER PARK DR FL 3
WHITE PLAINS, NY  10604-3427

**14.  Commission:**
16.00%

**15.  Date of Binder:**
07/26/2019

**16.  Authorized Representative:**

Melissa Pelletier



# Binder Subjectivities

**Re:  EMCOR GROUP, INC.**

**Coverage:  Contractor's Protective Professional Indemnity and Liability Insurance**

**Policy Number:   EOC 9817132-03**

This binder is subject to the Underwriter's receipt, review and acceptance of the following information.

- Copies of Standard Contract and Sub-Contract Agreements

- Copies of Current Annual Financial Statements

# Schedule of Forms and Endorsements



**Re:  EMCOR GROUP, INC.**

**Coverage:  Contractor's Protective Professional Indemnity and Liability Insurance**

**Policy Number:  EOC 9817132-03**

The following schedule contains a general description of the coverages provided.  For a detailed description of the terms conditions, exclusions and limitations of this insurance you must refer to the applicable policy forms and endorsements identified.

|  | Title * | Form Number |
|---|---|---|
| Policy Form: | Contractor's Protective Professional Indemnity and Liability Insurance | STF-CPP-100-B CW (11/09) |
| Endorsement: | Contractor's Protective Professional Indemnity and Liability Insurance Policy Jacket | STF-CPP-128-A CW (05/09) |
|  | Service of Suit and In Witness Clause | STF-GU-199-B (01/09) |
|  | Connecticut Notification of Surplus Lines Policy | STF-GU-637-A (07/08) |
|  | Additional Named Insured(s) | STF-CPP-107-A CW (05/09) |
|  | Nuclear Energy Liability Exclusion - Broad Form | STF-CPP-119-B CW (02/12) |
|  | Sanctions Exclusion Endorsement | U-GU-1191-A CW (03/15) |

* The titles of the endorsements are provided for convenience only.  Coverage provided pursuant to these endorsements shall be interpreted and applied without regard to such titles.

# Construction Value Proposition Statements



*Zurich's unique construction industry insight, innovative insurance solutions and superior service capabilities helps our customers save lives, reduce their total cost of risk and become better contractors.  Our products and services help provide a sustainable competitive advantage in the construction marketplace.*

**Industry Awards and Recognition**

- *National Underwriter* magazine named Zurich the top-rated construction insurer in its 2011 "Risk Manager Choice Awards"

- *FORTUNE* magazine ranked Zurich as the second most admired company in the property and casualty insurance industry for the third consecutive year in their list of World's Most Admired Companies

**Industry Commitment**

- Over 125 risk engineers* dedicated to construction, averaging more than 22 years of industry experience

- Zurich has more than 125 claim professionals dedicated to construction defect and professional liability claims

- Ninety (90) of the 2010 *Engineering News-Record (ENR)* Top 100 Contractors are Zurich customers

**Thought Leadership**

- We have authored more than 40 articles in 2011 and published newsletters to an audience of nearly 10,000 construction industry professionals; visit www.zurichna.com/construction for more information

**Service Delivery**

- Through the commitment of our in-house Claims Care Center, we have been able to respond to 96% of all claims within two hours

**Global**

- Zurich's Multi-National Insurance Proposition (MIP), which includes Professional Liability, combines the benefits of global insurance program structures with local servicing capabilities to issue insurance certificates and policies in more than 170 countries, providing customers with the service and documentation necessary to ensure compliance with local tax and insurance regulations

**Financial Stability**

- Industry financial ratings remain among the strongest:  A.M. Best A+/stable; Standard & Poor's AA-/stable

  - As of March 21, 2011; for information about the ratings of Zurich American Insurance Company, access the ratings section on www.zurichna.com.  For more complete financial information about the Zurich Insurance Group and ratings for Zurich Insurance Company, access www.zurich.com.

- Project-specific professional liability placement capability available to our construction customers

\* Risk engineering and claims services are provided by Zurich Services Corporation.

This is intended as a general description of certain types of insurance and services available to qualified customers through the companies of Zurich in North America. Your policy is the contract that specifically and fully describes your coverage. The description of the policy provisions gives a broad overview of coverage's and does not revise or amend the policy.

Insurance coverage underwritten by member companies of Zurich North America, including Zurich American Insurance Company. In certain cases coverage is not available in all states. Some coverage may be written on a non-admitted basis through licensed surplus lines brokers.